**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| INFILTRATOR SYSTEMS, INC. and ) <br> STORMTECH, INCORPORATED ) <br> ) <br>       Plaintiffs, ) <br> ) <br>    vs. ) <br> ) <br> CULTEC, INC. and ) <br> ROBERT J. DITULLIO ) <br> ) <br>      Defendants ) | Civil Action No. 301CV2188AWT |

INFILTRATOR SYSTEMS, INC. and
STORMTECH, INCORPORATED )

       Plaintiffs, )

     vs. )

CULTEC, INC. and
ROBERT J. DITULLIO )

       Defendants )

Civil Action No. 301CV2188AWT

CULTEC, INC. and
ROBERT J. DITULLIO )
     Counterclaimants and )
     Third Party Plaintiffs )

v. )

INFILTRATOR SYSTEMS, INC.
STORMTECH INCORPORATED )
     Counterclaim Defendants )
and
JAMES M. NICHOLS )
FABRI-FORM CO., INC. )
     Third Party Defendants )

**PLAINTIFFS' AND THIRD PARTY DEFENDANT'S PROPOSED FINDINGS OF FACT**

     Plaintiffs Infiltrator Systems, Inc. and Stormtech Incorporated and Third Party Defendant

James M. Nichols ("Infiltrator", "Stormtech" and "Nichols", respectively) hereby submit their

Proposed Findings of Fact.  Infiltrator, Stormtech and Nichols respectfully request that this Court

make the following finding of fact, all pursuant to Fed. R. Civ. P. 52(a).

1.    Infiltrator is a corporation, organized under the laws of the State of Connecticut, with a principal place of business at 6 Business Park Road, Old Saybrook, Connecticut. *See* Counterclaims and Third Party Complaint ("Counterclaims"), ¶ 3; *see also* Plaintiffs/Defendants-In-Counterclaim Infiltrator Systems, Inc. and Stormtech, Incorporated And Third-Party Defendant James M. Nichols Answer and Affirmative Defenses To Counterclaim And Third Party Complaint ("Reply to Counterclaim"), ¶ 3

2.    Stormtech is a corporation, organized under the laws of the State of Connecticut, with a principal place of business at 6 Business Park Road, Old Saybrook, Connecticut. Stormtech is a wholly owned subsidiary of Infiltrator. Counterclaim at ¶ 4; Reply to Counterclaim, ¶ 4.

3.    Third Party Defendant James M. Nichols ("Nichols") is a natural person with a principal place of business at 6 Business Park Road, Old Saybrook, Connecticut. Counterclaims, ¶ 5; Reply to Counterclaim, ¶ 5.

4.    Nichols is the Chairman, President and Chief Executive Officer of Infiltrator. *Id.*

5.    Defendant Robert J. DiTullio ("DiTullio") is a natural person residing at 170 Like Road, Warren, Connecticut. *See* Transcript of November 25, 2002 Markman Hearing and Hearing On Motions For Preliminary Injunction ("November 25, 2002, Transcript"), p. 9, ll. 19 – 20.

6.    DiTullio is the owner and Chief Executive Officer of Defendant Cultec, Inc. November 25, 2002, Transcript, p. 10, l. 8.

7.     Defendant Cultec, Inc. ("Cultec") is a corporation, organized under the laws of the State of Connecticut, with a principal place of business at 878 Federal Road, Brookfield, Connecticut.  Amended Complaint, ¶ 4.  Defendants' Answer and Affirmative Defenses, ¶ 4.

8.     DiTullio is the owner and named inventor of United States Patent No. 5,087,151, entitled "Drainage System", which issued on February 11, 1992 on an application filed on April 23, 1990 (the " '151 Patent").  Exhibit 501, p. 1.

9.     The invention disclosed in the '151 Patent comprises a chamber used for storm and waste water management.  Exhibit 501, Col. 1, ll. 8 – 12; November 25, 2002, Transcript, p. 12, ll. 19 – 23.

10.    Infiltrator and Stormtech also manufacture, sell and offer to sell chambers used for storm and wastewater management.  November 25, 2002, Transcript, p. 67, l. 9 – p. 68, l. 11.

11.    Infiltrator and Stormtech both sell an old version and a new version of their chambers.  November 26, 2002, Transcript, p. 253, ll. 16 – 25.

12.    The old version Infiltrator's chambers is known as the 3050 Chamber, while Stormtech's old chambers are known as 770 chambers (collectively, the "Old Chambers").  *Id.*

13.    Stormtech's new chambers are known as 740 and 340 chambers.  Infiltrator's new chamber is still referred to as the 3050 chamber (collectively, the "New Chambers").  *Id.*

14.    Prior to November 26, 2001, Cultec and DiTullio, acting directly and through their agents, notified Infiltrator's and Stormtech's actual and potential customers, including Falite Bros. and Caddell Construction, that Infiltrator and Stormtech were infringing the

-3-

'151 Patent, together with several other patents and trademarks owned by DiTullio and/or Cultec. *See* Index of Exhibits to Plaintiff's Motion for Preliminary Injunction, Exhibit 15.

