**IN THE UNITED STATES DISTRICT COURT FILED**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| INFILTRATOR SYSTEMS, INC. and STORMTECH, INCORPORATED | ) ) ) ) | 2004 DEC 23  A 8: 23 |
|  | ) | U.S. DISTRICT COURT |
| Plaintiffs, | ) | HARTFORD, CT. |
|  | ) |  |
| vs. | ) | Civil Action No. 301CV2188AWT |
|  | ) |  |
| CULTEC, INC. and ROBERT J. DITULLIO | ) ) |  |
|  | ) |  |
| Defendants | ) |  |
| CULTEC, INC. and ROBERT J. DITULLIO | ) ) |  |
| Counterclaimants and Third Party Plaintiffs | ) ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| INFILTRATOR SYSTEMS, INC. STORMTECH INCORPORATED | ) ) |  |
| Counterclaim Defendants and | ) ) |  |
| JAMES M. NICHOLS FABRI-FORM CO., INC. | ) ) |  |
| Third Party Defendants | ) |  |

**PLAINTIFFS' AND THIRD PARTY DEFENDANT'S PROPOSED CONCLUSIONS OF LAW**

Plaintiffs Infiltrator Systems, Inc. and Stormtech, Incorporated and Third Party Defendant

James M. Nichols ("Infiltrator", "Stormtech" and "Nichols", respectively) hereby submit their

-1-

proposed conclusions of law, all pursuant to Fed. R. Civ. P. 52(a).

1.    This Court concludes, as a matter of law, that it has original jurisdiction over the

matters presented herein pursuant to 28 U.S.C. §§ 1331, 1338, 1367.

2.    This Court concludes, as a matter of law, that the so-called "Take Notice Letters" that

Cultec and DiTullio sent to Infiltrator's and Stormtech's customers create an actual

controversy within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201 *et*

*seq.*, regarding whether Stormtech's and Infiltrator's storm and waste water drainage

chambers infringe United States Patent No. 5,087,151 (the " '151 Patent").

*Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.*, 248

F.3d 1333, 1340-41 (Fed. Cir. 2001) (*quoting Super Sack Mfg. Corp. v. Chase*

*Packaging Corp*, 57 F.3d 1054, 1058 (Fed. Cir. 1990)) (in patent cases, controversy

exists where there is (1) an explicit threat or other action by the patentee, which

creates a reasonable apprehension on the part of the declaratory plaintiff that it will

face an infringement suit, and (2) present activity which could constitute

infringement or concrete steps taken with the intent to conduct such activity)

3.    This Court concludes that, as a matter of law, that the controversy between the parties

extends to Infiltrator's and Stormtech's old and new chambers (the "Old Chambers"

and the "New Chambers", respectively). *EMC Corp. v. Norand Corp.*, 89 F.3d 807,

811 (Fed. Cir. 1996) (*quoting Phillips Plastics Corp. v. Kato Hatsujou Kabushiki*

*Kaisha*, 57 F.3d 1051, 1053 (Fed. Cir. 1995) (Declaratory Judgment Act does not

allow a patentee to manipulate an alleged infringer by couching its phrases in such a

way as to avoid declaratory judgments when an actual controversy exists).

4. More particularly, this Court concludes, as a matter of law, that Cultec's and DiTullio's conduct, particularly the statements of their agents to Caddell Construction and the Take-Notice Letters, create a reasonable apprehension on the part of Infiltrator and Stormtech that they would face an infringement action over both the Old Chamber and the New Chambers. *Sierra Applied Sciences, Inc. v. Advanced Energy Industries, Inc.*, 363 F.3d 1361, 1373 (Fed. Cir. 2004) (*quoting BP Chems. Ltd. v Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993).

5. This Court further concludes, as a matter of law, that Infiltrator and Stormtech have taken sufficiently concrete steps to manufacture, sell or offer to sell both the Old Chambers and the New Chambers to create a controversy within the meaning of the Declaratory Judgment Act. *Sierra Applied Sciences, Inc.*, 363 F.3d at 1379 – 80 (once design of potentially infringing design is fixed, case or controversy within the meaning of Declaratory Judgment Act can exist, even if accused device has not been made, sold or offered for sale).

6. This Court concludes that, as a matter of law, a party is entitled to a preliminary injunction if the party establishes "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *United States v. Siemens Corp.*, 621 F.2d 499, 505 (2d Cir. 1980) (*quoting Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596

-3-

F.2d 70, 72 (2d Cir. 1979); *Sonesta Int'l Hotels Corp. v. Wellington Assoc.*, 483 F.2d 247 (2d Cir. 1973). *Constitution State Challenge, Inc. v. Nyemcheck*, 2001 WL 640417 (D.Ct. June 1, 2001).

7.  This Court concludes, as a matter of law, that "[i]n order to demonstrate irreparable harm sufficient to satisfy the standard for preliminary injunctive relief, the plaintiff must demonstrate more than the risk of mere monetary loss." *Constitution State Challenge, Inc. v. Nyemchek,* 2001 WL 640417 (D.Ct. June 1, 2001) (*citing Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)).

8.  This Court concludes that, as a matter of law, "a presumption of irreparable harm arises in Lanham Act cases once the plaintiff establishes likelihood of success on a claim of literal falseness." *King v. Innovation Books*, 976 F2d 824, 831 (2nd Cir 1992) (Irreparable harm arises in Lanham Act cases once the Plaintiff establishes likelihood of success on a claim of literal falseness).

9.  This Court concludes, as a matter of law, that it must construe the claims of the patent in order to address the issues presented in the parties' respective Motions for Preliminary Injunction and that "[a] literal patent infringement analysis involves two steps: the proper construction of the asserted claim and a determination as to whether the accused method or product infringes the asserted claim as properly construed." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-82 (Fed. Cir. 1992).

