UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF CONNECTICUT

---

Infiltrator Systems, Inc. and
Stormtech, Incorporated
    Plaintiffs,
v.

Cultec, Inc., and
Robert J. DiTullio
    Defendants

Case No. 3:01CV2188 (AWT)

Date: February 7, 2005

---

## DEFENDANTS' RESPONSE TO
## PLAINTIFFS' PROPOSED FINDINGS OF FACT AND LAW

Stephen P. McNamara, (ct 01220)
Steven Simonis (ct 22777)
ST. ONGE STEWARD JOHNSTON & REENS LLC
986 Bedford Street
Stamford, CT 06905
Tel. (203) 324-6155
Fax (203) 327-1096

Attorneys for Defendants
CULTEC, INC. and
ROBERT J. DITULLIO

In accordance with the conference call with the Court conducted January 31, 2005, Defendants submit their comments on Plaintiffs Proposed Findings of Fact and Law by numbered paragraphs as follows:

## Response to Proposed Findings of Fact

14.   Denied. Plaintiffs mischaracterize the statements attributed to Cultec and DiTullio.

22-23. Denied. There is no case or controversy involving the "New Chambers (the Infiltrator "new 3050" chambers and the Stormtech 740 and 340 chambers). Defendants have never made any statement regarding these chambers to Plaintiffs. They were introduced by Infiltrator after the filing of this action. They are not part of this case. (Hearing Tr. 5)

24-28.   Denied. The end walls are not required to be a "solid piece (¶26(b) (v) and (vi). Claim 11 of the DiTullio '151 patent does not require lugs, notches or apertures (¶27) (see discussion with respect to Claim 16 of the DiTullio '151 patent, below). Mr. DiTullio's attorney did not give testimony that is even remotely like the characterizations specified in ¶27(e) and (g). What he said was "I don't see how there can be any doubt that an end wall will keep an overlapping rib from spreading beyond it." (Ex. 604, p. 120, lines 1-3).

**29-35. Denied. Claim 11 of the DiTullio '151 patent does not require lugs, notches or apertures**

In claim 16, the disputed language is the clause which reads:

> C.  a latching engagement system associated with said at least one end wall for attaching said gallery to an adjoining gallery in an end-to-end engaged relationship,
>
> said latching system being dimensionally sized to vertically seat in latching engagement on the latching system of the adjoining gallery and to inhibit relative longitudinal movement between the galleries,
>
> said at least one end wall inhibiting lateral spreading of said gallery and of said adjoining gallery and restraining said arch-shaped configuration against deformation,
>
> wherein said latching engagement system is provided by end ribs of said plurality of ribs,
>
> and said end ribs are adjacent the terminal ends of said main body portion and are dimensionally sized to mate engagingly with end ribs on adjoining galleries,
>
> whereby said latching system includes said one end wall as means to prevent spreading of adjoining galleries once latched to one another."

In particular, the last clause, which reads "whereby said latching system includes said one end wall as means to prevent spreading of adjoining galleries once latched to one another" is in issue.

Clearly the claim language says that the end wall is the means to prevent spreading. The claim does not require lugs, or notches, or stepped support members, etc. as argued by Infiltrator/Stormtech. If "means to prevent spreading" means an end wall+lugs+notches+stepped support members+vertical walls as argued by Infiltrator, the

- 3 -

claim would make no sense. Infiltrator/Stormtech's interpretation of the claim, using "means to prevent spreading" as a shorthand for the list of possible components would read as follows: "whereby said latching system includes said one end wall as ~~means to~~ an end wall+lugs+notches+stepped support members+vertical walls to prevent spreading once latched to one another." Grammatically, this makes no sense. The only interpretation that makes sense is Cultec's interpretation, namely, that where the claim says "said one end wall as means to prevent spreading" that the claim means just the end wall.

"In the absence of an express intent to impart a novel meaning to claim terms, an inventor's claim terms take on their ordinary meaning. We indulge a "heavy presumption" that a claim term carries its ordinary and customary meaning. The ordinary meaning of a claim term may be determined by reviewing a variety of sources, including the claims themselves, other intrinsic evidence including the written description and the prosecution history, and dictionaries and treatises. But in any event the ordinary meaning must be determined from the standpoint of a person of ordinary skill in the relevant art. *Teleflex Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1319 (Fed. Cir. 2002) (citations omitted). The patent claim should be given its ordinary and customary meaning, not some twisted construction of the claim language.

In this case the simple and straightforward interpretation proposed by Cultec is consistent with the prosecution history of the patent. The application was filed in January 1989. In the filed application there was an original claim 16. Original claim 16 was originally rejected by the examiner in the office action of June 6, 1989. (Exhibit 20,

Prosecution history, at page 81). Following that rejection, Mr. DiTullio's attorneys responded in the normal way to argue that, that rejection was incorrect. There was an interview with the examiner and Mr. DiTullio's response to office action was mailed August 10, 1989. In the Response, there are arguments regarding the reason that the claim should be patentable (Exhibit 20, Prosecution History, pp. 115-116). Mr. DiTullio's attorney, Robert Ware, argued that there is an overlapping rib and "in this manner of latching, the end wall 30 A provides essential support for galleries which is stronger than Nichols when loads are applied under normal installation." Subsequently, an office action issued November 7, 1989, indicating that Claim 16 was objected to, and that Claim 16 could be allowed if put into the proper condition by combining it with the base claim. (Exhibit 20, Prosecution History, p. 128; Thesz Testimony, Hearing Tr. 172-175; 177). Specifically, the Examiner stated that claims 12, 16, 36 and 37 are objected to, but would be allowable if rewritten in independent form. This is a clear indication that the examiner had reconsidered the objection and is now going to allow original Claim 16. The decision that original claim 16 is allowable is maintained throughout the rest of the prosecution history. (See e.g., the office action of July 26, 1990, (Exhibit 20, Prosecution History p. 201). Claim 16 is indicated to be objected to, but that it would be allowable.) During the prosecution, Mr. Ware, the patent attorney, tried proposing functional language to be added to the base claims such as "the end wall inhibiting lateral spreading of said gallery and restraining the arch-shape configuration against deformation." But the Examiner rejected these efforts on the grounds that these were functional limitations that do not add structure to the claim. (Exhibit 20, Prosecution

