## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| INFILTRATOR SYSTEMS, INC. and<br>STORMTECH, INCORPORATED<br><br>Plaintiffs,<br><br>vs.<br><br>CULTEC, INC. and<br>ROBERT J. DITULLIO<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 301CV2188AWT

CULTEC, INC. and
ROBERT J. DITULLIO
    Counterclaimants and
    Third Party Plaintiffs

v.

INFILTRATOR SYSTEMS, INC.
STORMTECH INCORPORATED
    Counterclaim Defendants and

JAMES M. NICHOLS
FABRI-FORM CO., INC.
    Third Party Defendants

## PLAINTIFFS AND COUNTERCLAIM DEFENDANTS, INFILTRATOR SYSTEMS, INC. AND STORMTECH INCORPORATED AND THIRD PARTY DEFENDANT, JAMES M. NICHOLS, MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT OF NON-INFRINGEMENT

**TABLE OF CONTENTS**

I.    INTRODUCTION.................................................................................2

II.    FACTUAL AND PROCEDURAL BACKGROUND.................................2

III.    ARGUMENT...................................................................................4

    A.    Summary Judgment in Patent Cases........................................4

    B.    Claim Construction..........................................................4

        1.    The Court Has Agreed with Plaintiff's Claim Construction..........5

            a.    The Language of Claim 11...........................................5

            b.    The Construction of the "End Walls With Openings".........7

            c.    The Construction of "An Opening Therethrough, for Transporting The Liquid"..............................................7

            d.    The Construction of "A Drain Pipe Extending Through At Least One Of Said Openings In Said First, Second and Third End Walls For Transporting Liquid to the Drain Field"..................................................................8

            e.    The Construction of the "Means to Prevent Lateral Spreading of Said First Terminal Gallery and Said Second Adjoining Gallery Once Said Galleries Are Latched to One Another".........................................8

    C.    There Can Be No Direct Infringement Of Claim 11 As a Matter Of Law.................................................................................9

    D.    There Is No Evidence That Infiltrator, Stormtech And Nichols Are Inducing Others To Infringe Claim 11...................................12

    E.    The Construction of Claim 16.............................................13

        1.    The Language of Claim 16.............................................13

            a.    The Construction Of "Whereby Said Latching System Includes Said One End Wall As Means To Prevent Spreading Of Adjoining Galleries Once Latched To One Another"..............................................................14

i

        b.     The Construction of "End Wall"………………………….…………14

   F.    There Can Be No Direct Infringement of Claim 16 As A
       Matter of Law……………………………………………………………15

   G.   There Is No Evidence That Infiltrator, Stormtech and Nichols Are
       Inducing Others To Infringe Claim 16……………………………………..15

V.     CONCLUSION……………………………………………………………...…..16

# TABLE OF AUTHORITIES

## CASES

Amhil Enters., Ltd. v. Wawa, Inc. 81 F.3d  (Fed. Cir. 1996)……………………………..9, 11, 15

Bicon, Inc. et al. v. The Straumann Co., et al 2004 U.S. Dist. LEXIS 21456
(D.Mass Sept. 29, 2004)……………………………………………………………………..10

Celotex Corp. v. Catrett, 477 U.S. 317(1986)………..…………………………………….4, 7

DeMartini Sports, Inc. v. Worth, Inc. 239 F.3d  (Fed. Cir. 2001)…………………………9, 11, 15

Ethicon Endo-Surgery, Inc. et al. v. United States Surgical Corp. 149 F.3d
(Fed. Cir. 1998)…………………………………………………………………………….10

Exxon Chemical Patents, Inc. v. Lubrizol Corp. 64 F.3d  (Fed. Cir. 1995)……………….5

Joy Techs., Inc. v. Flakt, Inc., 6 F.3d (Fed Cir. 1993)…………………………………...12, 16

Markman v. Westview Instruments Inc., 52 F.3d , 34 U.S.P.Q.2d, 1321,
(Fed. Cir. 1995)……………………………………………………………...………5, 6

