**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| Infiltrator Systems, Inc. and Stormtech, Incorporated, | : | |
| Plaintiffs, | : | Case No. 3:01CV2188 (AWT) |
| v. | : | |
| Cultec, Inc., and . Robert J. DiTullio, | : | May 1, 2006 |
| Defendants. | : | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS


TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... iii

I. PROCEDURAL ISSUES ..... 2

A. The "New Chambers" Are Not In Issue In This Case ..... 2

B. Law of the Case ..... 3

II. STATEMENT OF THE CASE ..... 4

III. STATEMENT OF FACTS ..... 5

A. Background ..... 5

B. The DiTullio '151 Patent ..... 7

C. Infiltrator's Infringing Chambers ..... 9

IV. LEGAL STANDARDS ..... 11

A. Standard for Motion for Summary Judgment ..... 11

B. Standard for Patent Infringement ..... 12

V. CLAIM INTERPRETATION ..... 14

A. The Claim Construction Process ..... 15

B. Claim 16 Is Not A "Means Plus Function" Claim ..... 17

C. Claim 11 Is A Means Plus Function Claim But Does Not Require the Many Sub-Elements Argued By Infiltrator ..... 22

D. The "Opening" Claim Interpretation Issue ..... 25

E. The "Integral End Wall" Claim Interpretation Issue ..... 26

VI. THERE ARE GENUINE ISSUES OF MATERIAL FACT REGARDING INFILTRATOR'S NON-INFRINGEMENT ALLEGATIONS .................................. 27

A. Infiltrator Has Not Proven Non-Infringement of Claim 16 .............................. 26

B. Infiltrator Has Not Proven Non-Infringement Of Claim 11 ......................... 29

VII. CONCLUSION ........................................................................................................ 32

# TABLE OF AUTHORITIES

**Cases**

*Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298 (Fed. Cir. 2003) .... 4

*Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850 (Fed. Cir. 1991) .... 16

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) .... 11

*CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146 (Fed. Cir. 1997) .... 3

*Jack Guttman, Inc., v. Kopykake Enterprises, Inc.*, 302 F.3d 1352 (Fed. Cir. 2002) .... 3

*Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985 (Fed Cir. 1999) .... 15

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 116 S.Ct. 1384 (1996) .... 13, 15, 16

*Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250 (Fed. Cir. 1999) .... 17

*Mycogen Plant Science v. Monsanto Co.*, 243 F.3d 1316 (Fed. Cir. 2001) .... 16

*Nazomi Communs., Inc v. Arm Holdings, PLC*, 403 F.3d 1364 (Fed. Cir. 2005) .... 4

*Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331 (Fed. Cir. 2003) .... 3

*Omega Eng'g, Inc. v. Cole-Parmer Instrument Co.*, Civil Action No. 3-98-cv-2052(JCH), slip op. (D. Conn. March 15 , 2002) .... 14

*Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) .... 18, 19, 20

*Pitney-Bowes, Inc. v. Sudbury Systems, Inc.*, Civil Action No. 3-95-cv-276(JCH), slip op. (D. Conn. Nov. 8 , 2000) .... 12

*Purdue Pharma L.P. v. Boehringer Ingeheim GmbH*, 237 F.3d 1359 (Fed. Cir. 2001) .... 3

*Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336 (Fed. Cir. 2001) ................................ 17

*Specialty Composites v. Cabot Corp.*, 845 F.2d 981 (Fed. Cir. 1988) .......................... 15

*SRI International v. Matsushita Electric Corp. of America*, 775 F.2d 1107 (Fed. Cir. 1985) .................................................................... 12

*Teleflex Inc. v. Ficosa North America Corp.*, 299 F.3d 1313 (Fed. Cir. 2002) ............. 21

*Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295 (Fed. Cir. 1999) ...................... 15

*Transmatic Inc. v. Gulton Industries Inc.*, 53 F.3d 1270 (Fed. Cir. 1995).......................... 12

*Valmont Indus., Inc. v. Reinke Mfg. Co., Inc.*, 983 F.2d 1039 (Fed. Cir. 1993) .................................................................... 17

*Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555 (Fed. Cir. 1991) ............................................. 12

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ............................... 13

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 117 S. Ct. 1040, 137 L .Ed. 2d 146 (1997) .................................. 13

*Watts v. XL Sys, Inc.*, 232 F.3d 877 (Fed. Cir. 2000) .................................................... 16

