# Appeal No. 05-1375

IN THE

# UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

INFILTRATOR SYSTEMS, INC. and STORMTECH, INC.,

*Plaintiffs-Appellees,*

-v.-

CULTEC, INC. and ROBERT J. DITULLIO,

*Defendants-Appellants.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT IN CASE NO.
01-CV-02188, JUDGE ALVIN W. THOMPSON.

## OPENING BRIEF OF DEFENDANTS-APPELLANTS

Stephen P. McNamara
Steven B. Simonis
ST.ONGE STEWARD JOHNSTON & REENS LLC
986 Bedford Street
Stamford, Connecticut  06905-5619
Telephone: (203) 324-6155
Facsimile: (203) 327-1096

July 5, 2005          *Attorneys for Defendants-Appellants*

## I.    <u>CERTIFICATE OF INTEREST</u>

I hereby certify:

1.    The full names of every party represented by me are:

Cultec, Inc. and Robert J. DiTullio

2.    The names of the real parties in interest represented by me are:

Cultec, Inc. and Robert J. DiTullio

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of any of the parties represented by me are:  None.

4.    The names of all law firms and the partners or associates that appeared for any of the parties represented by me in trial court or are expected to appear in this court are:

Stephen P. McNamara
St.Onge Steward Johnston & Reens LLC.

Dated: July 5, 2005

Stephen P. McNamara
St.Onge Steward Johnston & Reens, LLC
986 Bedford Street
Stamford, Connecticut  06905-5619
Telephone: (203) 324-6155

i

**II.**      <u>**TABLE OF CONTENTS**</u>                          <u>**Page No.**</u>

I.      CERTIFICATE OF INTEREST .................................................. i

II.     TABLE OF CONTENTS ..................................................... ii

III.    TABLE OF CASES, STATUTES AND OTHER AUTHORITIES ... iv

IV.     STATEMENT OF RELATED CASES ................................. 1

V.      JURISDICTIONAL STATEMENT..................................... 1

VI.     STATEMENT OF THE ISSUES ....................................... 1

VII.    STATEMENT OF THE CASE .......................................... 2

VIII.   STATEMENT OF FACTS ................................................ 4

      A.  Background ...................................................... 4

      B.  The DiTullio '151 patent................................ 6

      C.  Defendants' Infringing Chambers ............................... 10

IX.     SUMMARY OF ARGUMENT ......................................... 12

      A.  The District Court's Decision May Be Insufficient
          To Permit Appellate Review....................................... 12

      B.  The District Court Erred In Its Claim Construction.................... 12

      C.  The District Court Erred in Finding Non-Infringement.............. 13

X.      ARGUMENT ................................................................ 13

      A.  Standard of Review ....................................... 13

      B.  The District Court's Ruling May Require Amplification ........... 14

C.  The District Court Erred in Its Claim Construction ................... 17

D.  The District Court Erred in Determining That Plaintiffs'
    Chambers Do Not Infringe the DiTullio '151 Patent ................ 29

XI.    CONCLUSION ................................................................. 33

XII.   ADDENDUM .................................................................. 35

XIII.  CERTIFICATE OF SERVICE ........................................ 36

XIV.  CERTIFICATE OF COMPLIANCE WITH RULES 32(a)(7)(B)
      AND (C), Fed. R. App. P. ................................................. 36

**III.**       <u>**TABLE OF CASES, STATUTES, AND OTHER AUTHORITIES**</u>

*Allen Organ Co. v. Kimball Int'l, Inc.,*
839 F.2d 1556 (Fed. Cir. 1988)........................................................ 33

*Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.,*
340 F.3d 1298 (Fed. Cir. 2003)........................................................ 16

*Biodex Corp. v. Loredan Biomedical, Inc.,*
946 F.2d 850 (Fed. Cir. 1991)......................................................... 18

*CVI/Beta Ventures, Inc. v. Tura LP,*
112 F.3d 1146 (Fed. Cir. 1997)....................................................... 27

*Gechter v. Davidson,*
116 F.3d 1454 (Fed. Cir. 1997)....................................................... 15