15.    On or about November 26, 2001, Infiltrator and Stormtech commenced the instant action. Currently pending before this Court are Infiltrator's and Stormtech's claims for declaratory judgment of non-infringement of the '151 Patent, together with Infiltrator's and Stormtech's claim that DiTullio and Cultec are liable to them for violations of the Lanham Act, 15 U.S.C. § 1125(a) (Counts VI - VIII), Tortious Interference with Business Relations (Count IX), unfair competition (Counts X – XII), violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), C.G.S.A. § 42a-110 *et seq.* (Count XIII) and commercial defamation (Count XIV). *See* Verified First Amended Complaint For Declaratory Judgment, Damages And Injunctive Relief and Demand For Jury Trial.

16.    DiTullio's and Cultec's counterclaim alleges that Infiltrator, Stormtech and Nichols are liable for infringing the '151 Patent, intentional interference with business relations and for violating CUTPA. *See* Counterclaim and Third Party Complaint.

17.    DiTullio and Cultec claim that Infiltrator, Stormtech and Nichols are infringing Claims 11 and 16 of the '151 Patent. *Id.*

18.    On or about February 5, 2002, Cultec and DiTullio moved for a preliminary injunction on their patent infringement claim. Cultec and DiTullio seek an injunction barring Infiltrator, Stormtech and Nichols from infringing the '151 Patent. *See* Defendants' Motion for Preliminary Injunction.

19.    On or about February 20, 2002, Infiltrator, Stormtech and Nichols moved for a

preliminary injunction enjoining Cultec and DiTullio, their officers, agents, servants,

employees, and attorneys, together with those persons in active concert or participation

with them who receive actual notice of this Court's Order by personal service or

otherwise, from

      a.    Representing to Infiltrator's or Stormtech's actual or potential customers that

         Infiltrator or Stormtech are infringing any of Cultec's or DiTullio's patents

      b.    Misrepresenting the scope of Cultec's or DiTullio's patents by representing or

         suggesting that Cultec is the only entity with the right to manufacture drainage

         galleries that feature interlocking or overlapping ribs;

      c.    Tortiously interfering with Stormtech's and Infiltrator's business relations by

         making the false representations set forth above; and

      d.    Engaging in unfair competition.

*See* Plaintiffs' Motion for Preliminary Injunction.

20.    On or about June 25, 2002, this Court consolidated the evidentiary hearing on the parties'

respective Motions for Preliminary Injunction with an evidentiary *Markman* claims

construction hearing. *See* Docket Entry No. 52.

21.    On or about November 25 – 26, 2002, this Court conducted the aforementioned

evidentiary hearing (the "Preliminary Injunction/*Markman* Hearing"). *See* Docket Entry

Nos. 114, 116.

-5-

22.    Based upon the evidence taken during the Preliminary Injunction/*Markman* Hearing,

together with the Declarations and Exhibits submitted by both parties in support of their

respective Motions for Preliminary Injunction, this Court finds that an actual case or

controversy exists within the meaning of the Declaratory Judgment Act and that the case

or controversy extends to both the Old Chambers and the New Chambers.  In particular,

this Court finds that the statements made and the letters sent, directly or indirectly, by

Cultec and DiTullio, create a reasonable apprehension on the part of Infiltrator and

Stormtech that they would face an infringement action over both the Old Chamber and

the New Chambers because Cultec and DiTullio made it quite clear that they would

enforce their patents.  *Id.*

23.    Based upon the evidence taken during the Preliminary Injunction/*Markman* Hearing,

together with the Declarations and Exhibits submitted by both parties in support of their

respective Motions for Preliminary Injunction, this Court finds that Infiltrator and

Stormtech have taken sufficiently concrete steps to manufacture, sell or offer to sell both

the Old Chambers and the New Chambers to create a controversy within the meaning of

the Declaratory Judgment Act.  With regard to the Old Chambers, Infiltrator and

Stormtech were making, selling and offering to sell Old Chambers.  *See* Exhibit 15.  With

regard to the New Chambers, Infiltrator and Stormtech had finalized their design and

were starting production.  *See* Transcript of November 26, 2002 Preliminary

Injunction/*Markman* Hearing, p. 244, l. 22 – p. 245, l. 2 (describing New Chambers as

injection molded); p. 253, l. 12 – p. 259 l. 3 (describing the process that resulted in the

New Chambers and stating that Infiltrator and Stormtech have two manufacturing facilities for manufacturing the New Chambers).