10. This Court concludes that, as a matter of law, claims construction is this Court's exclusive responsibility. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370

-4-

(1996), *aff'g* 52 F.3d 967 (Fed. Cir. 1995) (*en banc*).

11. This Court concludes, as a matter of law, that "it is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, *i.e.,* the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp.*, 90 F.3d at 1582 (*citing Markman*, 52 F.3d at 979).

12. With regard to the use of intrinsic evidence in construing patent claims, this Court concludes, as a matter of law, that "[s]uch intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." *Id. See also Bell Communications Research Inc. v. Vitalink Communications Corp.*, 55 F. 3d. 615, 620 (Fed. Cir. 1995).

13. This Court concludes, as a matter of law, it "must give meaning to all the words in . . . [the] . . . claims." *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1551, 1557 (Fed. Cir. 1995) (*citing In re Sabatino*, 480 F.2d 911, 913 (C.C.P.A. 1973) ("Claims limitations defining the subject matter of the invention are never disregarded").

14. This Court concludes, as a matter of law, that "it is **always** necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning. The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Vitronics*, 90 F.3d at 1582.

15.    This Court concludes as a matter of law, that reviewing the prosecution history will

disclose subject matter that the inventor relinquished during the prosecution of the

patent and that is, therefore, outside the scope of the claims. *Southwall Tech., Inc. v.*

*Cardinal IG Co.*, 54 F.3d 570, 1576 (Fed. Cir. 1995) (*cited in Markman,* supra);

*Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 863 (Fed. Cir. 1991).

16.    This Court concludes, as a matter of law, that it may review the prior art cited within

the prosecution history to gain a general idea of what the claims do not cover. *See*

*Autogiro Company of America v. United States*, 384 F.2d 391, 399 (Ct. Cl. 1967).

17.    This Court concludes, as a matter of law that an inventor's use of the word "means"

in a claim creates a presumption that the claim element is in means-plus-function

form as provided for by 35 U.S.C. § 112, ¶ 6. *Personalized Media Communications,*

*L.L.C. v. ITC*, 161 F.3d 696, 703 (Fed. Cir. 1999).

18.    This Court concludes, as a matter of law, that means-plus-function claims cover the

corresponding structure, material or acts described in the specification and its

equivalents. 35 U.S.C. § 112, ¶ 6; *Personalized Media Communications, L.L.C. v.*

*ITC*, 161 F.3d at 703

19.    This Court concludes, as a matter of law, that "[c]onstruction of a means plus

function limitation requires identification of the function recited in the claim and a

determination of what structures have been disclosed in the specification that

correspond to the means for performing that function." *Epcon Gas Systems, Inc. v.*

*Bauer Compressors, Inc.*, 279 F.3d 1022, 1032 (Fed. Cir. 2002).

20.    This Court concludes, as a matter of law, that "[s]tructure disclosed in the specification is 'corresponding structures' only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Id.* (quoting *B. Braun Medical, Inc. v. Abbott Laboratories*, 124 F.3d 1419, 1424 (Fed. Cir. 1997)).

21.    This Court concludes, as a matter of law, that "[t]he duty to link or associate structure to function is the *quid pro quo* for the convenience of employing §112, ¶6." *B. Braun Medical, Inc.,* 124 F.3d at 1424.

22.    This Court concludes, as a matter of law, that if a patentee fails to associate a corresponding structure with a means plus function claim, then the claim is invalid because the applicant has failed to particularly point out and claim the invention, all as required by 35 U.S.C. §112, ¶2. *B. Braun Medical, Inc.,* 124 F.3d 1419, 1425 (Fed. Cir. 1997) (quoting *In re Donaldson Co.*, 16 F.3d 1189, 1195 (Fed. Cir. 1994) (*en banc*)).

23.    This Court concludes, as a matter of law, that "[t]he literal scope of a properly construed means-plus-function limitation does not extend to all means for performing a certain function. Rather, the scope of such claim language is sharply limited to the structure disclosed in the specification and its equivalents. Moreover, the extent of equivalents must be interpreted in light of the disclosure of the invention in the specification, as a whole, as well as the prosecution history." *J&M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360, 1367 (Fed. Cir. 2001).

24.   This Court concludes, as a latter of law, that statements made during prosecution will limit the scope of a means plus function claim because "positions taken before the PTO may bar an inconsistent position on claim construction under §112, ¶6." *Ballard Medical Products v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1359 (Fed. Cir. 2001) (*quoting Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998) *and Alpex Computer Corp. v. Nintendo Co.*, 102 F.3d 1214, 1221 (Fed. Cir. 1996)).

25.   This Court concludes, as a matter of law, that extrinsic evidence is not allowed to cloud the plain language of patent claims. Extrinsic evidence "is that evidence which is external to the patent and file history...." *Vitronics*, 90 F.3d at 1584. Extrinsic evidence includes expert testimony, inventor testimony and technical treatises and dictionaries to the extent that the technical treatises or dictionaries contradict the intrinsic evidence. *Id.*; *see also Texas Digital Systems, Inc. v. Telegenix*, 308 F.3d 1193, 1204 (Fed. Cir. 2002) (although dictionaries are useful tools for defining disputed terms in a claim, the dictionary definition must be rejected where it is inconsistent with the definition used in the specification).