History, p. 203). As testified to by Michael Thesz, Infiltrator/Stormtech's patent law expert, the prosecution history shows a situation where the examiner was looking for a patentable structural distinction and would not accept functional language in lieu of an amended claim which specifies structure. (Nov. 26, 2002 Hearing Tr. at p. 207-211). Eventually Mr. Ware chose to incorporate the "means plus function" clause of original claim 16 into the base claim, ***which is a structural limitation, as opposed to functional language***, and thus the claim was allowed and granted in the patent. Id. M.P.E.P. §2114 (DX-550). Mr. Ware very specifically stated in his response to the patent office what this means plus function clause meant. He stated that "the overlapping latched corrugated ribs shown in figures 12 and 13 cooperating with the single end wall to stabilize the latched galleries and inhibit lateral spreading was provisionally approved in the previous action of July 26, 1990 and it's now also presented here rewritten specifically as independent Claim 46." (Exhibit 20, Prosecution History, at p. 238).

Clearly, the long prosecution history reflects a situation where the Examiner was requiring that claims be put in the proper format – a means plus function format – in order to be allowable. The Examiner was not going to accept functional language. A claim to patentable structure was required. The means plus function language provided the structure. Even though the unacceptable functional language appears similar to the acceptable means plus function language, as a matter of patent law and practice it was and is different. M.P.E.P. §2114. This change is what placed the application in order for allowance.

The amendment adding claim language from original claim 16 to the base claim did not add a plethora of lugs, notches, stepped side walls etc. to the claim as argued by Infiltrator/Stormtech. It simply placed the claim language in the correct acceptable "means plus function" form.

Furthermore, at the time of the prosecution of the DiTullio patent, it was the policy of the U.S. Patent Office to read "means plus function" claim language as broadly as possible. M.P.E.P. §2181 (DX-550). The patent expert, Mr. Thesz, confirmed that at the time of the application, the Examiner would have been required to read the "means plus function" patent claim language as broadly as possible. (Hearing Tr. 212-213). The broadest way to read the clause "whereby said latching system includes said one end wall as means to prevent spreading of adjoining galleries once latched to one another" is to read it simply and solely as an end wall that prevents spreading of adjoining galleries once latched to one another. This was also confirmed by Mr. Thesz. (Hearing Tr. 206-207).

Thus, the prosecution history of the patent confirms the simple and straightforward claim construction advocated by Cultec: that the phrase "whereby said latching system includes said one end wall as means to prevent spreading of adjoining galleries once latched to one another" of claim 16 defines an end wall which prevents spreading of adjoining galleries once latched to one another, without any additional required elements.

This same analysis is also applicable to claim 11 of the DiTullio patent, and the clause "said first and second latching systems further including *means to prevent lateral spreading* of said first terminal gallery and said second adjoining gallery once said

galleries are latched to one another, *including said first end wall inhibiting lateral spreading of said first gallery and of said adjoining second gallery and restraining said arch-shaped configuration against deformation.*" This clause again defines an end wall which prevents spreading of adjoining galleries once latched to one another, without any additional required elements. The additional elements are optional additional elements that can be included but are not required for infringement of claim 11.

36. Denied. The Plaintiffs chambers have all the elements of claim 11 of the DiTullio '151 patent.

(d) Denied. An "end wall" exists, even if Plaintiffs decide to call it an "end plate" instead of an "end wall."

(g) Denied. The opening has lines to show how to cut out holes for different size drain pipes.

(h) Denied. Infiltrator and Stormtech sell drain pipe.

(j) Denied. The Old Chambers have an end wall to prevent lateral spreading.

(k) Denied. The Old Chambers have an end wall to prevent lateral spreading.

37.   Denied. The Old Chambers infringe claim 11

38.-39.   Objected to as irrelevant and otherwise denied. The New Chambers are not in issue in this case. There is no case of controversy regarding these products. The "New Chambers" are not the subject of Defendant's Motion For

Preliminary Injunction, and there is no basis to make any findings of fact or law regarding the "New Chambers."

40. Denied. The Plaintiffs' Old Chambers have all the elements of claim 16 of the DiTullio '151 patent.

(b) – (c) Denied. The Old Chambers have an end wall to prevent lateral spreading.

(d) Denied. The opening has lines to show how to cut out holes for different size drain pipes.

(g) Denied. The Old Chambers have end walls (see 40(a)).

41. Denied. The Old Chambers infringe claim 16.

42-43. Objected to as irrelevant and otherwise denied. The New Chambers are not in issue in this case. There is no case of controversy regarding these products. The "New Chambers" are not the subject of Defendant's Motion For Preliminary Injunction, and there is no basis to make any findings of fact or law regarding the "New Chambers."

49. Denied. The old 3050 chambers were believed to and do infringe the DiTullio '151 patent.