Sabation, 480 F.2d  (C.C.P.A.A 1973)……………………………………………….5

Sage Prods., Inc. v. Devon Indus., Inc. 126 F.3d (Fed. Cir. 1997)…………………………9, 10

Spectra Corp. v. Lutz, 839 F.2d  (Fed. Cir. 1988)……………………………………..4

Townsend Eng. Co. v. HiTec Co., 829 F.2d  (Fed. Cir. 1987)……………………….…..4

Union Carbide Corp. v. American Can Co., 742 F.2d  (Fed. Cir. 1984)…………………4

Vitronics Corp. v. Conceptronic, Inc. 90 F.3d  (Fed. Cir. 1992)………………….. ….5, 6, 9, 15

Warner-Jenkinson Co. v. Hilton Davis Chem. Co. 520 U.S. 17, 35, 137 L.Ed. 2d,
17 S. Ct. 1040 (1997)………………………………………………………...…9, 10

Water Techs. Corp. v. Calco, Ltd. 850 F.2d (Fed. Cir. 1988)…………………………12, 13, 16

## FEDERAL STATUTES

35 U.S.C. §271(b)……………………………………………………………………12, 16

## I. INTRODUCTION

Plaintiffs and Counterclaim Defendants Infiltrator Systems, Inc. (hereinafter "Infiltrator") and Stormtech Incorporated (hereinafter "Stormtech") and Third Party Defendant, James M. Nichols, submit this Memorandum in Support of their Motion for Summary Judgment seeking judgment as a matter of law with respect to Plaintiffs' cause of action for non-infringement of Robert DiTullio's ("DiTullio's") patent, (Plaintiff's Verified Amended Complaint For Declaratory Judgment, Damages and Injunctive Relief and Demand for Jury Trial dated December 24, 2001, hereinafter, Exhibit 1, Count 1), and with respect to Count 1 of Cultec and DiTullio's Counterclaims and Third-Party Complaint. The court has heard evidence on the parties' proposed patent claim construction and the products accused by Cultec, Inc. (hereinafter "Cultec") of infringement during the November 25-26, 2002 hearing on the parties' respective Motions for Preliminary Injunction. The Court has indicated that it intends to adopt Plaintiff's proposed claim construction for U.S. Patent No. 5,087,151 (the "'151 Patent"). Because the claim construction requires an infringing chamber to include a number of elements that are not present in the accused device, plaintiffs are entitled to judgment as a matter of law.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Infiltrator and Stormtech sell drainage chambers for use in septic and storm water drainage applications.[1] Declaration of Bryan Coppes dated February 18, 2002, hereinafter Exhibit 2, ¶ 4. Drainage chambers, also known as drainage galleries, are underground structures used to direct the flow of wastewater or storm water and are typically found in the leach fields of

---

[1] Plaintiff's Local Rule 56(a)1 Statement of Material Facts In dispute is incorporated herein by reference.

**ORAL ARGUMENT REQUESTED**

septic systems or in applications where storm water must be directed away from buildings, parking lots or other structures. *Id*. at ¶ 5.

Mr. DiTullio, a principal of Cultec, is the named inventor of United States Patent No. 5,087,151, entitled "Drainage System," which issued on February 11, 1992 on an application filed on April 23, 1990 (the " '151 Patent", hereinafter Exhibit 3).

Infiltrator and Stormtech commenced the instant action on November 26, 2001 in order to halt Cultec's and DiTullio's false statements regarding the scope of their patents and their false claims that Infiltrator and Stormtech infringed, *inter alia*, the '151 Patent. (Verified Complaint for Declaratory Judgment, Damages and Injunctive Relief and Demand for Jury Trial dated November 21, 2001, hereinafter Exhibit 4, *See* Count 1). Infiltrator and Stormtech amended their original complaint to seek declaratory judgments of non-infringement on additional DiTullio patents, together with damages attributable to Cultec's and DiTullio's false claims.[2] Exh. 1 at ¶6.