*Wright Medical Technology, Inc. v. Osteonics Corp.*, 122 F.3d 1440 (Fed. Cir. 1997) .................................................................... 13

**Rules and Statutes**

F.R.Civ.P., Rule 56(c) .................................................................................... 11

35 U.S.C. § 112 ............................................................................................... 17

35 U.S.C. § 271 (a) .........................................................................................12

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| Infiltrator Systems, Inc. and Stormtech, Incorporated, Plaintiffs, | Case No. 3:01CV2188 (AWT) |
| v. | |
| Cultec, Inc., and . Robert J. DiTullio, Defendants. | May 1, 2006 |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Defendants Cultec, Inc., and Robert J. DiTullio (collectively, "Cultec"or "Defendants") hereby oppose the motion of Plaintiffs Infiltrator Systems, Inc. and Stormtech, Incorporated (collectively "Infiltrator" or "Plaintiffs") for summary judgment.

Infiltrator seeks summary judgment of non-infringement based on the alleged omission of only a few elements from the Old Chambers that Infiltrator argues are called for by claims 11 and 16. However, Infiltrator is either wrong as a matter of law regarding the alleged omissions because they are not required by the claims in issue, or else wrong as matter of fact because the allegedly missing elements are actually present and there are genuine issues of material fact presented by the conflicting assertions of the parties as to the presence or absence of the allegedly missing elements. Specifically, Infiltrator's arguments turn on two main points: (1) that the claim requires lugs, notches and other elements; and (2) that the Infiltrator chambers do not have openings. Cultec responds to these arguments that (1) the claims do not require such elements so that the presence or absence of them is irrelevant; and (2) the Infiltrator chambers

have openings as seen in the photographs of them and further that contractors cut openings in the chambers as directed by Infiltrator.

Cultec's opposition is supported by the accompanying Declaration Of Robert J. DiTullio dated April 28, 2006 ("DiTullio Decl."), the accompanying Declaration Of Stephen P. McNamara dated May 1, 2006 ("McNamara Decl."), and the accompanying Defendants' Summary Judgment Appendix ("App.").

## I. PROCEDURAL ISSUES

### A. The "New Chambers" Are Not In Issue In This Case

Infiltrator's motion for summary judgment seeks a ruling of non-infringement. But nowhere in the motion or memorandum does Infiltrator specify what devices its motion is addressed to. Infiltrator's Memorandum In Support of Summary Judgment of Non-Infringement ("Memorandum") only refers to "accused devices" (*See*, *e.g.*, Memorandum at 11). The Declarations of Bryan Coppes (attached as Exhibits 2 and 7 to the Declaration of Michael J. Rye in support of Infiltrator's motion ("Rye Decl.")) refer to the "Old Chambers" (the Infiltrator 3050 and Stormtech 770 chamber) as well as the "New Chambers" (the "New 3050 Chamber", and the Stormtech 740 and Stormtech 310 chamber). However, the New Chambers are not in issue in this case. They were not being sold at the time of the filing of the declaratory judgment complaint and are not mentioned in the original complaint or the First Amended Complaint (*see* Rye Decl. Exhs. 4 and 1, respectively). The only products mentioned in the complaints are the "Old Chambers", e.g., the old Infiltrator 3050 chamber and the Stormtech 770 chamber. Cultec's infringement Counterclaims have been expressly limited to the Old Chambers by Cultec's counsel during the preliminary injunction hearing [App. at

A1673]. Accordingly, the motion for summary judgment should only be considered with regard to the Infiltrator Old Chambers, namely, the "old 3050" and Stormtech 770 chambers.

**B. Law of the Case**

The Court denied Cultec's motion for preliminary injunction against Infiltrator's further sale of the Old Chambers [Dkt. No. 185, 186], indicating that the Court did not believe that there was an infringement. Those rulings made in the context of the preliminary injunction motions are *not* "Law of the Case" rulings and are not conclusive of any issue still to be decided in this case. *See Jack Guttman, Inc., v. Kopykake Enterprises, Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002)("[A]ll findings of fact and conclusions of law at preliminary injunction stage are subject to change upon trial on the merits.")(citing *Purdue Pharma L.P. v. Boehringer Ingeheim GmbH*, 237 F.3d 1359, 1363 (Fed. Cir. 2001)); *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1345 n.3 (Fed. Cir. 2003)(tentative or rolling claim construction at the preliminary injunction stage is permissible and subject to change after parties augment arguments or proof); *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1160 n.7 (Fed. Cir. 1997)(recognizing importance of construing asserted claims upon final and complete record as opposed to record at the preliminary injunction stage).