*Genentech, Inc. v. Novo Nordisk A/S,*
108 F.3d 1361 (Fed. Cir.)
*cert. denied,* 522 U.S. 963 (1997)................................................... 14

*Graco, Inc. v. Binks, Manufacturing Company,*
60 F.3d 785 (Fed. Cir. 1995)........................................................... 16

*Intel Corp. v. VLSI Sys. Tech., Inc.,*
995 F.2d 1566 (Fed. Cir. 1993)
*cert. denied,* 510 U.S. 1092 (1994),............................................... 14

*Jack Guttman, Inc. v. Kopykake Enterprises, Inc.,*
302 F.3d 1352 (Fed. Cir. 2002)................................................... 13, 14

*Johnson Worldwide Assocs. v. Zebco Corp.,*
175 F.3d 985 (Fed. Cir. 1999)......................................................... 17

*Joy Technologies, Inc. v. Flakt, Inc.,*
6 F.3d 770 (Fed. Cir. 1993)........................................................ 31, 32

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995)(*in banc*),
*aff'd*, 517 U.S. 370 (1996) ................................................... 17, 18

*Micro Chem., Inc. v. Great Plains Chem. Co.*,
194 F.3d 1250 (Fed. Cir. 1999)................................................ 20

*Mycogen Plant Science v. Monsanto Co.*,
243 F.3d 1316 (Fed. Cir. 2001)................................................ 18

*National Presto Industries, Inc. v. The West Bend Co.*,
76 F.3d 1185 (Fed. Cir. 1996)................................................. 32

*National Steel Car Ltd. v. Canadian Pacific Railway Ltd.*,
357 F.3d 1397 (Fed. Cir. 2004)................................................ 13

*Nazomi Communications, Inc v. Arm Holdings, PLC*,
403 F.3d 1364 (Fed. Cir. 2005)................................................ 15

*Novo Nordisk of N. Am., Inc. v. Genentech, Inc.*,
77 F.3d 1364 (Fed. Cir. 1996)............................................. 13, 14

*Oakley, Inc. v. Sunglass Hut, Int'l*,
316 F.3d 1331 (Fed. Cir. 2003)................................................ 14

*Omega Engineering, Inc. v. Raytek Corporation*,
334 F.3d 1314 (Fed. Cir. 2003)................................................ 14

*Phonometrics, Inc. v. Northern Telecom Inc.*,
133 F.3d 1459 (Fed. Cir. 1998)................................................ 27

*Read Corp. v. Portec, Inc.*,
970 F.2d 816 (Fed. Cir. 1992)................................................. 15

*Renishaw PLC v. Marposs Societa' per Azioni*,
158 F.3d 1243 (Fed. Cir. 1998)................................................ 17

*Rexnord Corp v. Laitram Corp.*,
274 F.3d at 1344 (Fed. Cir. 2001)............................................. 19

*Southwall Techs., Inc. v. Cardinal IG Co.,*
54 F.3d 1570 (Fed. Cir. 1995) ................................................................ 27

*Specialty Composites v. Cabot Corp.,*
845 F.2d 981 (Fed. Cir. 1988) ................................................................ 17

*SRI Int'l v. Matsushita Elec. Corp. of America,*
775 F.2d 1107 (Fed. Cir. 1985) .............................................................. 19

*Teleflex, Inc. v. Ficosa North America Corp.,*
299 F.3d 1313 (Fed. Cir. 2002) .............................................................. 26

*Toro Co. v. White Consol. Indus., Inc.,*
199 F.3d 1295 (Fed. Cir. 1999) .............................................................. 17

*Valmont Indus., Inc. v. Reinke Mfg. Co., Inc.,*
983 F.2d 1039 (Fed. Cir. 1993) .............................................................. 19

*Water Technologies, Corp. v. Calco, Ltd.,*
850 F.2d 660 (Fed. Cir. 1988) ................................................................ 32

*Watts v. XL Sys, Inc.,*
232 F.3d 877 (Fed. Cir. 2000) ................................................................ 18

<u>Statutes</u>

28 U.S.C. § 1338(a)(1) ............................................................................. 1

28 U.S.C. § 1292 (c)(1) ............................................................................ 1

35 U.S.C. § 112 ....................................................................................... 19

35 U.S.C. § 271 (b) ................................................................................. 31

<u>Other Authorities</u>

4 D. Chisum, Chisum on Patents §§17.04[2],[3] ............................................. 32

M.P.E.P. § 2114 ................................................................................ 24

M.P.E.P. § 2181 ................................................................................ 25

Rule 4(a)(1) Fed. R. App. P. ................................................................ 1

## IV.  STATEMENT OF RELATED CASES

There are no other pending actions which are related to the present appeal.