24.    Based upon the evidence taken during the Preliminary Injunction/*Markman* Hearing, together with the Declarations and Exhibits submitted by both parties in support of their respective Motions for Preliminary Injunction, this Court finds that Claim 11 of the '151 Patent is set forth as follows:

In a drain field for allowing liquid to seep into adjoining ground,

A. a first terminal gallery comprising:

i. a first elongated main body portion having an arch-shaped configuration thereby creating an enlarged enclosure, said elongated main body portion having first and second ends;

ii. first and second end walls respectively covering said first and second ends of said first elongated main body portion, each of said end walls having an opening therethrough for transporting the liquid to and from said first gallery; and

iii. a first latching engagement system associated with said first end wall for attaching said terminal gallery to an adjoining gallery in an end-to-end engaged relationship, said latching engagement system including a first rib on said first terminal gallery main body portion adjacent said first end wall, said rib being dimensionally sized to mate engagingly with an associated rib on an adjoining gallery;

B. a second adjoining drain field gallery having only one end wall at its distal end, comprising:

i. a second elongated main body portion having an arch-shaped configuration thereby creating an enlarged enclosure, said second elongated main body portion having two opposed ends;

ii. a third end wall covering one opposed distal end of said second elongated main body portion, said third end wall having an

opening therethrough for transporting the liquid to an adjoining gallery; and

iii. a second latching engagement system associated with the other opposed proximal end for attaching said second adjoining gallery to said first terminal gallery in an overlapping end-to-end engaged relationship, said second latching engagement system including a second rib on said second adjoining gallery main body portion adjacent the other opposed proximal end, said second rib being dimensionally sized to vertically seat engagingly on said first rib of said first terminal gallery whereby said first and second galleries are engagingly latched together thereby preventing relative longitudinal movement therebetween, said first and second latching systems further including means to prevent lateral spreading of said first terminal gallery and said second adjoining gallery once said galleries are latched to one another, including said first end wall inhibiting lateral spreading of said first gallery and of said adjoining second gallery and restraining said arch-shaped configuration against deformation; and

C. a drain pipe extending through at least one of said openings in said first, second and third end walls for transporting liquid to the drain field.

*See* Exhibit 501, Col. 8, l. 40 - Col. 9, l. 29.

25. Based upon the evidence taken during the Preliminary Injunction/*Markman* Hearing, together with the Declarations and Exhibits submitted by both parties in support of their respective Motions for Preliminary Injunction, this Court finds that the following claim language of Claim 11 is disputed and must be construed:

a. End Walls;

b. an opening therethrough for transporting the liquid;

c. a drain pipe extending through at least one of said openings in said first, second and third end walls for transporting liquid to the drain field; and

-8-

    d.  Means to prevent lateral spreading of said first terminal gallery and said second adjoining gallery once said galleries are latched to one another, including said first end wall inhibiting lateral spreading of said first gallery and of said adjoining second gallery and restraining said arch-shaped configuration against deformation.

26.    After examining the language of Claim 11, this Court finds that Claim 11 does not sufficiently define the disputed terms set forth above. Accordingly, based upon 151 Patent's specification and the prosecution history, both of which were before this Court during the Preliminary Injunction/*Markman* Hearing, this Court construes the disputed terms as follows:

    a.  Means to prevent lateral spreading of said first terminal gallery and said second adjoining gallery once said galleries are latched to one another, including said first end wall inhibiting lateral spreading of said first gallery and of said adjoining second gallery and restraining said arch-shaped configuration against deformation–

        i.  There must be a latching system that allows the second gallery to be attached to the first gallery in a overlapping end-to-end engaged relationship. Exhibit 501, Col. 9, ll. 4 – 8.

        ii.  The latching system must include means to prevent lateral spreading of the first terminal gallery and the second adjoining gallery once the galleries are latched to one another. *Id.* at ll. 17 – 21.

iii.   This Court having concluded that, as a matter of law, use of the word means invokes a presumption that 35 U.S.C. § 112, ¶ 6 applies, this Court finds that Claim 11 does not disclose sufficient structure to take Claim outside the scope of 35 U.S.C. § 112, ¶ 6.  Exhibit 501, Col. 9. ll. 4 – 25.

iv.   This Court, having looked to the specification to determine the structure associated with the "means to prevent spreading", finds that the only structure disclosed as preventing spreading anywhere in the specification comprises lugs, notches or apertures, stepped support members, vertical support walls and end walls, Exhibit 501, Col. 5, l. 66 – Col. 6, l. 2, and therefore finds that the "means to prevent spreading" must include lugs, notches or apertures, stepped support members, vertical support walls and end walls.

v.   Nothing in the specification of the '151 Patent suggests that any of the lugs, notches or apertures, stepped support members and vertical support walls are optional.  Exhibit 501.

b.   End Wall –

i.   The end wall is portion of the main body of the gallery that must cover an end of the gallery.  Exhibit 501, Col. 4, ll. 28 – 30; *see also* Exhibit 501, Fig. 4.

ii.   There are three (3) end walls.  Exhibit 501, Col. 8, ll. 47 – 51, l. 67 – Col. 9, l. 3.