26.   With regard to Infiltrator's and Stormtech's claims that Cultec's and DiTullio's claims that Infiltrator and Stormtech are infringing DiTullio's patents render them liable to Infiltrator and Stormtech for violations of the Lanham Action, this Court concludes, as a matter of law, that Infiltrator and Stormtech "must allege and ultimately prove: (1) that the defendant . . . made a false or misleading statement of

fact in commercial advertising or promotion about the plaintiff's goods or services; (2) that the statement actually deceives or is likely to deceive a substantial segment of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the defendant caused the statement to enter interstate commerce; and (5) that the statement results in actual or probable injury to the plaintiff." *Zenith Electronics Systems, Inc. v. Exzec, Inc.*, 182 F.3d 1340, 1348 (Fed. Cir. 1999). In addition, Infiltrator and Stormtech must establish that Cultec's and DiTullio's statements were made in bad faith, which includes, but is not limited to, knowingly false statements regarding infringement. *Id.* at 1353-54.

27.    This Court concludes, as a matter of law, that a defendant violates the Lanham Act if the defendant knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out. *Id.* at 1354 – 55 (*citing Mikohn Gaming*, 165 F.3d at 897, 49 U.S.P.Q. 2d at 1312 (noting that "bad faith" may encompass subjective as well as objective considerations, and that the patentee's particular statements themselves are not irrelevant to determining bad faith)).

28.    This Court concludes, as a matter of law, that it must:

   a.  Determine whether the message conveyed is literally true or literally false based on its own review of a statement. *Hertz Corp. v Avis, Inc.*, 867 F. Supp. 208, 212 (S.D.N.Y. 1994) (*citing Coca-Cola Co. v. Tropicana Prod., Inc.*, 690 F.2d 312, 317-18 (2d Cir. 1982); *American Home Prod. Corp. v. Johnson & Johnson*, 577

F.2d 160, 165 (2d Cir. 1978));

    b.  Rely on its own common sense and logic in interpreting the statement's message. *Hertz Corp.*, 867 F. Supp. at 212 (*citing Johnson & Johnson v. GAC Int'l Inc.*, 862 F.2d 975, 980-82 (2d Cir. 1988)); and

    c.  View the statement in its entirety. *American Home Prod. Corp.*, 577 F.2d at 165, n. 11.

29.    This Court concludes, as a matter of law, that statements may be true, but when the statement is viewed as a whole, it may make false representations. *American Home Prod. Corp.*, 577 F.2d at 165, n. 11. "[I]t is therefore necessary . . . to consider the advertisement in its entirety and not to engage in disputatious dissection. The entire mosaic should be viewed rather than each tile separately. '[T]he buying public does not ordinarily carefully study or weigh each word in an advertisement. The ultimate impression upon the mind of the reader arises from the sum total of not only what is said but also of all that is reasonably implied.'" *American Home Prod. Corp.*, 577 F.2d at 165, n. 11 (*quoting FTC v. Sterling Drug, Inc.*, 317 F.2d 669, 674 (2d Cir. 1963)).

30.    This Court concludes, as a matter of law, that it must also consider the necessary implications conveyed in deciding the literal meaning of the statement. *S.C. Johnson & Son, Inc.*, 930 F. Supp. at 781; *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 947 (3d Cir. 1993) ("*Castrol II*") (finding commercial literally false based on the commercial's necessary implication); *Playskool, Inc. v. Product Dev. Group, Inc.*, 699 F. Supp.

-10-

1056, 1060 (E.D.N.Y. 1988) (same); *Tambrands, Inc. v. Warner-Lambert Co.*, 673 F. Supp. 1190, 1194 (S.D.N.Y. 1987) (defendant's statements "are facially false . . . by necessary implication"); *Cuisinarts, Inc.*, 1982 WL at *1 (same); *see also Coca-Cola Co. v. Tropicana Prod. Inc.*, 690 F.2d 312 (2d Cir. 1982) (creating false impression that pasteurized orange juice was fresh squeezed); *Cuisinarts, Inc. v. Robot-Coupe Int'l Corp.*, No. 81 Civ. 731-CSH, 1982 WL 121559 at *1 (S.D.N.Y. June 9, 1982) (claiming superiority over a nonexistent product).

31.    Based upon the evidence taken during the Preliminary Injunction/*Markman* Hearing, together with the Declarations and Exhibits submitted by both parties in support of their respective Motions for Preliminary Injunction, this Court concludes, as a matter of law, that Claim 11 of the '151 Patent is set forth as follows:

In a drain field for allowing liquid to seep into adjoining ground,

A. a first terminal gallery comprising:

i. a first elongated main body portion having an arch-shaped configuration thereby creating an enlarged enclosure, said elongated main body portion having first and second ends;

ii. first and second end walls respectively covering said first and second ends of said first elongated main body portion, each of said end walls having an opening therethrough for transporting the liquid to and from said first gallery; and

iii. a first latching engagement system associated with said first end wall for attaching said terminal gallery to an adjoining gallery in an end-to-end engaged relationship, said latching engagement system including a first rib on said first terminal gallery main body portion adjacent said first end wall, said rib being dimensionally sized to mate engagingly with an associated rib on an adjoining gallery;

-11-

B. a second adjoining drain field gallery having only one end wall at its distal end, comprising:

    i. a second elongated main body portion having an arch-shaped configuration thereby creating an enlarged enclosure, said second elongated main body portion having two opposed ends;

    ii. a third end wall covering one opposed distal end of said second elongated main body portion, said third end wall having an opening therethrough for transporting the liquid to an adjoining gallery; and

    iii. a second latching engagement system associated with the other opposed proximal end for attaching said second adjoining gallery to said first terminal gallery in an overlapping end-to-end engaged relationship, said second latching engagement system including a second rib on said second adjoining gallery main body portion adjacent the other opposed proximal end, said second rib being dimensionally sized to vertically seat engagingly on said first rib of said first terminal gallery whereby said first and second galleries are engagingly latched together thereby preventing relative longitudinal movement therebetween, said first and second latching systems further including means to prevent lateral spreading of said first terminal gallery and said second adjoining gallery once said galleries are latched to one another, including said first end wall inhibiting lateral spreading of said first gallery and of said adjoining second gallery and restraining said arch-shaped configuration against deformation; and

C. a drain pipe extending through at least one of said openings in said first, second and third end walls for transporting liquid to the drain field.