Cultec and DiTullio served their Answer on January 25, 2002. On January 29, 2002, Cultec and DiTullio filed counterclaims against Stormtech and Infiltrator and a third-party complaint against James M. Nichols, the president of Infiltrator, and against an unrelated third-party, Fabri-Form, Inc. Both the counterclaim and the third-party complaint allege that Infiltrator, Stormtech and Nichols are infringing the '151 Patent. (Defendants Counterclaims and Third Party Complaint dated January 29, 2002, hereinafter Exhibit 5). The claim against Fabri-Form was subsequently dismissed voluntarily. (Stipulation of Dismissal dated January 7, 2003, hereinafter Exhibit 6). On November 25-26, 2002 the court heard argument on the parties'

---

[2] A Stipulation of Dismissal Without Prejudice was filed with respect to Counts II-V of the Amended Complaint after Cultec stated there was no infringement of the remaining patents.

3          **ORAL ARGUMENT REQUESTED**

respective Motions for Preliminary Injunction and proposed patent claim construction. At a status conference on February 14, 2005, the Court indicated that it intends to adopt Plaintiff's proposed claim construction. On March 29, 2005, the Court denied Defendant's Motion For Preliminary Injunction. In its Order the Court stated that "the court informed the parties at the last status conference, held on February 14, 2005, that it has concluded that the plaintiffs' chambers do not infringe the `151 Patent."

## III.   ARGUMENT

### A.   Summary Judgment In Patent Cases

Summary judgment is a favored procedural tool to dispose of issues that do not warrant determination by a trier of fact. As the Supreme Court stated in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986):

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action. . . Rule 56 must be construed with due regard not only for the rights of persons asserting claims... that are adequately based in fact to have those claims... tried to a jury, but also for the rights of persons opposing such claims... to demonstrate in the manner provided by the Rule, prior to trial, that the claims ... have no factual basis.

*Id.* at 327; accord *Townsend Eng. Co. v. HiTec, Co.*, 829 F.2d 1086 (Fed. Cir. 1987).

The standard for summary judgment in patent litigation is the same as in any other type of litigation. *Union Carbide Corp. v. American Can Co.*, 742 F.2d 1567, 1571 (Fed. Cir. 1984). And, as the Federal Circuit has frequently noted, summary judgment is as appropriate in a patent case as in any other. *Spectra Corp. v. Lutz*, 839 F.2d 1579, 1581 (Fed. Cir. 1988).

### B.   Claim Construction

Courts analyze infringement in two steps. First, the court determines the meaning and scope of the patent claims asserted to be infringed as a matter of law. The second step is comparing the properly construed claims to the device or method accused of infringing.

4    <strong>ORAL ARGUMENT REQUESTED</strong>

*Markman v. Westview Instruments Inc.*, 52 F.3d 967, 34 U.S.P.Q.2d 1321 (Fed. Cir. 1995) (en banc), *aff'd*, 116 S.Ct. 1384, 38 U.S.P.Q.2d 1461 (1996).

> 1. The Court Has Agreed With Plaintiff's Claim
> Construction

The Court has indicated that it intends to adopt Infiltrator's claim construction submitted in connection with its Motion for Preliminary Injunction. The claim construction as applied to Claims 11 and 16 of the '151 Patent are set forth in the appropriate sections of this memorandum to follow.

> a. The Language Of Claim 11

As outlined above, under *Markman* and *Vitronics*, the first step in analyzing Claim 11 is an examination of the language used to claim the invention. The Court "must give meaning to all the words in . . . [the] . . . claims." *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1551, 1557 (Fed. Cir. 1995) (citing *In re Sabatino*, 480 F.2d 911, 913 (C.C.P.A. 1973) ("Claims limitations defining the subject matter of the invention are never disregarded").

Claim 11 teaches:

11.    In a drain field for allowing liquid to seep into adjoining ground,

A.    a first terminal gallery comprising:

>  i.    a first elongated main body portion having an arch-shaped configuration
>       thereby creating an enlarged enclosure, said elongated main body portion
>       having first and second ends;
>
> ii.    **first and second end walls respectively covering said first and second ends
>       of said first elongated main body portion, each of said end walls having
>       an opening therethrough for transporting the liquid to and from said first
>       gallery; and**
>
> iii.   a first latching engagement system associated with said first end wall for
>       attaching said terminal gallery to an adjoining gallery in an end-to-end
>       engaged relationship, said latching engagement system including a first rib on
>       said first terminal gallery main body portion adjacent said first end wall, said