The interpretation of patent claims is an issue for the Court to decide based upon information and argument before the Court at the time it considers the papers supporting and opposing the present motion for summary judgment. At this later stage in the case, the controlling law, as well as the parties' burdens, are different that in the preliminary injunction stage and this Court must analyze all the relevant facts and law as they currently exist.

The Court's orders denying defendants' motions for preliminary injunction [Dkt. No. 185, 186] are not a "Markman" claim interpretation ruling. If the Court chooses to grant Infiltrator's motion seeking summary judgment of non-infringement, the Court has the obligation to issue a "Markman" ruling explaining the Court's claim interpretation and the basis thereof so that the basis for the Court's decision can be reviewed on appeal. *See Nazomi Communs., Inc v. Arm Holdings, PLC*, 403 F.3d 1364, 1371 (Fed. Cir. 2005)(vacating grant of summary judgment of noninfringement where trial court did not provide detailed analysis of disputed claim construction); *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1311 (Fed. Cir. 2003)(summary judgment precluded where district court failed to interpret disputed claim term).

## II. <u>STATEMENT OF THE CASE</u>

Plaintiffs filed this action in November 2001, seeking a declaratory judgment of non-infringement regarding the United States Patent No. 5,087,151 entitled "Drainage System", issued February 11, 1992 ("the DiTullio '151 patent") and asserting unfair competition claims against Defendants [Dkt. No. 1]. Plaintiffs requested leave to file an amended complaint on December 27, 2001 [Dkt. No. 5], which was granted, and Plaintiffs' First Amended Complaint was entered January 15, 2002 [Dkt. No. 11]. Although Plaintiffs' First Amended Complaint added Counts II-V seeking declaratory judgments of non-infringement of four additional patents, these claims were later dismissed by stipulation [Dkt. No. 129] after Defendants filed a motion to dismiss [Dkt. Nos. 86-88].

Defendants filed their answer [Dkt. No. 12] on January 28, 2002 and their counterclaims [Dkt No. 13] on January 31, 2002. Defendants moved for a preliminary

injunction against infringement of the DiTullio '151 patent on February 6, 2002 [Dkt. Nos. 14, 15], which was initially denied on May 31, 2002, apparently because the court was under the impression that the motion was not ripe for consideration [Dkt No. 47]. Defendants moved for reconsideration of this ruling and renewed their motion for preliminary injunction on June 10, 2002 [Dkt. 50]. Defendants also filed a supplemental motion for preliminary injunction on August 22, 2002 [Dkt. 71] to explicitly assert a claim of infringement of claim 11 of the DiTullio '151 patent against Plaintiffs. An evidentiary hearing was held on November 25 and 26, 2002 [Dkt. Nos. 114, 116]. Orders denying defendants' renewed motion for preliminary injunction issued on March 29 and 30, 2005 [Dkt. Nos. 185, 186]. An appeal of the denial of the motion for preliminary injunction was dismissed as moot when Infiltrator submitted to the Court of Appeals a declaration stating that Infiltrator had not sold the Old Chambers since January 2003 and that the product inventory had been scrapped in August 2003.

## III. STATEMENT OF FACTS

### A. Background

The DiTullio '151 patent [App. at A1-13] relates to plastic chambers, which are referred to in the patent as a "gallery" or "galleries", which are designed to be placed within a bed of crushed stone, to act as a reservoir to retain stormwater runoff from roofs and paved surfaces, until the water can percolate into the ground, so as to avoid surface water problems such as ponding, and to avoid directing runoff water into a sewer system. Defendant Cultec, Inc. manufactures and sells a number of different models of such chambers under the DiTullio '151

patent. An installed system using such chambers is shown to the right. A single example of a chamber, a Cultec Recharger 330, are illustrated below.



Plaintiffs Infiltrator Systems, Inc. and Stormtech, Incorporated marketed a stormwater product called the Maximizer starting in 1996, but it suffered numerous failures in 1997 and was pulled from the market. Plaintiffs later decided to try again, and this time they began with studies of the DiTullio '151 patent [App at A1741-1743]. They approached Defendant Robert J. DiTullio, seeking a license under the DiTullio '151 patent, but despite a series of negotiations, they were unable to agree on a price for a license. [App. at A1690-1696, A1743-1744]. In particular, Plaintiffs were unwilling to pay a 6% royalty [App. at A1967-1968]. Plaintiffs then approached Fabri-Form Co., a manufacturer of plastic products which was making chambers for Defendant Cultec, Inc. at the time, and had Fabri-Form Co. make

chambers for Plaintiffs. The products made by Fabri-Form were the Old Chambers, marketed as the "3050" and "Stormtech 770" chambers. The Old Chambers were very similar in appearance to the Cultec chambers and caused confusion in the marketplace [App. at A1699-1700].