## V.  JURISDICTIONAL STATEMENT

This is an appeal of a denial of motions for preliminary injunction filed by

Defendants-Appellants Cultec, Inc. and Robert J. DiTullio in connection with their

counterclaim for infringement of U.S. Patent 5,087,151 (the "DiTullio '151

patent") [Appendix pp. A0003-15, hereinafter "A__"], which was filed in response

to Plaintiffs' action for a declaratory judgment of non-infringement of the DiTullio

'151 patent and other patents of the Defendants.  Jurisdiction in the trial court was

conferred *inter alia*, by 28 U.S.C. § 1338(a)(1).  The statutory basis for jurisdiction

to hear the present appeal is 28 U.S.C. §1292(c)(1).  The district court entered its

Endorsement Orders denying Defendants' motions for preliminary injunction on

March 29 and 30, 2005 [Docket Nos. 185, 186].  Appellants timely filed a Notice

of Appeal on April 18, 2005 in accordance with Rule 4(a)(1), Fed. R. App. P.

## VI. STATEMENT OF THE ISSUES

1. A preliminary issue presented in the appeal is whether there is a

sufficient explanation in the record of the grounds and basis for the district court's

denial of the preliminary injunction motions to permit review of the case.

2. The main issue presented by this appeal is whether the district court erred in its claim construction by concluding that the claim language of claims 11 and 16 of the DiTullio '151 patent specifying "means to prevent lateral spreading" and "means to prevent spreading" are limited to a chamber which has lugs, *and* notches (or apertures), *and* stepped support members, *and* vertical support walls, *and* end walls, instead of interpreting the clauses to mean a chamber which has an end wall and overlapping latched corrugated ribs.

3. The other issue presented by this appeal is whether the district court erred in denying Defendants' motions for preliminary injunction based on its conclusion that the Plaintiffs' stormwater chambers do not infringe claims 11 and 16 of the DiTullio '151 patent.

## VII.    <u>STATEMENT OF THE CASE</u>

Plaintiffs filed this action in November 2001, seeking a declaratory judgment of non-infringement regarding the DiTullio '151 patent and asserting unfair competition claims against Defendants [Dkt. No. 1]. Plaintiffs requested leave to file an amended complaint on December 27, 2001 [Dkt. No. 5], which was granted, and Plaintiffs' First Amended Complaint was entered January 15, 2002 [Dkt. No. 11]. Although Plaintiffs' First Amended Complaint added Counts II-V seeking declaratory judgments of non-infringement of four additional patents,

these claims were later dismissed by stipulation [Dkt. No. 129] after Defendants filed a motion to dismiss [Dkt. Nos. 86-88].

Defendants filed their answer [Dkt. No. 12] on January 28, 2002 and their counterclaims [Dkt No. 13] on January 31, 2002. Defendants moved for a preliminary injunction against infringement of the DiTullio '151 patent on February 6, 2002 [Dkt. Nos. 14, 15], which was initially denied on May 31, 2002, apparently because the court believed that the motion was not ripe for consideration [Dkt No. 47; *see* A979-980]. Defendants moved for reconsideration of this ruling and renewed their motion for preliminary injunction on June 10, 2002, [Dkt. 50]. Defendants also filed a supplemental motion for preliminary injunction on August 22, 2002 [Dkt. 71] to explicitly assert a claim of infringement of claim 11 of the DiTullio '151 patent against Plaintiffs . Defendants had asserted infringement of claim 11 in Defendants' reply brief [Dkt No. 38] on their original motion for preliminary injunction.