-10-

iii. The first and second end walls must be disposed, respectively, on the first and second ends of the first terminal gallery. *Id.* at Col. 8, ll. 47 – 51; *see also* Fig. 4.

iv. The third end wall must be disposed on the distal end of the second drain field gallery that adjoins the first terminal gallery. *Id.* at Col. 9, ll 67 – 68.

v. The first and second end walls and the first terminal gallery must be formed as a solid piece. *Id.* at Col. 5, ll. 54-57.

vi. The third end wall and the second terminal gallery also must be formed as a solid piece. *Id.*

c. An opening therethrough for transporting the liquid –

i. The first, second and third end walls must have an opening for transporting liquid. Exhibit 501, Col. 8, ll. 47-51; *Id.* at Col. 8, l. 67 – Col. 9, l. 3.

ii. The openings must be capable of accepting a drain pipe. *Id.* at Col. 9, ll. 26 – 28.

d. A drain pipe extending through at least one of said openings in said first, second and third end walls for transporting liquid to the drain field –

i. There must be a drain pipe extending through at least one of the openings in the first, second or third end walls. Exhibit 501, Col. 9, ll. 26 – 28.

27. This Court finds that the statements made by DiTullio during the prosecution of the '151 Patent support a finding that the "means to prevent spreading" claimed in Claim 11

includes the combination of lugs, notches or apertures, stepped support members, vertical support walls and end walls, or the equivalents thereof.  In particular:

a.  DiTullio repeatedly attempted to obtain coverage for a drainage gallery in which the end wall prevented spreading without the lugs, notches or apertures, stepped support members and vertical support walls.  The United States Patent and Trademark Office ("USPTO") repeatedly rejected DiTullio's attempts.  *See* Index of Exhibits to Plaintiff's Motion for Preliminary Injunction, Exhibit 20, pp. 136, 143, 203.

b.  Throughout the prosecution of the '151 Patent, the USPTO indicated that dependent claims directed to a "means to prevent spreading" of said adjoining galleries once latched to one another" would be allowable if rewritten in independent form, incorporating all of the limitations of the base claim and any intervening claims. *See* Index of Exhibits to Plaintiff's Motion for Preliminary Injunction, Exhibit 20, pp. 128, 205.

c.  The only "means to prevent spreading" disclosed in the specification comprises the lugs, notches or apertures, stepped support members, vertical support walls and end walls.  Exhibit 501, Col. 5, l. 66 – Col. 6, l. 2.

d.  After DiTullio amended Claim 11 to include the aforementioned means-plus-function language, Claim 11 was allowed.  Exhibit 20, pp. 210 – 212, 217.

e.  With regard to the aforementioned amendment, DiTullio's patent attorney admits that the aforementioned amendment was intended to incorporate the lugs, notches

-12-

or apertures, stepped support members, vertical support walls and end walls, in

means-plus-function format, as the "means to prevent spreading" claimed in

Claim 11. Exhibit 604, p. 120, l. 15 – p. 121, l. 4, p. 190, l. 9 – 191, l. 25; p. 211,

l. 17 – p. 213, l. 8.

    f.   Even after the amendment, the USPTO noted that the end wall, by itself, did not

define any structure not shown by the prior art. Exhibit 20, p. 221.

    g.   DiTullio's patent attorney agreed that the basis for the USPTO's allowance of

Claim 11 was not that the end wall prevented lateral spreading. Attorney Ware

agreed that the Examiner was telling DiTullio that that the use of the end walls to

inhibit lateral spreading was not the basis for allowing the claims. *Id.* at p. 200, l.

11 – p. 201, l. 6.

28. Based on the foregoing, this Court finds that DiTullio surrendered any protection for

drainage galleries in which spreading is prevented by means that do not include lugs,

notches or apertures, stepped support members, vertical support walls and end walls, or

their equivalents, and that Claim 11 does not cover any drainage gallery that does include

these elements, or their equivalents.

29. Based upon the evidence taken during the Preliminary Injunction/*Markman* Hearing,

together with the Declarations and Exhibits submitted by both parties in support of their

respective Motions for Preliminary Injunction, this Court finds that Claim 16 of the '151

Patent is set forth as follows:

    A drain field gallery for guiding liquid through a drain field and allowing liquid to
    seep into adjoining ground comprising:

-13-

an elongated main body portion having a corrugated arch-shaped configuration thereby creating an enlarged enclosure with a plurality of upstanding ribs spaced apart longitudinally therealong;

at least one end wall covering one end of said elongated main body portion, said at least one end wall having an opening therethrough dimensionally sized to accept a drainpipe for transporting the liquid to said gallery;

a latching engagement system associated with said at least one end wall for attaching said gallery to an adjoining gallery in an end-to-end engaged relationship, said latching system being dimensionally sized to vertically seat in latching engagement on the latching system of the adjoining gallery and to inhibit relative longitudinal movement between the galleries, said at least one end wall inhibiting lateral spreading of said gallery and of said adjoining gallery and restraining said arch-shaped configuration against deformation, wherein said latching engagement system is provided by end ribs of said plurality of ribs, and said end ribs are adjacent the terminal ends of said main body portion and are dimensionally sized to mate engagingly with end ribs on adjoining galleries,

whereby said latching system includes said one end wall as means to prevent spreading of adjoining galleries once latched to one another.