*See* Exhibit 501, Col. 8, l. 40 - Col. 9, l. 29.

32.    Based upon the evidence taken during the Preliminary Injunction/*Markman* Hearing, together with the Declarations and Exhibits submitted by both parties in support of their respective Motions for Preliminary Injunction, this Court concludes, as a matter

of law, that the following claim language of Claim 11 is disputed and must be construed:

a.  End Walls;

b.  an opening therethrough for transporting the liquid;

c.  a drain pipe extending through at least one of said openings in said first, second and third end walls for transporting liquid to the drain field; and

d.  Means to prevent lateral spreading of said first terminal gallery and said second adjoining gallery once said galleries are latched to one another, including said first end wall inhibiting lateral spreading of said first gallery and of said adjoining second gallery and restraining said arch-shaped configuration against deformation.

33.  After examining the language of Claim 11, this Court concludes, as a matter of law, that Claim 11 does not sufficiently define the disputed terms set forth above. Accordingly, based upon 151 Patent's specification and the prosecution history, both of which were before this Court during the Preliminary Injunction/*Markman* Hearing, this Court construes the disputed terms as follows:

a.  Means to prevent lateral spreading of said first terminal gallery and said second adjoining gallery once said galleries are latched to one another, including said first end wall inhibiting lateral spreading of said first gallery and of said adjoining second gallery and restraining said arch-shaped configuration against deformation–

i.   There must be a latching system that allows the second gallery to be attached to the first gallery in a overlapping end-to-end engaged relationship.  Exhibit 501, Col. 9, ll. 4 – 8.

ii.  The latching system must include means to prevent lateral spreading of the first terminal gallery and the second adjoining gallery once the galleries are latched to one another.  *Id.* at ll. 17 – 21

iii. This Court having concluded that, as a matter of law, use of the word means invokes a presumption that 35 U.S.C. § 112, ¶ 6 applies, this Court concludes, as a matter of law,  that Claim 11 does not disclose sufficient structure to take Claim outside the scope of 35 U.S.C. § 112, ¶ 6.  Exhibit 501, Col. 9. ll. 4 – 25.

iv.  This Court, having looked to the specification to determine the structure associated with the "means to prevent spreading", concludes, as a matter of law,  that the only structure disclosed as preventing spreading anywhere in the specification comprises lugs, notches or apertures, stepped support members, vertical support walls and end walls, Exhibit 501, Col. 5, l. 66 – Col. 6, l. 2, and therefore concludes, as a matter of law,  that the "means to prevent spreading" must include lugs, notches or apertures, stepped support members, vertical support walls and end walls.

     v.  Nothing in the specification of the '151 Patent suggests that any of the lugs, notches or apertures, stepped support members and vertical support walls are optional.  Exhibit 501.

b.  End Wall –

     i.  The end wall is portion of the main body of the gallery that must cover an end of the gallery.  Exhibit 501, Col. 4, ll. 28 – 30; *see also* Exhibit 501, Fig. 4.

     ii.  There are three (3) end walls.  Exhibit 501, Col. 8, ll. 47 – 51, l. 67 – Col. 9, l. 3.

     iii.  The first and second end walls must be disposed, respectively, on the first and second ends of the first terminal gallery.  *Id.* at Col. 8, ll. 47 – 51; *see also* Fig. 4.

     iv.  The third end wall must be disposed on the distal end of the second drain field gallery that adjoins the first terminal gallery.  *Id.* at Col. 9, ll 67 – 68.

     v.  The first and second end walls and the first terminal gallery must be formed as a solid piece.  *Id.* at Col. 5, ll. 54-57.

     vi.  The third end wall and the second terminal gallery also must be formed as a solid piece.  *Id.*

c.  An opening therethrough for transporting the liquid –

    i.  The first, second and third end walls must have an opening for transporting liquid. Exhibit 501, Col. 8, ll. 47-51; *Id.* at Col. 8, l. 67 – Col. 9, l. 3.

    ii.  The openings must be capable of accepting a drain pipe. *Id.* at Col. 9, ll. 26 – 28.

d.  A drain pipe extending through at least one of said openings in said first, second and third end walls for transporting liquid to the drain field –

    i.  There must be a drain pipe extending through at least one of the openings in the first, second or third end walls. Exhibit 501, Col. 9, ll. 26 – 28.

34.    This Court concludes, as a matter of law, that the statements made by DiTullio during the prosecution of the '151 Patent support a finding that the "means to prevent spreading" claimed in Claim 11 includes the combination of lugs, notches or apertures, stepped support members, vertical support walls and end walls, or the equivalents thereof. In particular:

a.  DiTullio repeatedly attempted to obtain coverage for a drainage gallery in which the end wall prevented spreading without the lugs, notches or apertures, stepped support members and vertical support walls. The United States Patent and Trademark Office ("USPTO") repeatedly rejected DiTullio's attempts. *See* Index of Exhibits to Plaintiff's Motion for Preliminary Injunction, Exhibit 20, pp. 136, 143, 203.

b.  Throughout the prosecution of the '151 Patent, the USPTO indicated that

dependent claims directed to a "means to prevent spreading" of said adjoining

galleries once latched to one another" would be allowable if rewritten in

independent form, incorporating all of the limitations of the base claim and any

intervening claims. *See* Index of Exhibits to Plaintiff's Motion for Preliminary