**ORAL ARGUMENT REQUESTED**

rib being dimensionally sized to mate engagingly with an associated rib on an adjoining gallery;

B.    second adjoining drain field gallery having only one end wall at its distal end, comprising:

    i.    a second elongated main body portion having an arch-shaped configuration thereby creating an enlarged enclosure, said second elongated main body portion having two opposed ends;

    ii.    a third end wall covering one opposed distal end of said second elongated main body portion, **said third end wall having an opening therethrough for transporting the liquid to an adjoining gallery; and**

    iii.    a second latching engagement system associated with the other opposed proximal end for attaching said second adjoining gallery to said first terminal gallery in an overlapping end-to-end engaged relationship, said second latching engagement system including a second rib on said second adjoining gallery main body portion adjacent the other opposed proximal end, said second rib being dimensionally sized to vertically seat engagingly on said first rib of said first terminal gallery whereby said first and second galleries are engagingly latched together thereby preventing relative longitudinal movement therebetween, **said first and second latching systems further including means to prevent lateral spreading of said first terminal gallery and said second adjoining gallery once said galleries are latched to one another,** including said first end wall inhibiting lateral spreading of said first gallery and of said adjoining second gallery and restraining said arch-shaped configuration against deformation; and

C.    a drain pipe extending through at least one of said openings in said first, second and third end walls for transporting liquid to the drain field.

Exh. 3, Col. 8, l. 40 - Col. 9, l. 28 (emphasis supplied).

Under *Markman* and *Vitronics*, the claim terms are given their ordinary meaning to one skilled in the art to which the patent pertains.  The limitations above in bold type must be construed.

**ORAL ARGUMENT REQUESTED**

b.  The Construction Of The "End Walls With
Openings"

Claim 11 teaches that the terminal gallery has "first and second end walls respectively

covering said first and second ends of said first elongated main body portion, each of said end

walls having an opening therethrough for transporting the liquid to and from said first

gallery . . .." Exh. 3, Col. 8, ll. 47-51.  The adjoining gallery has "a third end wall covering one

opposed distal end of said second elongated main body portion, said third end wall having an

opening therethrough for transporting the liquid to an adjoining gallery . . .."  Exh. 3, Col. 8, l.

67 – Col. 9, l. 3.  Thus, based upon the foregoing language of Claim 11, it is clear that the first

end wall, second end wall and third end wall each have an opening therethrough for transporting

the liquid to an adjoining gallery.  A drain pipe extends through at least one of the openings in

the first, second and third end walls.

As properly construed:

1.    The first and second end walls must be disposed, respectively, on the first and
second ends of the first terminal gallery.  Exh. 3 at Col. 8, ll. 47 – 51; *see also*
Fig. 4.

2.    The third end wall must be disposed on the distal end of the second drain field
gallery that adjoins the first terminal gallery.  *Id.* at Col. 9, ll 67 – 68.

3.    The first and second end walls and the first terminal gallery must be formed as a
solid integral piece.  *Id.* at Col. 5, ll. 54-57.

4.    The third end wall and the second terminal gallery also must be formed as a solid
integral piece.  *Id.*

c.  The Construction Of "An Opening Therethrough
For Transporting The Liquid"

1.    The first, second and third end walls must have an opening for transporting liquid.
Exhibit 3, Col. 8, ll. 47-51; *Id.* at Col. 8, l. 67 – Col. 9, l. 3.

2.    The openings must be capable of accepting a drain pipe.  *Id.* at Col. 9, ll. 26 – 28.

7        **ORAL ARGUMENT REQUESTED**

d.  The Construction of "A Drain Pipe Extending
    Through At Least One Of Said Openings In Said
    First, Second And Third End Walls For
    Transporting Liquid To The Drain Field"

1.  There must be a drain pipe extending through at least one of the openings in the
    first, second or third end walls.  Exhibit 3, Col. 9, ll. 26 – 28.

e.  The Construction Of The "Means To Prevent
    Lateral Spreading Of Said First Terminal Gallery
    And Said Second Adjoining Gallery Once Said
    Galleries Are Latched To One Another"