**B. The DiTullio '151 Patent**

The DiTullio '151 patent discloses several different embodiments of a stormwater chamber. The particular embodiment in issue in this case is the embodiment disclosed in Figures 12-14 of the patent [App. at A6-7] in which the plastic chambers have one open end and one closed end, and a plurality of corrugated ribs. [DiTullio Decl ¶ 4]. The closed end of the chamber has an end wall that supports the arch shape of the corrugated chamber. *Id.* The corrugated rib at the closed end of the chamber is sized to be smaller that the other ribs, so that the open end of a second chamber can be overlaid on the closed end of the first chamber, with the larger rib of the open end of the second chamber being seated onto the smaller rib at the closed end of the first chamber. [*Id.;* App. at A9, Col. 3, lines 18-29 and A10, Col. 5, lines 48-65]. In this way, a row of chambers may be quickly installed together and have the benefit of the closed end wall providing structural support for the series of chambers at each overlapping connection between chambers [DiTullio Decl. ¶¶ 4, 10, 11].

The file history [App. at A660-A946] of the patent in suit begins with an original application which was filed in January 1989 [App. at A664-A691]. In the filed application, claim 1 specified a "drain field gallery" with a "latching system for attaching said gallery to an adjoining gallery." Dependent claim 16 specified "means to prevent spreading of adjoining galleries once latched to one another." [App. at A685]. The claims were rejected

by the Examiner in an Office Action of June 6, 1989, but the Examiner indicated that claims 3-6, 17, 20-23, and 29 would be allowable if set forth in independent form. [App. at A738-742]. Many of these allowable claims specified "protruberances" on a lower flange.

Following that rejection, Mr. DiTullio's attorneys conducted an interview with the Examiner [App. at A744]. Mr. DiTullio's Response to Office Action [App. at A763-779] was mailed August 10, 1989 and amended claims 3, 17 and 20 into independent form to make them allowable. In the Response, Mr. DiTullio argued against an obviousness rejection based on the overlapping rib and argued that "in this manner of latching, the end wall 30A provides essential support for galleries which is stronger than Nichols when loads are applied under normal installation." [App. at A776].

In the next Office Action, issued October 27, 1989 [App. at A784-788], the Examiner indicated that claims 12, 16, 36 and 37 were objected to, but would be allowable if rewritten in independent form. [App. at A784, A787]. The Examiner had clearly reconsidered the objection and was prepared to allow claims that specified "means to prevent spreading" of adjoining galleries once latched to each other. (*See* App. at A685 (claim 16) and A772 (claim 36)).

Mr. DiTullio's patent attorneys tried proposing language to be added to base claim 1 such as "the end wall inhibiting lateral spreading of said gallery and restraining the arch-shape configuration against deformation" [App. at A792], but the Examiner rejected this amended language, on the grounds that the claim language was a functional statement that did not add patentable structure to the claim. [App. at A862].

Mr. DiTullio's patent attorney discussed proposed claim 38 in a Response to Office Action as follows:

> As now rewritten, the structures of FIGURES 12-14 are defined in claim 38 in terms of protruding rib 18A' extending outward around the periphery of the one end wall 30A, and the enlarged internal terminal latching groove extending outward around the periphery of the open end of the adjoining gallery, to provide the positive latching engagement of adjoining galleries, with the one wall inhibiting lateral spreading movement and restraining deformation of both connected galleries. [A873].

However, this claim was again rejected. In contrast, proposed claim 41 (which issued as claim 11 of the patent) [App. at A869-870] was immediately allowed [App. at A876, A879].

Eventually, amended the language in proposed claim 46 to read "whereby said latching system includes ***said one end wall as means to prevent spreading*** of adjoining galleries once latched to one another." [App. at A895-896 (emphasis added)].