An evidentiary hearing was held on November 25 and 26, 2002 [Dkt. Nos. 114, 116]. Extensive briefing occurred both before and after the hearing. [Dkt Nos. 14, 15, 16, 26, 38, 47, 49, 50, 51, 53, 71, 76, 80, 83, 125, 128 93, 94, 96, 97, 101, 102, 134, 142, 143, 147, 156, 157, 158].

A telephonic status conference was held on February 14, 2005, during which the district court indicated that it would grant Defendants' motion for

- 3 -

reconsideration but that it would adopt the Plaintiffs' proposed claim construction, and accordingly, that it would deny the Defendants' motion for preliminary injunction. [Dkt. No. 184, A 2278- A 2283].

Thereafter, the appealed from orders denying defendants' renewed motion for preliminary injunction issued on March 29 and 30, 2005 [Dkt. No. 185; A0001], and defendants' supplemental motion for preliminary injunction [Dkt. No. 186; A0002]. This appeal then followed.

## VIII.    STATEMENT OF FACTS

### A.    Background

The DiTullio '151 patent [A0003-8] relates to plastic chambers, which are referred to in the patent as a "gallery" or "galleries", which are designed to be placed



within a bed of crushed stone, to act as a reservoir to retain stormwater runoff from roofs and paved surfaces, until the water can percolate into the ground, so as to avoid surface water problems such as ponding, and to avoid directing runoff water into

a sewer system. Defendant Cultec, Inc. manufactures and sells a number of different models of such chambers under the DiTullio '151 patent. [A1678, A1670-1689; A1421-1512; A1800-1801]. An installed system using such chambers is illustrated above; and a single example of a chamber, a Cultec Recharger 330, is illustrated below.



Plaintiffs Infiltrator Systems, Inc. and Stormtech, Incorporated marketed a stormwater product called the Maximizer starting in 1996, but it suffered numerous failures in 1997 and was pulled from the market. As a result, Infiltrator Systems, Inc. was forced to declare bankruptcy to handle the claims arising from these failures. Plaintiffs decided to try again, and this time they began with studies of the DiTullio '151 patent [A1241-1743]. They approached Defendant Robert J. DiTullio, seeking a license under the DiTullio '151 patent, but despite a series of negotiations, they were unable to agree on a price for a license. [A1690-1696; A1743-1744]. In particular, Plaintiffs were unwilling to pay a 6% royalty [A1967-1968]. Plaintiffs

then approached Fabri-Form Co., a manufacturer of plastic products which was making chambers for Defendants Cultec, Inc. at the time, and had Fabri-Form Co. make chambers for Plaintiffs. The product made by Fabri-Form was marketed under two different names, the "3050" and "Stormtech 770" chambers" (referred to in the case below as the "old 3050" chambers. The "old 3050" chambers were very similar in appearance to the Cultec chambers and caused confusion in the marketplace [A1699-1670]. Defendants heard about Plaintiffs' product and notified contractors to be aware of the copycat product and that the Cultec products were patented. [A1936; A582-583] Plaintiffs filed their declaratory judgment action, alleging a justiciable patent dispute based on defendants' notice letter to the contractors. In response, Defendants filed a counterclaim for infringement of the DiTullio '151 patent and sought a preliminary injunction against making, using and selling the "old 3050" chambers.

Plaintiffs subsequently introduced a new product called the "new 3050", also called the Stormtech SC-740, which is not in issue in this case [A1673].

## B.    The DiTullio '151 patent

The DiTullio '151 patent discloses several different embodiments of a stormwater chamber. The particular embodiment in issue in this case is the embodiment disclosed in Figures 12-14 [A0008-9] in which the plastic chambers

have one open end and one closed end, and a plurality of corrugated ribs. The closed end of the chamber has an end wall that supports the arch shape of the corrugated chamber. The corrugated rib at the closed end of the chamber is sized to be smaller that the other ribs, so that the open end of a second chamber can be overlaid on the closed end of the first chamber, with the larger rib of the open end of the second chamber being seated onto the smaller rib at the closed end of the first chamber. [A0011, at Col. 3, lines 18-29; A0012, at Col. 5, lines 48-65]. In this way, a row of chambers may be quickly installed together and have the benefit of the closed end wall providing structural support for the series of chambers at each overlapping connection between chambers [A0291].