Exhibit 501, Col. 12, ll. 13 – 43.

30.     Based upon the evidence taken during the Preliminary Injunction/*Markman* Hearing,

together with the Declarations and Exhibits submitted by both parties in support of their

respective Motions for Preliminary Injunction, this Court finds that the following claim

language of Claim 16 are disputed and must be construed:

    a.   End Wall;

    b.   An opening therethrough dimensionally sized to accept a drainpipe for

       transporting the liquid to said gallery; and

-14-

    c.   Whereby said latching system includes said one end wall as means to prevent spreading of adjoining galleries once latched to one another.

31.    After examining the language of Claim 16, this Court finds that Claim 16 does not sufficiently define the disputed terms set forth above. Accordingly, based upon 151 Patent's specification and the prosecution history, both of which were before this Court during the Preliminary Injunction/*Markman* Hearing, this Court construes the disputed terms as follows:

    a.   Whereby said latching system includes said one end wall as means to prevent spreading of adjoining galleries once latched to one another –

        i.   The gallery must have a latching system for attaching a gallery to an adjoining gallery in an end-to-end relationship. Exhibit 501, Col. 12, ll. 25 – 28.

        ii.   The latching system must include an end wall. *Id.* at Col. 12, ll. 41 – 43.

        iii.   This Court having concluded that, as a matter of law, use of the word means invokes a presumption that 35 U.S.C. § 112, ¶ 6 applies, this Court finds that Claim 16 does not disclose sufficient structure to take Claim outside the scope of 35 U.S.C. § 112, ¶ 6. Exhibit 501, Col. 12, ll. 41 – 43.

        iv.   This Court, having looked to the specification to determine the structure associated with the "means to prevent spreading", finds that the only structure disclosed as preventing spreading anywhere in the specification

-15-

comprises lugs, notches or apertures, stepped support members, vertical support walls and end walls, Exhibit 501, Col. 5, l. 66 – Col. 6, l. 2, and that the "means to prevent spreading" must include lugs, notches or apertures, stepped support members, vertical support walls and end walls.

    v.    Nothing in the specification of the '151 Patent suggests that any of the lugs, notches or apertures, stepped support members and vertical support walls are optional.  Exhibit 501.

b.   End Wall –

    i.    The end wall is portion of the main body of the gallery that must cover an end of the gallery.  Exhibit 501, Col. 4, ll. 28 – 30; *see also* Exhibit 501, Fig. 4.

    ii.    There must be an end wall covering one end of the main body portion of the claimed drain field gallery. *Id.* at Col. 12. ll. 20 – 24.

    iii.    The end wall and the main body portion of the drain field gallery must be formed as a solid piece.  *Id.* at Col. 5, ll. 54-57.

    iv.    The end wall must inhibit lateral spreading of said gallery and of said adjoining gallery and restraining said arch-shaped configuration against deformation.  *Id.* at Col. 12, ll. 32 – 35.

    v.    The end wall must have an opening therethrough dimensionally sized to accept a drainpipe for transporting the liquid to said gallery. *Id.* at Col. 12, ll. 21 – 24.

-16-

vi. The end wall must have an opening dimensionally sized to accept a

drainpipe for transporting liquid to the gallery. *Id.* at Col. 12, ll. 21 – 24.

32. This Court finds that the statements made by DiTullio during the prosecution of the '151

Patent support a finding that the "means to prevent spreading" claimed in Claim 16

includes the combination of lugs, notches or apertures, stepped support members, vertical

support walls and end walls, or the equivalents thereof. In particular:

a. The claim that issued as Claim 16 was originally a dependent means-plus-function

claim providing that the latching system of the claimed gallery "further includes

"means to prevent spreading" of adjoining galleries once latched to one another."

Exhibit 20, p. 26.

b. Once again, the only "means to prevent spreading" disclosed in the application

was the combination of lugs, notches and apertures, stepped support members,

vertical support walls and end walls discussed above. *See* Exhibit 20.

c. After amending the base and intervening claims, Claim 16 was deemed allowable

if rewritten in independent form, incorporating all of the limitations of the base

and any intervening claims. *Id.* at p. 128

d. DiTullio attempted to obtain coverage based upon the end wall without the lugs,

notches or apertures, stepped support members or vertical support walls as the

"means to prevent spreading". In particular, after the USPTO issued a final

rejection, DiTullio proposed amending the base claim to provide that the end wall

of the gallery "inhibit[ed] lateral spreading of said gallery and of said adjoining

-17-

gallery and restraining said arch-shaped configuration against deformation." *Id.* at

132 – 33. DiTullio represented to the Examiner that Claim 1 specifically defined

the latching system associated with the end wall and provided that the end wall

provided for lateral rigidification. *Id.* at 139. DiTullio stated that "[t]here is

likewise no suggestion that a second gallery with no proximal end wall may be

latched in seated engagement with the adjoining gallery to achieve the lateral

rigidification defined in Claims 1, 18 and 35." *Id.* at p. 140.