Injunction, Exhibit 20, pp. 128, 205.

c.  The only "means to prevent spreading" disclosed in the specification comprises

the lugs, notches or apertures, stepped support members, vertical support walls

and end walls.  Exhibit 501, Col. 5, l. 66 – Col. 6, l. 2.

d.  After DiTullio amended Claim 11 to include the aforementioned means-plus-

function language, Claim 11 was allowed.  Exhibit 20, pp. 210 – 212, 217.

e.  With regard to the aforementioned amendment, DiTullio's patent attorney admits

that the aforementioned amendment was intended to incorporate the lugs, notches

or apertures, stepped support members, vertical support walls and end walls, in

means-plus-function format, as the "means to prevent spreading" claimed in

Claim 11.  Exhibit 604, p. 120, l. 15 – p. 121, l. 4, p. 190, l. 9 – 191, l. 25; p. 211,

l. 17 – p. 213, l. 8.

f.  Even after the amendment, the USPTO noted that the end wall, by itself, did not

define any structure not shown by the prior art.  Exhibit 20, p. 221.

g.  DiTullio's patent attorney agreed that the basis for the USPTO's allowance of

Claim 11 was not that the end wall prevented lateral spreading.  Attorney Ware

agreed that the Examiner was telling DiTullio that that the use of the end walls to

inhibit lateral spreading was not the basis for allowing the claims. *Id.* at p. 200, l.

11 – p. 201, l. 6.

35.    Based on the foregoing, this Court concludes, as a matter of law,  that DiTullio

surrendered any protection for drainage galleries in which spreading is prevented by

means that do not include lugs, notches or apertures, stepped support members,

vertical support walls and end walls, or their equivalents, and that Claim 11 does not

cover any drainage gallery that does include these elements, or their equivalents.

36.    Based upon the evidence taken during the Preliminary Injunction/*Markman* Hearing,

together with the Declarations and Exhibits submitted by both parties in support of

their respective Motions for Preliminary Injunction, this Court concludes, as a matter

of law,  that Claim 16 of the '151 Patent is set forth as follows:

A drain field gallery for guiding liquid through a drain field and allowing liquid to
seep into adjoining ground comprising:

an elongated main body portion having a corrugated arch-shaped configuration
thereby creating an enlarged enclosure with a plurality of upstanding ribs spaced
apart longitudinally therealong;

at least one end wall covering one end of said elongated main body portion, said
at least one end wall having an opening therethrough dimensionally sized to
accept a drainpipe for transporting the liquid to said gallery;

a latching engagement system associated with said at least one end wall for
attaching said gallery to an adjoining gallery in an end-to-end engaged
relationship, said latching system being dimensionally sized to vertically seat in
latching engagement on the latching system of the adjoining gallery and to inhibit
relative longitudinal movement between the galleries, said at least one end wall
inhibiting lateral spreading of said gallery and of said adjoining gallery and
restraining said arch-shaped configuration against deformation, wherein said

-18-

latching engagement system is provided by end ribs of said plurality of ribs, and said end ribs are adjacent the terminal ends of said main body portion and are dimensionally sized to mate engagingly with end ribs on adjoining galleries,

whereby said latching system includes said one end wall as means to prevent spreading of adjoining galleries once latched to one another.

Exhibit 501, Col. 12, ll. 13 – 43.

37.     Based upon the evidence taken during the Preliminary Injunction/*Markman* Hearing, together with the Declarations and Exhibits submitted by both parties in support of their respective Motions for Preliminary Injunction, this Court concludes, as a matter of law, that the following claim language of Claim 16 are disputed and must be construed:

   a.   End Wall;

   b.   An opening therethrough dimensionally sized to accept a drainpipe for transporting the liquid to said gallery; and

   c.   Whereby said latching system includes said one end wall as means to prevent spreading of adjoining galleries once latched to one another.

38.     After examining the language of Claim 16, this Court concludes, as a matter of law, that Claim 16 does not sufficiently define the disputed terms set forth above. Accordingly, based upon 151 Patent's specification and the prosecution history, both of which were before this Court during the Preliminary Injunction/*Markman* Hearing, this Court construes the disputed terms as follows:

a.  Whereby said latching system includes said one end wall as means to prevent spreading of adjoining galleries once latched to one another –

  i.  The gallery must have a latching system for attaching a gallery to an adjoining gallery in an end-to-end relationship. Exhibit 501, Col. 12, ll. 25 – 28.

  ii.  The latching system must include an end wall. *Id.* at Col. 12, ll. 41 – 43.

  iii.  This Court having concluded that, as a matter of law, use of the word means invokes a presumption that 35 U.S.C. § 112, ¶ 6 applies, this Court concludes, as a matter of law, that Claim 16 does not disclose sufficient structure to take Claim outside the scope of 35 U.S.C. § 112, ¶ 6. Exhibit 501, Col. 12, ll. 41 – 43.

  iv.  This Court, having looked to the specification to determine the structure associated with the "means to prevent spreading", concludes, as a matter of law, that the only structure disclosed as preventing spreading anywhere in the specification comprises lugs, notches or apertures, stepped support members, vertical support walls and end walls, Exhibit 501, Col. 5, l. 66 – Col. 6, l. 2, and that the "means to prevent spreading" must include lugs, notches or apertures, stepped support members, vertical support walls and end walls. *Id.*

-20-

       v.  Nothing in the specification of the '151 Patent suggests that any of the lugs, notches or apertures, stepped support members and vertical support walls are optional.  Exhibit 501.