The "means to prevent spreading" claimed in Claim 11, as properly construed, must include the

combination of lugs, notches or apertures, stepped support members, vertical support walls and

end walls, or the equivalents thereof.  The construction is supported by the following:

a.  The only "means to prevent spreading" disclosed in the specification

    comprises the lugs, notches or apertures, stepped support members, vertical

    support walls and end walls.  Exhibit 3, Col. 5, l. 66 – Col. 6, l. 2.

b.  DiTullio repeatedly attempted to obtain coverage for a drainage gallery in

    which the end wall prevented spreading without the lugs, notches or apertures,

    stepped support members and vertical support walls.  The United States Patent

    and Trademark Office ("USPTO") repeatedly rejected DiTullio's attempts.

    (See Court Docket Entry No. 25, Index of Exhibits to Plaintiff's Motion for

    Preliminary Injunction, *see* Exh. 20, pp. 136, 143, 203).

c.  Throughout the prosecution of the '151 Patent, the USPTO indicated that

    dependent claims directed to a "means to prevent spreading" of said adjoining

    galleries once latched to one another" would be allowable if rewritten in

    independent form, incorporating all of the limitations of the base claim and

**ORAL ARGUMENT REQUESTED**

any intervening claims. See Court Docket Entry No. 25, Index of Exhibits to

Plaintiff's Motion for Preliminary Injunction, *see* Exhibit 20, pp. 128, 205.

C.  There Can Be No Direct Infringement of Claim 11 As A
    Matter Of Law

After the claims of the Patents-In-Suit are construed, this Court must compare the

limitations found in the claims to the elements of the accused devices. *Vitronics Corp. v.*

*Conceptronic, Inc.*, 90 F.3d 1576, 1581-82 (Fed. Cir. 1992) (citations omitted); *DeMartini*

*Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1331 (Fed.Cir. 2001) (citations omitted).  An accused

device may infringe a patent literally or under the so-called "doctrine of equivalents." *DeMartini*

*Sports, Inc.*, 239 F.3d at 1330-31.  Cultec and DiTullio have limited their arguments to claims

that the accused devices literally infringe Claims 11 and 16.  "Literal infringement of a claim

occurs when every limitation recited in the claim appears in the accused device, i.e., when 'the

properly construed claim reads on the accused device exactly.'" *DeMartini Sports, Inc.*, 239 F.3d

at 1322 (quoting *Amhil Enters., Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996)).

Infringement may also be found under the doctrine of equivalents if the accused device

perform substantially the same function in substantially the same way to achieve substantially

the same result. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 35, 137 L. Ed.

2d 146, 117 S. Ct. 1040 (1997).  The Federal Circuit has summarized the doctrine of equivalents

as follows:

> "A device that does not literally infringe a claim may nonetheless
> infringe under the doctrine of equivalents if every element in the
> claim is literally or equivalently present in the accused device.  A
> claim element is equivalently present in an accused device if only
> 'insubstantial difference' distinguish the missing claim element from
> the corresponding aspects of the accused device."

*Sage Prods., Inc. v. Devon Indus., Inc.* 126 F.3d 1420, 1423 (Fed. Cir. 1997).

**ORAL ARGUMENT REQUESTED**

As stated by the Supreme Court, the application of "the doctrine of equivalents, when applied broadly, conflicts with the definitional and public-notice functions of the statutory claiming requirements." *Id.* at 29. When a patent contains "<u>clear structural limitations</u>, the public has a right to rely on those limits in conducting its business activities." *Sage Prods.,* 126 F.3d at 1425 (emphasis added). Courts, therefore, must "ensure that the application of the doctrine [of equivalents], even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety." *Warner-Jenkinson,* 520 U.S. at 29. "Although equivalence is a factual matter normally reserved for a fact finder, the trial court should grant summary judgment in any case where no reasonable fact finder could find equivalence." *Sage Prods.,* 126 F.3d at 1423; see also *Warner-Jenkinson,* 520 U.S. at 39 n.8 ("[I]f a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court, as there would be no further material issue for the jury to resolve.").