Mr. DiTullio's attorney explicitly stated to the Patent Office what this clause meant. He stated that "original claim 16, **specifically defining the overlapping latched corrugated ribs shown in FIGURES 12 and 13 cooperating with the single end wall to stabilize the latched galleries and inhibit lateral spreading**, was provisionally approved in the previous action of July 26, 1990, and it is now also presented here, rewritten specifically as independent claim 46." [App. at A897 (emphasis added) ].

Claim 46 was allowed [App. at A901-902] and eventually renumbered as claim 16 in the issued patent. [App. at A895].

### C. Infiltrator's Infringing Chambers

The "old 3050" chambers, also called the Stormtech 770 chambers, are open-bottomed, arch-shaped, corrugated rib stormwater storage chambers. The chambers have one

open end, and an integral end wall on one closed end as seen in the photograph below [*See* App. at A14-15, A26-37].



The end wall has a "mouse hole" or transfer opening provided at its lower end. [DiTullio Decl. ¶ 8]. The end wall also has a concentric group of circular cutaway zones intended to be cut away by contractors to provide a hole of a selected size. [DiTullio Decl. ¶ 9]. A separate end wall piece, which Infiltrator calls an "end plate," is sold with and is intended to fit into the open end of the chamber if the chamber is at the end of the row. [DiTullio Decl. ¶¶ 13-15, App. at A26-31]. Otherwise, the open end of the chamber is intended to be fitted over the closed end of the preceding chamber. When adjoining chambers are connected together in this way, the inner surface of a larger sized rib on the open end of the chamber fits over and latches onto the outer surface of a smaller rib at the closed end of the adjoining chamber. [DiTullio Decl. ¶ 10; App. at A26-37]. Witnesses for both Plaintiffs and Defendants have testified that the end wall of the "old 3050" chamber was a structural member, and the testimony of Mr. DiTullio was that the end wall prevented spreading of the chambers. [App. at A1700-1710, A1732-1733, A1745, A1963-1967, A1985-1986, A2015-2024; *see* App. at 14-23 (photos), A24-31 (Old Chamber brochures), A32-37 (photos); *see also* DiTullio Decl. ¶¶ 10, 11, 13]. The specific instructions provided by Infiltrator for their product reads as follows:

## Requirements for Attaching the Endplates

1 With a hole saw or utility knife, cut an opening for the inlet pipe at an invert of 24". Hole size will depend on the size of pipe used.

2 Lift the open end of the chamber approximately 6" and with its flange pointing downstream, place the endplate into the chamber's nearest corrugation.

3 End Plates are required only at the beginning of each row of chambers.

## Requirements for Installing the Chambers

1 Check the header pipe to be sure that it is level.

2 Set the inlet pipe invert at 24" from the bottom of the trench to the bottom of the inlet of the 3050 chambers.

3 Place the first chamber with the end plate side at the beginning of the trench.

4 Insert the inlet pipe into the cut pipe opening of the end plate. The pipe will only go in 2" before it reaches a pipe stop at the first corrugation of the chamber.

5 Check the first installed chamber to be sure that it is level.

6 Secure the inlet pipe to the chamber with a screw at the 12 o'clock position.

7 Connect the second chamber to the first by placing its open end over the closed end corrugation of the first chamber.

8 Continue installing the remaining chambers until the trench is complete.

9 Proceed to the next trench and begin with step 1.

[App. at A30]. This brochure was available on Infiltrator's website up until at least January 2006 [App. at A62-A84]. Infiltrator clearly has instructed contractors to cut pipe openings in the chamber end plates, and to install the chambers by overlapping the open ends of chambers over the closed ends of chambers.

## IV. LEGAL STANDARDS

### A. Standard for Motion for Summary Judgment

Summary judgment is appropriate where "there is no genuine issue of material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). However, summary judgment is not appropriate if the dispute about a material fact is "genuine", that is, if the evidence is such "that a reasonable jury could return a verdict for the

non-moving party." *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1560 (Fed. Cir. 1991). In determining whether there is a genuine issue of material fact, "the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent." *Transmatic Inc. v. Gulton Industries Inc.,* 53 F.3d 1270, 1274 (Fed. Cir. 1995) (citations omitted). As stated by this Court in *Pitney-Bowes, Inc. v. Sudbury Systems, Inc.*, Civil Action No. 3-95-cv-276(JCH), slip op. at 13 (D. Conn. Nov. 8 , 2000).