The file history [A660-A946] of the patent in suit begins with an original application which was filed in January 1989 [A664-A691]. In the filed application, claim 1 specified a "drain field gallery" with a "latching system for attaching said gallery to an adjoining gallery." Dependent claim 16 specified "means to prevent spreading of adjoining galleries once latched to one another." [A685]. The claims were rejected by the Examiner in an Office Action of June 6, 1989, but the Examiner indicated that claims 3-6, 17, 20-23, and 29 would be allowable if set forth in independent form. [A738-742]. Many of these allowable claims specified "protruberances" on a lower flange.

Following that rejection, Mr. DiTullio's attorneys conducted an interview with the Examiner [A744]. Mr. DiTullio's Response to Office Action [A763-779] was mailed August 10, 1989 and amended claims 3, 17 and 20 into independent form to make them allowable. In the Response, Mr. DiTullio argued against an obviousness rejection based on the overlapping rib and argued that "in this manner of latching, the end wall 30A provides essential support for galleries which is stronger than Nichols when loads are applied under normal installation." [A776].

In the next Office Action, issued October 27, 1989 [A784-788], the Examiner indicated that claims 12, 16, 36 and 37 were objected to, but would be allowable if rewritten in independent form. [A784; A787]. The Examiner had clearly reconsidered the objection and was prepared to allow claims that specified "means to prevent spreading" of adjoining galleries once latched to each other. (*See* claims 16 [A685] and 36 [A772]).

During subsequent patent prosecution, Mr. DiTullio's patent attorneys tried proposing functional language to be added to base claim 1 such as "the end wall inhibiting lateral spreading of said gallery and restraining the arch-shape configuration against deformation" [A792], but the Examiner rejected these efforts to obtain allowance, on the grounds that the claim language was a functional statement that did not add patentable structure to the claim. [A862]. As testified to by Michael Thesz, Plaintiffs' patent law expert, the prosecution history shows a

- 8 -

situation where the Examiner was looking for a patentable structural distinction and would not accept functional language in lieu of an amended claim which specifies structure. (Nov. 26, 2002 Hearing Tr. at p. 207-211).

Mr. DiTullio's patent attorney discussed proposed claim 38 in a Response to Office Action as follows:

> As now rewritten, the structures of FIGURES 12-14 are defined in claim 38 in terms of protruding rib 18A′ extending outward around the periphery of the one end wall 30A, and the enlarged internal terminal latching groove extending outward around the periphery of the open end of the adjoining gallery, to provide the positive latching engagement of adjoining galleries, with the one wall inhibiting lateral spreading movement and restraining deformation of both connected galleries. [A873].

However, this claim did not have structural language specifying "means for preventing spreading" and was again rejected. In contrast, proposed claim 41 (which issued as claim 11 of the patent) did include such language [A869-870] and was immediately allowed [A876,879].

Eventually, Mr. DiTullio's patent attorney incorporated the "means for preventing spreading" clause into the remaining patent claims, specifically in proposed claim 46, which claimed: "whereby said latching system includes **said one end wall as means to prevent spreading** of adjoining galleries once latched to one another." [A895-896 (emphasis added)].

Mr. DiTullio's attorney explicitly stated to the Patent Office what this means plus function clause meant. He stated that "original claim 16, **specifically**

- 9 -

**defining the overlapping latched corrugated ribs shown in FIGURES 12 and 13 cooperating with the single end wall to stabilize the latched galleries and inhibit lateral spreading,** was provisionally approved in the previous action of July 26, 1990, and it is now also presented here, rewritten specifically as independent claim 46." [A897 (emphasis added) ].

Claim 46 was allowed [A901-902] and eventually renumbered as claim 16 in the issued patent. [A895].