e.  The USPTO rejected DiTullio's found that DiTullio's proposed amendment

would not overcome the final rejection. *Id.* at p. 143.

f.  After DiTullio filed a continuation application and a preliminary amendment

incorporating the aforementioned amendment, the USPTO rejected the claim after

finding that

> [w]ith regard to the claim that the 'said at least one end wall
> inhibiting lateral spreading of said gallery and of said
> [adjoining] gallery and restraining said arch-shaped
> configuration against deformation', this is a function
> limitation that does not add significant structure to the
> apparatus claims. The combination of Gorman and Bailey
> would inherently perform this function.

*Id.* at p. 203.

g.  Thereafter, the USPTO rejected several variations that attempted to

claim the end wall without the lugs, notches or apertures, stepped

support members, and vertical support walls. *Id.* at 204 – 218.

h.  When DiTullio was unable to overcome the rejections, DiTullio

-18-

rewrote the original dependent means-plus-function claim that was

directed towards the "means to prevent spreading" in independent

form. *Id.* at 238.

33.  This Court finds that the prosecution history supports a finding that Claim 16 is a means-

plus-function claim and that the ""means to prevent spreading" of adjoining galleries once

latched to one another" is directed towards the combination of lugs, notches or apertures,

stepped support members, vertical support walls and end wall disclosed in the specification

as preventing spreading of adjoining galleries once latched together, together with

equivalents thereof. Exhibit 501, Col. 5, l. 66 – Col. 6, l. 2.

34.  This Court further finds that nothing in the specification of the '151 Patent suggests that any

of the lugs, notches or apertures, stepped support members and vertical support walls are

optional, Exhibit 501.

35.  Finally, this Court finds that, due to the repeated rejections by the USPTO, Claim 16 does not

cover devices in which the end wall is the only "means to prevent spreading". *See* Paragraph

30, *supra*.

36.  Having construed the disputed terms in Claims 11 and 16, and having compared both claims

to the accused devices, with regard to Cultec's and DiTullio's claim that the Old Chambers

infringe Claim 11, this Court finds that:

a.  The first galleries of the Old Chambers have a first end wall on an end of the

chamber. Index of Exhibits to Plaintiff's Motion for Preliminary Injunction,

Exhibits 1 and 3.

-19-

b.  The first galleries of the Old Chambers do not have a second end wall. *Id.*

c.  Instead, the Old Chambers may include an end plate. *Id.*

d.  An end plate does not fall within the scope of Claim 11, either literally or under the doctrine of equivalents, because the end plate is separate from the gallery. *Id.*

e.  The gallery that adjoins the first gallery has a third end wall. *Id.*

f.  The end wall of the Old Chamber has an opening for transporting liquid. *Id.*

g.  The opening is not capable of acceptable a drain pipe. *Id.*

h.  As manufactured and sold by Infiltrator and Stormtech, the end wall of the Old Chambers does not have a drain pipe extending therethrough. *Id.*

i.  The Old Chambers have a latching system that allows the second gallery to be attached to the first gallery in a overlapping end-to-end engaged relationship. *Id.*

j.  The latching system of the Old Chambers do not include means to prevent lateral spreading of the first terminal gallery and the second adjoining gallery once the galleries are latched to one another. Transcript of November 26, 2002, Preliminary Injunction/*Markman* Hearing, p. 247, l. 8 – p. 250, l. 15; p. 262, ll. 3 – 24.

k.  In addition, the Old Chambers do not include a "means to prevent spreading" comprising lugs, notches or apertures, stepped support members, vertical support walls, end walls or the equivalent thereof. Exhibits 1 and 3; Transcript of November 26, 2002, Preliminary Injunction/*Markman* Hearing, p. 250, l. 22 – p. 252, l. 2.

37. Based on the foregoing, this Court finds that the Old Chambers do not infringe Claim 11.

38. Having construed the disputed terms in Claims 11 and 16, and having compared both claims to the accused devices, with regard to Cultec's and DiTullio's claim that the New Chambers infringe Claim 11, this Court finds that:

    a. The New Chambers do not include a first, second or third end wall. Index of Exhibits to Plaintiffs' Motion for Preliminary Injunction, Exhibits 2 and 4.

    b. The first and last gallery in a row of New Chambers may include an end plate. *Id.*; Transcript of November 26, 2002, Preliminary Injunction/*Markman* Hearing, p. 260, ll. 8 – 12.

    c. An end plate does not fall within the scope of Claim 11, either literally or under the doctrine of equivalents, because the end plate is separate from the gallery. Exhibits 2 and 4.