  b.  End Wall –

       i.  The end wall is portion of the main body of the gallery that must cover an end of the gallery.  Exhibit 501, Col. 4, ll. 28 – 30; *see also* Exhibit 501, Fig. 4.

     ii.  There must be an end wall covering one end of the main body portion of the claimed drain field gallery. *Id.* at Col. 12. ll. 20 – 24.

    iii.  The end wall and the main body portion of the drain field gallery must be formed as a solid piece. *Id.* at Col. 5, ll. 54-57.

    iv.  The end wall must inhibit lateral spreading of said gallery and of said adjoining gallery and restraining said arch-shaped configuration against deformation. *Id.* at Col. 12, ll. 32 – 35.

     v.  The end wall must have an opening therethrough dimensionally sized to accept a drainpipe for transporting the liquid to said gallery. *Id.* at Col. 12, ll. 21 – 24.

    vi.  The end wall must have an opening dimensionally sized to accept a drainpipe for transporting liquid to the gallery. *Id.* at Col. 12, ll. 21 – 24.

39.   This Court concludes, as a matter of law, that the statements made by DiTullio during the prosecution of the '151 Patent support a finding that the "means to prevent

spreading" claimed in Claim 16 includes the combination of lugs, notches or apertures, stepped support members, vertical support walls and end walls, or the equivalents thereof.  In particular:

a.  The claim that issued as Claim 16 was originally a dependent means-plus-function claim providing that the latching system of the claimed gallery "further includes "means to prevent spreading" of adjoining galleries once latched to one another." Exhibit 20, p. 26.

b.  Once again, the only "means to prevent spreading" disclosed in the application was the combination of lugs, notches and apertures, stepped support members, vertical support walls and end walls discussed above.  *See* Exhibit 20.

c.  After amending the base and intervening claims, Claim 16 was deemed allowable if rewritten in independent form, incorporating all of the limitations of the base and any intervening claims.  *Id.* at p. 128

d.  DiTullio attempted to obtain coverage based upon the end wall without the lugs, notches or apertures, stepped support members or vertical support walls as the "means to prevent spreading".  In particular, after the USPTO issued a final rejection, DiTullio proposed amending the base claim to provide that the end wall of the gallery "inhibit[ed] lateral spreading of said gallery and of said adjoining gallery and restraining said arch-shaped configuration against deformation." *Id.* at 132 – 33.  DiTullio represented to the Examiner that Claim 1 specifically defined the latching system associated with the end wall and provided that the end wall

provided for lateral rigidification. *Id.* at 139.  DiTullio stated that "[t]here is

likewise no suggestion that a second gallery with no proximal end wall may be

latched in seated engagement with the adjoining gallery to achieve the lateral

rigidification defined in Claims 1, 18 and 35." *Id.* at p. 140.

e.  The USPTO rejected DiTullio's found that DiTullio's proposed amendment

    would not overcome the final rejection. *Id.* at p. 143.

f.  After DiTullio filed a continuation application and a preliminary amendment

    incorporating the aforementioned amendment, the USPTO rejected the claim after

    finding that

> [w]ith regard to the claim that the 'said at least one end wall
> inhibiting lateral spreading of said gallery and of said
> [adjoining] gallery and restraining said arch-shaped
> configuration against deformation', this is a function
> limitation that does not add significant structure to the
> apparatus claims.  The combination of Gorman and Bailey
> would inherently perform this function.

*Id.* at p. 203.

g.  Thereafter, the USPTO rejected several variations that attempted to

    claim the end wall without the lugs, notches or apertures, stepped

    support members, and vertical support walls. *Id.* at 204 – 218.

h.  Once again, the Examiner rejected DiTullio's attempt. *Id.* at p. 218.

i.  When DiTullio was unable to overcome the rejections, DiTullio

    rewrote the original dependent means-plus-function claim that was

    directed towards the "means to prevent spreading" in independent

form. *Id.* at 238.

40. This Court concludes, as a matter of law, that the prosecution history supports a finding that Claim 16 is a means-plus-function claim and that the ""means to prevent spreading" of adjoining galleries once latched to one another" is directed towards the combination of lugs, notches or apertures, stepped support members, vertical support walls and end wall disclosed in the specification as preventing spreading of adjoining galleries once latched together, together with equivalents thereof.  Exhibit 501, Col. 5, l. 66 – Col. 6, l. 2.

41. This Court further concludes, as a matter of law, that nothing in the specification of the '151 Patent suggests that any of the lugs, notches or apertures, stepped support members and vertical support walls are optional, Exhibit 501.

42. Finally, this Court concludes, as a matter of law, that, due to the repeated rejections by the USPTO, Claim 16 does not cover devices in which the end wall is the only "means to prevent spreading".  *See* Paragraph 30, *supra.*

43. Having construed the disputed terms in Claims 11 and 16, and having compared both claims to the accused devices, with regard to Cultec's and DiTullio's claim that the Old Chambers infringe Claim 11, this Court concludes, as a matter of law, that:

    a.   The first galleries of the Old Chambers have a first end wall on an end of the chamber.  Index of Exhibits to Plaintiff's Motion for Preliminary Injunction, Exhibits 1 and 3.