Since *Warner-Jenkins,* the Federal Circuit ahs curtailed the broad use of the doctrine of equivalents in order to promote clear drafting and structural limitations in a claim. When applicable, one such means for granting a motion for summary judgment for noninfringement is through the application of the "All Elements" rule or "All Limitations" rule. *Ethicon Endo-Surgery, Inc. et al. v. United States Surgical Corp.* 149 F3d 1309, 1317 (Fed. Cir. 1998); *Bicon, Inc. et al. v. The Straumann Co. et al.,* 2004 U.S. Dist. LEXIS 21456, *11-13 (D.Mass. Sept. 29, 2004). This rule requires a one-to-one correspondence between components of an accused device and the components of the claimed device. *Id.*

A comparison of Claim 11 to the accused devices must result in a finding that the accused devices do not infringe Claim 11 as a matter of law because the accused devices do not include

**ORAL ARGUMENT REQUESTED**

each and every limitation in the claim either literally or by equivalents. *DeMartini Sports, Inc.*, 239 F.3d at 1322 (quoting *Amhil Enters., Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996)).

Stormtech, Infiltrator and Nichols cannot infringe Claim 11 because the accused devices do not contain the lug, stepped support members, vertical support walls or notches or any equivalent structure required as part of the means to prevent spreading. Exh. 2 ¶ 40, 41; Second Declaration of Bryan Coppes dated September 20, 2002, hereinafter Exhibit 7, ¶10. This fact alone precludes infringement.

However, even if the accused devices contained an infringing means to prevent spreading, and they do not, infringement of Claim 11 is not possible for two additional reasons. First, the so-called first terminal galleries of the accused devices do not include first and second end walls with openings for transporting liquid. Instead, the first gallery in a row of accused devices includes a first end wall at one end and may include an end plate at the other end. This end plate differs from DiTullio's end walls because it is not integrally molded to the chamber, which was a feature of DiTullio's invention that assisted in the prevention of spreading. Moreover, the end plate lacks openings for transporting anything, including liquid. Exh. 2 at ¶ 21, 33, 36; Exh. 7 at ¶9.

Even if the end plate were found to be an end wall for the purpose of construing Claim 11, and it is not, infringement is still not possible. Claim 11 specifically requires that the first end wall perform two specific functions, namely (1) inhibit lateral spreading of the first gallery and the second gallery; and (2) restrain the arch shaped configuration against deformation once the first gallery and the second gallery are latched together. Infiltrator's and Stormtech's tests show that the end plates do not perform either function. Exh. 7 at ¶¶11 – 15. The end plate is

11    **ORAL ARGUMENT REQUESTED**

not integrally attached to the gallery and, therefore, does not prevent the gallery from spreading. In addition, testing demonstrates that the end wall, which is integrally molded to the chamber, does not prevent spreading. *Id.* Rather, the several tons of backfilled rock serve to keep the chamber in their proper location and prevent them from spreading. Finally, the end wall as means for preventing spreading described in the '151 Patent specification must be integrally molded and include the support struts shown and described in the patent. Exh. 3, Col. 4, ll. 33 – Col. 5, l. 2, Figs. 1, 6, 7, 8, 9. None of these required features is present in the accused chambers. Because elements of the claim are missing in their entirety, it is axiomatic that there can be no infringement either literally or by the doctrine of equivalents.

Based on the foregoing, there is simply no genuine question of material fact to support a finding that Infiltrator, Cultec or Nichols are directly infringing Claim 11.

D. There Is No Evidence That Infiltrator, Stormtech And Nichols Are Inducing Others To Infringe Claim 11.

Cultec's and DiTullio's claim that Infiltrator, Stormtech and DiTullio are inducing others to infringe Claim 11 fails for the same reasons as their direct infringement claims. In particular, DiTullio and Cultec have no evidence of a single infringing activity.

"The patent statute provides that 'whoever actively induces infringement of a patent shall be liable as an infringer.' 35 U.S.C. §271(b) (1982). Thus, a person infringes by actively and knowingly aiding and abetting another's direct infringement." *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) (emphasis in original). It is black letter law that "[l]iability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993).