> Summary judgment on the issue of infringement must be approached with great care. *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 528 (Fed. Cir. 1996). Because infringement itself is a fact issue, generally a motion for summary judgment of infringement or non-infringement will be inappropriate. *Chemical Eng'g Corp. v. Essef Indus., Inc.*, 795 F.2d 1565, 1571 (Fed. Cir. 1986); *D.M.I., Inc. v. Deere & Co.,* 755 F.2d 1570, 1573 (Fed. Cir. 1985). However, if comparison of a properly interpreted claim with a stipulated or uncontested description of an accused device or process reflects a complete absence of material fact issues, summary judgment is appropriate. *Amhil Enterprises Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1557 (Fed. Cir. 1996); *D.M.I., Inc.*, 755 F.2d at 1573; see also *Chemical Eng'g Corp.*, 795 F.2d at 1571.

Infiltrator has not satisfied these conditions for grant of summary judgment of non-infringement.

**B. Standard for Patent Infringement**

Infringement of a U.S. patent exists if a person, without authority of the patent owner, makes, uses, offers to sell, or sells the patented invention. 35 U.S.C. §271 (a). The burden of proving infringement is on the patentee. *SRI International v. Matsushita Electric Corp. of America*, 775 F.2d 1107, 1123 (Fed. Cir. 1985).

The analysis of infringement is a two-step process. First, the claims must be construed to determine their meaning and scope. Second, the construed claims must be compared to the

device which is accused of infringing the patent claims. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995)(*in banc*), *aff'd*, 116 S.Ct. 1384 (1996).

The step of claim construction involves a determination of "what it is that has been patented", i.e., what are the literal metes and bounds of the invention set forth in the patent claims. This step, often referred to as "claim interpretation" or "claim construction", is a matter of law for resolution by the trial court. *Markman*, 52 F.3d at 979, based on the language of the claim and, as necessary, on the specification of the patent and the proceedings in the U.S. Patent and Trademark Office which led to the grant of the patent (referred to as the "prosecution history" or "file wrapper"). *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-82 (Fed. Cir. 1996).

The second step is the comparison of the properly construed claims to the accused device. *Markman*, 52 F.3d at 976. The second step is a question of fact. Infringement exists if each and every element, feature and limitation of the claim exists in the accused device either exactly (so-called "literal infringement") or by a substantial equivalent (so-called "infringement under the doctrine of equivalents").

Infringement under the doctrine of equivalents arises where the equivalent of a limitation of a claim is found in the infringing product, and the equivalent differs only insubstantially, and it performs the same function in substantially the same way to achieve substantially the same result. *Wright Medical Technology, Inc. v. Osteonics Corp.*, 122 F.3d 1440, 1444 (Fed. Cir. 1997); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 117 S. Ct. 1040, 1054, 137 L .Ed. 2d 146 (1997).

As stated by this Court:

> To determine whether a device infringes a patent, the court must compare the alleged infringing device with the patent's claims, as properly construed in a Markman ruling. *SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988). The device infringes the patent if it "embodies every limitation of the asserted claims," either literally or in equivalent form under the doctrine of equivalents. *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429 (Fed. Cir. 2000). Whether the device embodies every limitation of the claims is a question of fact for the fact finder unless the court concludes, after drawing all reasonable inferences in favor of the non-movant, that no reasonable jury could find for the non-movant. *Id.* Literal infringement requires that the alleged infringing device contain every element in the same form stated in the asserted claim. In contrast, the doctrine of equivalents provides a separate standard for infringement that focuses on the "role played by each element in the context of the specific patent claim" and determines equivalence using "an objective inquiry on an element-by-element basis." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17,40 (1997). To be equivalent, the elements of the accused device must perform substantially the same function, in substantially the same way, to obtain substantially the same result or otherwise have only insubstantial differences compared to the claim limitations of the patent. *Id.*

*Omega Eng'g, Inc. v. Cole-Parmer Instrument Co.*, Civil Action No. 3-98-cv-2052(JCH), slip op. at 16-17 (D. Conn. March 15 , 2002).

## V. CLAIM INTERPRETATION

Two main claims that require interpretation in connection with Infiltrator's Motion for Summary Judgment of NonInfringement. These are claims 11 and 16 of the DiTullio '151 patent. These two claims have different wording, and, as discussed below, require different interpretations. Specifically, while claim 11 includes a means plus function element, claim 16 does not. This is very clear from the oral argument on the appeal to the Court of Appeals for the Federal Circuit.

Although the Court of Appeals denied Cultec's appeal as moot, the oral argument clearly indicated the court had definite ideas about the proper construction of the claims of the