### C.    Defendants' Infringing Chambers



The "old 3050" chambers, also called the Stormtech 770 chambers, are open-bottomed, arch-shaped, corrugated rib stormwater storage chambers. The chambers have one open end, and an integral end wall on one closed end as seen in the photograph to the left.

[A1608]. The end wall has a "mouse hole" provided at its lower end. The end wall also has a concentric group of scalloped areas intended to be cut away to provide a hole of a selected size, and contractors are directed to cut away the scalloped areas to make a hole. A separate end plate is sold with and is intended to fit into the open end of the chamber if the chamber is at the end of the row.

Otherwise, the open end of the chamber is intended to be fitted over the closed end of the preceding chamber.  When adjoining chambers are connected together in this way, the inner surface of a larger sized rib on the open end of the chamber fits over and latches onto the outer surface of a smaller rib at the closed end of the adjoining chamber.  The witnesses for both Plaintiffs and Defendants testified that the end wall of the "old 3050" chamber was a structural member, and the testimony of Mr. DiTullio was that the end wall prevented spreading of the chambers. [A1700-1710; A1732-1733; A1745; A1963-1967; A1985-1986; A2015-2024; A1606-1611; A1612-1616; A1618-1619 and A0411-420].  The specific instructions provided by Plaintiffs for their product read as follows:

## Requirements for Attaching the Endplates

**1** With a hole saw or utility knife, cut an opening for the inlet pipe at an invert of 24". Hole size will depend on the size of pipe used.

**2** Lift the open end of the chamber approximately 6' and with its flange pointing downstream, place the endplate into the chamber's nearest corrugation.

**3** End Plates are required only at the beginning of each row of chambers.

## Requirements for Installing the Chambers

**1** Check the header pipe to be sure that it is level.

**2** Set the inlet pipe invert at 24' from the bottom of the trench to the bottom of the inlet of the 3050 chambers.

**3** Place the first chamber with the end plate side at the beginning of the trench.

**4** Insert the inlet pipe into the cut pipe opening at the end plate. The pipe will only go in 2' before it reaches a pipe stop at the first corrugation of the chamber.

**5** Check the first installed chamber to be sure that it is level.

**6** Secure the inlet pipe to the chamber with a screw at the 12 o'clock position.

**7** Connect the second chamber to the first by placing its open end over the closed end corrugation of the first chamber.

**8** Continue installing the remaining chambers until the trench is complete.

**9** Proceed to the next trench and begin with step 1.

[A1610].   Plaintiffs are clearly directing contractors to cut pipe openings in the chamber end plates, and to install the chambers by overlapping the open ends of chambers over the closed ends of chambers.

## IX.   SUMMARY OF ARGUMENT

### A.   The District Court's Decision May Be Insufficient To Permit Appellate Review

The district court's cursory one-sentence denial of Defendants' preliminary injunction, issued two and a half years after a two-day evidentiary hearing, and after over 20 briefs had been filed in the case by the parties, may be insufficient to permit appellate review. This Court may, in its discretion, decide to vacate the rulings of the district court and remand the matter for more detailed findings.

### B.   The District Court Erred In Its Claim Construction

The district court erred in its claim construction by interpreting the "means" clause of claims 11 and 16 of the DiTullio '151 patent, which call for "means to prevent lateral spreading" and "means to prevent spreading," to require the presence of all of the different embodiments of such "means" which are disclosed in the application, and not just the end wall and overlapping rib or alternatively, the end wall/overlapping rib in combination with other means.  In other words, the court erred by requiring the claim language "means to prevent lateral spreading"

and "means to prevent spreading" to require lugs, *and* notches (or apertures), *and* stepped support members, *and* vertical support walls, *and* end walls. Interpreting the claim language to require all of the structures disclosed in the patent instead of requiring only the one structure explicitly pointed out in the prosecution history as the structure defined by the "means" clause was a claim construction error. The claim construction applied by the district court was not required by the specification, and is inconsistent with the prosecution history.

## C.    The District Court Erred in Finding Non-Infringement

The district court applied the erroneous claim construction to find that there was no infringement of the DiTullio '151 patent despite the presence of all of the elements of claims 11 and 16 of the patent, including the "means to prevent spreading" in the form of end walls in Plaintiffs' chambers, and evidence of both direct infringement and inducing infringement by Plaintiffs.