    d. The end plates of the New Chambers do not have an opening for transporting liquid. *Id.*

    e. As manufactured by Infiltrator and Stormtech, the end plates of the New Chambers does not have a drain pipe extending therethrough. *Id.*

    f. The New Chambers have a latching system that allows the second gallery to be attached to the first gallery in a overlapping end-to-end engaged relationship. *Id.*;

    g. The latching system of the New Chambers does not include means to prevent lateral spreading of the first terminal gallery and the second adjoining gallery once

the galleries are latched to one another. *Id.*; Transcript of November 26, 2002, Preliminary Injunction/*Markman* Hearing, p. 265. l. 2 – p. 266, l. 11.

    h.   In addition, the New Chambers do not include a "means to prevent spreading" comprising lugs, notches or apertures, stepped support members, vertical support walls, end walls or the equivalent thereof. Exhibit 2 and 4; Transcript of November 26, 2002, Preliminary Injunction/*Markman* Hearing, p. 264, l. 13 – p. 266, l. 11.

39.   Based on the foregoing, this Court finds that the New Chambers do not infringe Claim 11.

40.   Having construed the disputed terms in Claims 11 and 16, and having compared both claims to the accused devices, with regard to Cultec's and DiTullio's claim that the Old Chambers infringe Claim 16, this Court finds that:

    a.   The Old Chambers have an end wall covering one end of the main body portion. Exhibits 1 and 3.

    b.   The end wall does not inhibit lateral spreading of the gallery. Transcript of November 26, 2002, Preliminary Injunction/*Markman* Hearing, p. 247, l. 8 – p. 250, l. 15; p. 262, ll. 3 – 24.

    c.   The end wall does not restrain the arch-shaped configuration of the gallery against deformation. *Id.*

    d.   The end wall does not have an opening therethrough dimensionally sized to accept a drainpipe for transporting the liquid to said gallery. Exhibits 1 and 3.

-22-

e.  The Old Chambers have a latching system for attaching a gallery to an adjoining gallery in an end-to-end relationship. *Id.*

f.  The latching system of the Old Chambers includes an end wall. *Id.*

g.  The Old Chambers do not have lugs, notches or apertures, stepped support members, vertical support walls and end walls, or the equivalents thereof. *Id.*; Transcript of November 26, 2002, Preliminary Injunction/*Markman* Hearing, p. 250, l. 22 – p. 252, l. 2.

41.  Based on the foregoing, the Old Chambers do not infringe Claim 16.

42.  Having construed the disputed terms in Claims 11 and 16, and having compared both claims to the accused devices, with regard to Cultec's and DiTullio's claim that the New Chambers infringe Claim 16, this Court finds that:

a.  The New Chambers do not have end wall covering one end of the main body portion. Exhibits 2 and 4.

b.  The first and last gallery in a row of New Chambers may include an end plate. *Id.*; Transcript of November 26, 2002, Preliminary Injunction/*Markman* Hearing, p. 260, ll. 8 – 12.

c.  An end plate does not fall within the scope of Claim 11, either literally or under the doctrine of equivalents, because the end plate is separate from the gallery. Exhibits 2 and 4.

-23-

d.  The end plate does not inhibit lateral spreading of the gallery.  Transcript of November 26, 2002, Preliminary Injunction/*Markman* Hearing, p. 265. l. 2 – p. 266, l. 11.

e.  The end plate does not restrain the arch-shaped configuration of the gallery against deformation.  *Id.*

f.  As sold by Infiltrator and Stormtech, the end plate does not have an opening therethrough dimensionally sized to accept a drainpipe for transporting the liquid to said gallery.  Exhibits 2 and 4.

g.  The New Chambers have a latching system for attaching a gallery to an adjoining gallery in an end-to-end relationship.  *Id.*

h.  The latching system of the New Chambers does not include an end wall.  *Id.*

i.  The New Chambers do not have lugs, notches or apertures, stepped support members, vertical support walls and end walls, or the equivalents thereof.  *Id.*; Transcript of November 26, 2002, Preliminary Injunction/*Markman* Hearing, p. 264, l. 13 – p. 266, l. 11.

43.  Based on the foregoing, the New Chambers do not infringe Claim 16.

44.  This Court finds that DiTullio and Cultec, acting directly and through agents, sent a series of so-called "Take Notice" letters to Infiltrator's and Stormtech's actual and potential customers, including a November 16, 2001, letter to Falite Bros., Inc. in Wakefield, Massachusetts.  *See* Index of Exhibits to Plaintiffs' Motion for Preliminary Injunction,

-24-

Exhibit 15; *see also* Transcript of November 26, 2002 Preliminary Injunction/*Markman*

Hearing, p. 321, ll. 1 – 9; p. 322, l. 11 – p. 323, l. 3.

45.     This Court finds that the Take Notice letters refers to the following patents and

trademarks:

      a.   U.S. Patent No. 5,087,151;

      b.   U.S. Patent No. 5,419,838;

      c.   U.S. Patent No. 6,129,482;

      d.   U.S. Trademark Registration 1,610,507 for CONTACTOR; and

      e.   U.S. Trademark Registration 1,611,148 for TRIPDRAIN.