    b.   The first galleries of the Old Chambers do not have a second end wall.  *Id.*

    c.   Instead, the Old Chambers may include an end plate.  *Id.*

d.  An end plate does not fall within the scope of Claim 11, either literally or under the doctrine of equivalents, because the end plate is separate from the gallery. *Id.*

e.  The gallery that adjoins the first gallery has a third end wall. *Id.*

f.  The end wall of the Old Chamber has an opening for transporting liquid. *Id.*

g.  The opening is not capable of acceptable a drain pipe. *Id.*

h.  As manufactured and sold by Infiltrator and Stormtech, the end wall of the Old Chambers does not have a drain pipe extending therethrough. *Id.*

i.  The Old Chambers have a latching system that allows the second gallery to be attached to the first gallery in a overlapping end-to-end engaged relationship. *Id.*

j.  The latching system of the Old Chambers do not include means to prevent lateral spreading of the first terminal gallery and the second adjoining gallery once the galleries are latched to one another. Transcript of November 26, 2002, Preliminary Injunction/*Markman* Hearing, p. 247, l. 8 – p. 250, l. 15; p. 262, ll. 3 – 24.

k.  In addition, the Old Chambers do not include a "means to prevent spreading" comprising lugs, notches or apertures, stepped support members, vertical support walls, end walls or the equivalent thereof. Exhibits 1 and 3; Transcript of November 26, 2002, Preliminary Injunction/*Markman* Hearing, p. 250, l. 22 – p. 252, l. 2.

44.  Based on the foregoing, this Court concludes, as a matter of law, that the Old Chambers do not infringe Claim 11.

45.    Having construed the disputed terms in Claims 11 and 16, and having compared both

claims to the accused devices, with regard to Cultec's and DiTullio's claim that the New

Chambers infringe Claim 11, this Court concludes, as a matter of law, that:

a.    The New Chambers do not include a first, second or third end wall. Index of

Exhibits to Plaintiffs' Motion for Preliminary Injunction, Exhibits 2 and 4.

b.    The first and last gallery in a row of New Chambers may include an end plate.

*Id.*; Transcript of November 26, 2002, Preliminary Injunction/*Markman* Hearing,

p. 260, ll. 8 – 12.

c.    An end plate does not fall within the scope of Claim 11, either literally or under

the doctrine of equivalents, because the end plate is separate from the gallery.

Exhibits 2 and 4.

d.    The end plates of the New Chambers do not have an opening for transporting

liquid. *Id.*

e.    As manufactured by Infiltrator and Stormtech, the end plates of the New

Chambers does not have a drain pipe extending therethrough. *Id.*

f.    The New Chambers have a latching system that allows the second gallery to be

attached to the first gallery in a overlapping end-to-end engaged relationship. *Id.*;

g.    The latching system of the New Chambers does not include means to prevent

lateral spreading of the first terminal gallery and the second adjoining gallery once

the galleries are latched to one another. *Id.*; Transcript of November 26, 2002,

Preliminary Injunction/*Markman* Hearing, p. 265. l. 2 – p. 266, l. 11.

-26-

h.  In addition, the New Chambers do not include a "means to prevent spreading" comprising lugs, notches or apertures, stepped support members, vertical support walls, end walls or the equivalent thereof.  Exhibit 2 and 4; Transcript of November 26, 2002, Preliminary Injunction/*Markman* Hearing, p. 264, l. 13 – p. 266, l. 11.

46.  Based on the foregoing, this Court concludes, as a matter of law, that the New Chambers do not infringe Claim 11.

47.  Having construed the disputed terms in Claims 11 and 16, and having compared both claims to the accused devices, with regard to Cultec's and DiTullio's claim that the Old Chambers infringe Claim 16, this Court concludes, as a matter of law, that:

a.  The Old Chambers have an end wall covering one end of the main body portion.  Exhibits 1 and 3.

b.  The end wall does not inhibit lateral spreading of the gallery.  Transcript of November 26, 2002, Preliminary Injunction/*Markman* Hearing, p. 247, l. 8 – p. 250, l. 15; p. 262, ll. 3 – 24.

c.  The end wall does not restrain the arch-shaped configuration of the gallery against deformation.  *Id.*

d.  The end wall does not have an opening therethrough dimensionally sized to accept a drainpipe for transporting the liquid to said gallery.  Exhibits 1 and 3.

e.  The Old Chambers have a latching system for attaching a gallery to an adjoining gallery in an end-to-end relationship.  *Id.*

-27-

f. The latching system of the Old Chambers includes an end wall. *Id.*

g. The Old Chambers do not have lugs, notches or apertures, stepped support members, vertical support walls and end walls, or the equivalents thereof. *Id.*; Transcript of November 26, 2002, Preliminary Injunction/*Markman* Hearing, p. 250, l. 22 – p. 252, l. 2.

48. Based on the foregoing, the Old Chambers do not infringe Claim 16.

49. Having construed the disputed terms in Claims 11 and 16, and having compared both claims to the accused devices, with regard to Cultec's and DiTullio's claim that the New Chambers infringe Claim 16, this Court concludes, as a matter of law, that:

a. The New Chambers do not have end wall covering one end of the main body portion. Exhibits 2 and 4.

b. The first and last gallery in a row of New Chambers may include an end plate. *Id.*; Transcript of November 26, 2002, Preliminary Injunction/*Markman* Hearing, p. 260, ll. 8 – 12.

c. An end plate does not fall within the scope of Claim 11, either literally or under the doctrine of equivalents, because the end plate is separate from the gallery. Exhibits 2 and 4.

d. The end plate does not inhibit lateral spreading of the gallery. Transcript of November 26, 2002, Preliminary Injunction/*Markman* Hearing, p. 265. l. 2 – p. 266, l. 11.

e. The end plate does not restrain the arch-shaped configuration of the gallery against deformation. *Id.*

f. As sold by Infiltrator and Stormtech, the end plate does not have an opening therethrough dimensionally sized to accept a drainpipe for transporting the liquid to said gallery. Exhibits 2 and 4.

g. The New Chambers have a latching system for attaching a gallery to an adjoining gallery in an end-to-end relationship. *Id.*

h. The latching system of the New Chambers does not include an end wall. *Id.*

i. The New Chambers do not have lugs, notches or apertures, stepped support members, vertical support walls and end walls, or the equivalents thereof. *Id.;* Transcript of November 26, 2002, Preliminary Injunction/*Markman* Hearing, p. 264, l. 13 – p. 266, l. 11.