12        **ORAL ARGUMENT REQUESTED**

Infiltrator, Stormtech and Nichols cannot induce others to infringe Claim 11 because the modifications relied upon by Cultec and DiTullio to support their claim of induced infringement, which involves, cutting a hole in the end plate, still do not bring the accused devices within the scope of Claim 11. The accused devices will still lack the lugs, notches, stepped support members and vertical support walls that are required by Claim 11. Moreover, no amount of cutting or other modifications will cause the first end wall to inhibit spreading of adjoining chambers. As set forth above, the back filled rock performs this function.

Finally, there is simply no evidence to provide a basis for this Court to conclude that Infiltrator, Stormtech or Nichols are knowingly infringing Claim 11, which knowledge is a required element of an induced infringement claim. *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988). As a result there are no genuine issues of material fact and summary judgment of non-infringement by reason of inducement must be granted as a matter of law.

E. The Construction of Claim 16

1. The Language Of Claim 16

Claim 16 teaches:

16. A drain field gallery for guiding liquid through a drain field and allowing liquid to seep into adjoining ground comprising:

A. an elongated main body portion having a corrugated arch-shaped configuration thereby creating an enlarged enclosure with a plurality of upstanding ribs spaced apart longitudinally therealong;

B. at least one end wall covering one end of said elongated main body portion, **said at least one end wall having an opening therethrough dimensionally sized to accept a drainpipe for transporting the liquid to said gallery**;

C. **a latching engagement system associated with said at least one end wall for attaching said gallery to an adjoining gallery in an end-to-end engaged relationship**, said latching system being dimensionally sized to vertically seat in latching engagement on the latching system of the adjoining gallery and to inhibit relative longitudinal movement between the galleries, said at least one end wall inhibiting lateral spreading of said gallery and of said adjoining gallery and

**ORAL ARGUMENT REQUESTED**

restraining said arch-shaped configuration against deformation, wherein said latching engagement system is provided by end ribs of said plurality of ribs, and said end ribs are adjacent the terminal ends of said main body portion and are dimensionally sized to mate engagingly with end ribs on adjoining galleries,

**whereby said latching system includes said one end wall as means to prevent spreading of adjoining galleries once latched to one another**.

Exh. 3 Col. 12, ll.3 - 43 (emphasis supplied).

    a.   The Construction Of "Whereby Said Latching System Includes Said One End Wall As Means To Prevent Spreading Of Adjoining Galleries Once Latched To One Another".

As properly construed:

1.    The gallery must have a latching system for attaching a gallery to an adjoining gallery in an end-to-end relationship. Exhibit 3, Col. 12, ll. 25 – 28. The latching system must include an end wall. *Id.* at Col. 12, ll. 41 – 43.

2.    The "means to prevent spreading", must include lugs, notches or apertures, stepped support members, vertical support walls and end walls. Exhibit 3, Col. 5, l. 66 – Col. 6, l. 2.

b.    The Construction of "End Wall"

1.    The end wall is a portion of the main body of the gallery that must cover an end of the gallery. Exh. 3, Col. 4, ll. 28 – 30; *see also*, Fig. 4.

2.    There must be an end wall covering one end of the main body portion of the claimed drain field gallery. *Id.* at Col. 12. ll. 20 – 24.

3.    The end wall and the main body portion of the drain field gallery must be formed as a solid piece. *Id.* at Col. 5, ll. 54-57.

4.    The end wall must inhibit lateral spreading of said gallery and of said adjoining gallery and restraining said arch-shaped configuration against deformation. *Id.* at Col. 12, ll. 32 – 35.

5.    The end wall must have an opening therethrough dimensionally sized to accept a drainpipe for transporting the liquid to said gallery. *Id.* at Col. 12, ll. 21 – 24.

**14**        **ORAL ARGUMENT REQUESTED**

F.  There Can Be No Direct Infringement Of Claim 16 As A
    Matter Of Law

The final step of the Vitronics Court's infringement analysis requires this Court to compare the properly construed claims to the accused devices. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-82 (Fed. Cir. 1992) (citations omitted). Comparing Claim 16 to the accused devices must result in a finding that the accused devices do not infringe Claim 16 because the accused devices do not include each and every limitation in the claim. *DeMartini Sports, Inc.*, 239 F.3d at 1322 (quoting *Amhil Enters., Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996)).