## X.    **ARGUMENT**

## A.    **Standard of Review**

The final grant or denial of a preliminary injunction is within the discretion of the district court, and will be reviewed on appeal only for an abuse of discretion, error of law, or misjudging the evidence. *Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d 1352, 1356 (Fed. Cir. 2002); *see Novo Nordisk of N.*

*Am., Inc. v. Genentech, Inc.*, 77 F.3d 1364, 1367 (Fed. Cir. 1996); *Oakley, Inc. v. Sunglass Hut, Int'l*, 316 F.3d 1331, 1338-39 (Fed. Cir. 2003). Patent claim construction is an issue of law subject to de novo review in a preliminary injunction. *Jack Guttman, Inc.*, 302 F.3d at 1356.

**B.    The District Court's Ruling May Require Amplification**

A moving party in a patent infringement suit must establish its right to a preliminary injunction in light of four factors: (1) whether the movant has demonstrated a reasonable likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not granted; (3) whether the balance of the hardships tips in favor of the movant; and (4) the impact of the injunction on the public interest. *See Novo Nordisk of N.Am., Inc. v. Genentech, Inc.*, 77 F.3d 1364, 1367 (Fed. Cir. 1996); *Intel Corp. v. VLSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993), *cert. denied,* 510 U.S. 1092 (1994). To demonstrate a reasonable likelihood of success in a patent-related suit, the movant must clearly show that it owns the patent at issue, the patent is valid and enforceable, and that the defendant has and is infringing the patent. *See Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1364 (Fed. Cir.), *cert. denied,* 522 U.S. 963 (1997).

In the present action, the only issue ruled on by the court in denying Defendants' motions for preliminary injunction was the ultimate issue that there

was no infringement of the DiTullio '151 patent. [A0001-2]. It is well-established that "the determination of infringement is a two-step process. First, the language of the claim must be interpreted. Second, the accused device must be compared to the claim language as interpreted." *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 821 (Fed. Cir. 1992). In order to properly review a district court's decision regarding patent infringement, the reviewing court must be furnished with sufficient findings and reasoning that the lower court applied to both issues of law, such as claim construction, and issues of fact, such as infringement. *Gechter v. Davidson*, 116 F.3d 1454, 1458 (Fed. Cir. 1997).

In the present action, the district court apparently adopted the Plaintiffs' claim construction as presented in their briefs. The court offered no explanation for its adoption of Plaintiffs' claim construction over the Defendants' claim construction. This may be sufficient to allow review of the current appeal, however, if not, then the case should be remanded for purposes of providing a reviewable order. *See Nazomi Communications, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1371 (Fed. Cir. 2005). In *Nazomi Communications*, the district court's claim construction was explained in one short paragraph. This Court concluded that the "analysis was inadequate because it d[id] not supply the basis for its reasoning sufficient for a meaningful review." *Id*. The action was remanded for further claim construction.

- 15 -

The failure to provide sufficient record of proceedings has sometimes been held to be an error of law. *See Graco, Inc. v. Binks Manufacturing Company,* 60 F.3d 785, 791 (Fed. Cir. 1995); *Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.,* 340 F.3d 1298, 1311 (Fed. Cir. 2003) (agreeing that by not interpreting the only disputed term in a claim, the district court erred as a matter of law). In *Graco,* an appeal of a judgment after a bench trial, the case was remanded because the record of proceedings at the district court level was completely devoid of any discussion of claim construction. This court stated that "in order to review the court's findings that [Defendant's products] infringed, we need to know what meaning and scope the district court gave the asserted claims," *Graco,* 60 F.3d at 791. Similarly, in *Anchor Wall Systems,* on appeal from grant of summary judgment, this Court agreed with the appellee that since the district court failed to present any analysis of construction of the only disputed term, the district court erred as a matter of law, and remanded the action. See *Anchor Wall Sytems,* 340 F.3d at 1311.

Thus, this Court may choose to vacate the appealed rulings and remand the matter to the district court for more detailed findings.