Exhibit 15.

46.     The Take Notice letters also refer to various other unregistered trademarks, including

RECHARGER, PAC, STORMFILTER, HVLV, VPB-500, and to other pending U.S.

patents.  Exhibit 15.

47.     The Take Notice letters "strongly urge" customers who are considering purchasing

Infiltrator's and Stormtech's products to "promptly seek your legal counsel's advice.

Exhibit 15.

48.     The Take Notice letters further provide that "[i]n the event of patent infringement or

contributory patent infringement, Robert DiTullio and/or Cultec, Inc. will seek damages

from all parties involved to the fullest extent of the applicable laws." *Id.*

49.     At the time that DiTullio and Cultec sent the Take Notice letters, neither Cultec nor

DiTullio had any basis to believe that any of Infiltrator's or Stormtech's products

infringed United States Patent Nos. 5,419,838 or 6,129,482.  In addition, Cultec and

DiTullio had no basis to believe that Infiltrator and Stormtech were infringing any of

DiTullio's and Cultec's trademarks.  *See* Exhibit 600, p. 143, l. 18  – p. 146, l. 8; p. 140,

ll. 10 – 18.

50.     This Court further finds that Cultec and DiTullio have been claiming on Cultec's website

that Cultec is the only chamber manufacturer that can legally manufacture chambers with

interlocking ribs. *See* Index of Exhibits to Plaintiffs' Motion for Preliminary Injunction,

Exhibit 8 ("Cultec is the only corporation authorized to use the patented overlapping rib

connection.  No other chamber manufacturer legally possess this capability.  Be sure to

check that any chamber utilizing an overlapping rib connection is manufactured by

Cultec, Inc.").

51.     This Court finds Cultec's and DiTullio's claims that Cultec is the only entity that can

legally manufacture chambers with interlocking ribs are false and misleading.

52.     This Court finds that Cultec's claims that Infiltrator and Stormtech are infringing Cultec's

and DiTullio's trademarks are false and misleading.

53.     This Court finds that Cultec's claims in the Take Notice Letters that Infiltrator and

Stormtech are infringing U.S. Patent Nos. 5,419,838 and 6,129,482 are false and

misleading.

54.     This Court finds that Cultec's claims that Infiltrator and Stormtech are infringing the '151

Patent is false and misleading.

55.  This Court finds that the aforementioned false and misleading statements were made during commercial advertising or promotion about goods or services.

56.  This Court finds that Cultec's and DiTullio's false and misleading statements are likely to deceive a substantial segment of the intended audience.  Transcript of November 26, 2002, Preliminary Injunction/*Markman* Hearing, p. 267, l. 17 – p. 268, l. 5

57.  This Court finds that Cultec and DiTullio's deception is material in that it is likely to influence purchasing decisions.  *Id.*

58.  This Court finds that Cultec and DiTullio cause their false and misleading statements to enter interstate commerce.  *See* Exhibits 8 (website available to potential customers from outside of Connecticut), 15 (Take Notice letter sent from Connecticut to Massachusetts).

59.  This Court finds that Cultec's and DiTullio's false and misleading statements may result in probable injury to Infiltrator and Stormtech because potential customers may not purchase Infiltrator's and Stormtech's products.  Transcript of November 26, 2002, Preliminary Injunction/*Markman* Hearing, p. 267, l. 17 – p. 268, l. 5

60.  This Court finds that Cultec's and DiTullio's statements were made in bad faith because Cultec and DiTullio know that Infiltrator and Stormtech were not infringing any of Cultec's and DiTullio's patents or trademarks.  Exhibit 600, p. 138, l. 12 – p. 144, l. 9.

61.    Based on the foregoing, this Court finds that Infiltrator's and Stormtech's Motion for

Preliminary Injunction should be allowed and that Cultec's and DiTullio's Motion for

Preliminary Injunction should be denied.

RESPECTFULLY SUBMITTED
INFILTRATOR SYSTEMS, INC.
STORMTECH, INCORPORATED
And JAMES M. NICHOLS

Dated: 12/22/04

By: _____
Michael J. Rye, Esq.  (ct 18354)
Daniel E. Bruso, Esq. (ct 18666)
CANTOR COLBURN, LLP
55 Griffin Road South
Bloomfield, CT 06002
(860) 286-2929 (Telephone)
(860) 286-0115 (Telecopier)

**CERTIFICATE OF SERVICE**

I, Daniel E. Bruso, Esquire, attorney for Plaintiffs in the above-captioned matter, hereby certify that, on the ___22d___ day of December, 2004, I served a true and accurate copy of the foregoing SURREPLY MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING PLAINTIFFS' UNFAIR COMPETITION CLAIMS, via Federal Express, upon:

Stephen P. McNamara
Steven B. Simonis, Esquire
St.Onge, Steward, Johnston & Reens LLC
986 Bedford Street
Stamford Connecticut 06905-5619


Daniel E. Bruso