3. Based on the foregoing, the New Chambers do not infringe Claim 16. This Court concludes, as a matter of law, that the Take Notice Letters that Cultec and DiTullio, acting directly and through agents, contained statements that were literally false and false by necessary implication. In particular, in the Take Notice Letters, Cultec and DiTullio threaten to take action against entities that Cultec and DiTullio believe to be infringing the following patents and trademarks:

    i. U.S. Patent No. 5,087,151;

    ii. U.S. Patent No. 5,419,838;

    iii. U.S. Patent No. 6,129,482;

-29-

    iv.  U.S. Trademark Registration 1,610,507 for CONTACTOR;

    v.  U.S. Trademark Registration 1,611,148 for TRIPDRAIN; and

    vi.  various other unregistered trademarks, including RECHARGER, PAC,

        STORMFILTER, HVLV, VPB-500, and to other pending U.S. patents.

However, as set forth more fully in Plaintiffs' Proposed Findings of Fact, Cultec and

DiTullio had no reason to believe that either the Old Chambers or the New Chambers

infringe any of DiTullio's patents. Moreover, there is no evidence that Infiltrator or

Stormtech were infringing any of Cultec's trademarks, whether registered or not.

50.    With regard to the Take Notice Letters, this Court, having made the findings of fact

set forth in Plaintiff's Proposed Findings of Fact, and having made the conclusions of

law set forth above, concludes, as a matter of law, that:

a.  Cultec and DiTullio made false or misleading statements of fact in commercial

    advertising or promotion about the plaintiff's goods or services;

b.  The statements actually deceived or are likely to deceive a substantial segment of

    the intended audience;

c.  The deception is material in that it is likely to influence purchasing decisions;

d.  Cultec and DiTullio caused the statement to enter interstate commerce;

e.  The statement results in actual or probable injury to Infiltrator and Stormtech; and

f.  Cultec and DiTullio made their statements in bad faith because Cultec and

    DiTullio knew that Infiltrator and Stormtech were not infringing the patents or

    trademarks set forth in the Take Notice Letter.

51.    With regard the claims on Cultec's website that Cultec is the only chamber

manufacturer that can legally manufacture chambers with interlocking ribs, this Court,

having made the findings of fact set forth in Plaintiff's Proposed Findings of Fact, and

having made the conclusions of law set forth above , concludes, as a matter of law,

that:

a.    Cultec and DiTullio made false or misleading statements of fact in commercial

advertising or promotion about the plaintiff's goods or services;

b.    The statements actually deceived or are likely to deceive a substantial segment of

the intended audience;

c.    The deception is material in that it is likely to influence purchasing decisions;

d.    Cultec and DiTullio caused the statement to enter interstate commerce;

e.    The statement results in actual or probable injury to Infiltrator and Stormtech; and

f.    Cultec and DiTullio made their statements in bad faith because Cultec and

DiTullio knew that Infiltrator and Stormtech were not infringing the patents or

trademarks set forth in the Take Notice Letter.

52.    Based on the foregoing, this Court concludes, as a matter of law, that Infiltrator's and

Stormtech's  have demonstrated that they will suffer irreparable harm if the

Preliminary Injunction does not issue. *King v. Innovation Books*, 976 F2d 824, 831

(2nd Cir 1992) (Irreparable harm arises in Lanham Act cases once the Plaintiff

establishes likelihood of success on a claim of literal falseness).

53.    This Court concludes, as a matter of law, that Infiltrator and Stormtech have

-31-

demonstrated both (1) a likelihood of success on the merits or (2) sufficiently serious

questions going to the merits to make them a fair ground for litigation and a balance

of hardships tipping decidedly toward the party requesting the preliminary relief.

54.    Accordingly, this Court concludes, as a matter of law, that Infiltrator's and

Stormtech's Motion for Preliminary Injunction should be allowed on its terms.

55.   This Court concludes that Cultec's and DiTullio's Motion for Preliminary Injunction

should be denied because Cultec and DiTullio have failed to establish that Infiltrator

and Stormtech are infringing the '151 Patent and, therefore, have failed to establish

irreparable harm, likelihood of success on the merits or sufficiently serious questions

going to the merits to make them a fair ground for litigation and a balance of

hardships tipping decidedly toward them.

RESPECTFULLY SUBMITTED
INFILTRATOR SYSTEMS, INC.
STORMTECH, INCORPORATED
And JAMES M. NICHOLS

Dated: 12/22/04               By:

Michael J. Rye, Esq. (ct 18354)
Daniel E. Bruso, Esq. (ct 18666)
CANTOR COLBURN, LLP
55 Griffin Road South
Bloomfield, CT 06002
(860) 286-2929 (Telephone)
(860) 286-0115 (Telecopier)

## CERTIFICATE OF SERVICE

I, Daniel E. Bruso, Esquire, attorney for Plaintiffs in the above-captioned matter, hereby certify that, on the 2 2ᵗʰ day of December, 2004, I served a true and accurate copy of the foregoing SURREPLY MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING PLAINTIFFS' UNFAIR COMPETITION CLAIMS, via Federal Express, upon:

Stephen P. McNamara
Steven B. Simonis, Esquire
St.Onge, Steward, Johnston & Reens LLC
986 Bedford Street
Stamford Connecticut 06905-5619

Daniel E. Bruso