As set forth more fully above, Claim 16 requires that each end wall associated with a latching system contain an opening sized to accept a drainpipe that passes through each chamber. Exh. 3, Col. 12, ll. 21 - 24. Neither the end walls of the accused devices nor the end plates contain an opening or its equivalent. Hence, Infiltrator, Stormtech and Nichols cannot directly infringe Claim 16 as a matter of law. Exh. 2 at ¶ 21, 33; 36; Exh.7 at ¶ 9.

Additionally, Infiltrator, Stormtech and Nichols cannot infringe Claim 16 because the accused devices do not include the lugs, apertures and stepped support members that comprise the means to prevent spreading of adjoining galleries one latched to one another. Exh.2 at ¶ 40, 41; Exh. 7 at ¶ 10. Insofar as none of the accused devices have a lug, aperture, stepped support members, or equivalents, the Plaintiff's cannot infringe Claim 16 as a matter of law.

G.  There Is No Evidence That Infiltrator, Stormtech And
    Nichols Are Inducing Others To Infringe Claim 16.

Cultec's and DiTullio's claim that Infiltrator, Stormtech and DiTullio are inducing others to infringe Claim 16 fails for the same reasons as their direct infringement claims. In particular, DiTullio and Cultec are unable to point to a single infringing activity.

"The patent statute provides that 'whoever actively induces infringement of a patent shall be liable as an infringer.' 35 U.S.C. §271(b) (1982). Thus, a person infringes by actively and knowingly aiding and abetting another's direct infringement." *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) (emphasis in original). It is black letter law that "[l]iability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993).

Cultec's and DiTullio's claims that Infiltrator, Stormtech and Nichols are inducing infringement fails for at least three reasons. First, Claim 16, specifically requires that end walls associated with latching systems have an opening to accommodate the drainpipe that passes through the gallery. There is no such opening in the accused chambers.

Second, even if this Court were to find that cutting a single hole in an end plate, as opposed to the end walls, fell within the scope of Claim 16, and it does not, the accused devices lack the spreading prevention means, namely, the lugs, apertures and stepped supporting members.

Finally, there is no basis for this Court to conclude that Infiltrator, Stormtech or Nichols are knowingly infringing Claim 16. As set forth above, Infiltrator, Stormtech and Nichols have a reasonable belief that the accused devices fall well outside the scope of Claim 16.

## IV. CONCLUSION

For all of the above reasons, Summary Judgment of non-infringement of U.S. Patent No. 5,087,151 should be granted in favor of Stormtech Incorporated, Infiltrator Systems, Inc. and James M. Nichols.

**ORAL ARGUMENT REQUESTED**

RESPECTFULLY SUBMITTED,
STORMTECH INCORPORATED,
INFILTRATOR SYSTEMS, INC. and
JAMES M. NICHOLS


Dated: April 2̶5̶, 2005                    By: _____
                                              Michael A. Cantor, Esq. (ct05524)
                                              Michael J. Rye, Esq. (ct18354)
                                              Daniel E. Bruso, Esq. (ct18666)
                                              CANTOR COLBURN, LLP
                                              55 Griffin Road South
                                              Bloomfield, CT 06002
                                              (860) 286-2929 (Telephone)
                                              (860) 286-0115 (Telecopier)

17          **ORAL ARGUMENT REQUESTED**

## CERTIFICATE OF SERVICE

I, Michael J. Rye, Esquire, attorney for Plaintiffs in the above-captioned matter, hereby certify that, on the 2̶8̶ day of April 2005, I served a true and accurate copy of PLAINTIFFS AND COUNTERCLAIM DEFENDANTS, INFILTRATOR SYSTEMS, INC. AND STORMTECH INCORPORATED'S, MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT OF NON-INFRINGEMENT, via first class mail, postage prepaid, upon:

Stephen P. McNamara
Steven B. Simonis, Esquire
St.Onge, Steward, Johnston & Reens LLC
986 Bedford Street
Stamford Connecticut 06905-5619

_____
Michael J. Rye

18     **ORAL ARGUMENT REQUESTED**