IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| INFILTRATOR SYSTEMS, INC. and STORMTECH, INCORPORATED<br><br>Plaintiffs,<br><br>vs.<br><br>CULTEC, INC. and ROBERT J. DITULLIO<br><br>Defendants | Civil Action No. 301CV2188AWT |
| CULTEC, INC. and ROBERT J. DITULLIO<br>    Counterclaimants and<br>    Third Party Plaintiffs<br><br>v.<br><br>INFILTRATOR SYSTEMS, INC.<br>STORMTECH INCORPORATED<br>    Counterclaim Defendants and<br><br>JAMES M. NICHOLS<br>FABRI-FORM CO., INC.<br>    Third Party Defendants | |

**PLAINTIFFS AND COUNTERCLAIM DEFENDANTS INFILTRATOR SYSTEMS, INC. AND STORMTECH INCORPORATED'S AND THIRD PARTY DEFENDANT JAMES M. NICHOLS' REPLY IN SUPPORT OF MOTION FOR <u>SUMMARY JUDGMENT OF NON-INFRINGEMENT</u>**

1       **ORAL ARGUMENT REQUESTED**

Plaintiffs and Counterclaim Defendants Infiltrator Systems, Inc. and Stormtech Incorporated and Third Party Defendant James M. Nichols ("Infiltrator", "Stormtech" and "Nichols", respectively) hereby reply to Defendants' Opposition to Plaintiffs' Motion for Summary Judgment ("Defendants' Opposition").

Defendants Opposition is a scattershot attempt to avoid entry of summary judgment by presenting a claims construction that ignores the basic tenets of claim construction, disregards or misconstrues statements that the inventor made to the PTO during prosecution of the patent-in-suit, United States Patent No. 5,087,151 (the " '151 Patent"), and misstates Infiltrator's, Stormtech's and Nichols' arguments supporting their summary judgment motion. This Court should reject Defendants' flawed interpretations by entering summary judgment in favor of Infiltrator, Stormtech and Nichols.

## I.     ARGUMENT

### A.     CLAIM 16

Defendants suggestion that Claim 16 is not a means-plus-function claim,[1] which is contrary to the position that they have taken in every pleading filed with this Court and with the position that they took in their Opening Brief to the Federal Circuit[2], is predicated upon the incorrect belief that the inclusion of the term "end wall" in the language of the claim somehow takes the claim outside the scope of 35 U.S.C. § 112, ¶ 6. This is simply not the case.

---

[1]     Defendants' suggestion that the Federal Circuit "had definite ideas about the proper construction of the claims of the DiTullio '151 Patent…," Defendants' Opposition, p. 14 – 15, is incorrect. The oral argument before the Federal Circuit focused on the mootness of Defendants' appeal and procedural issues relating to the appeal. The Court did not construe either of the claims.

[2]     Defendants' admitted to the Federal Circuit that they intended that the rewriting of original Claim 16 in independent form would present the claim as an independent claim in means-plus-function format, and that the Examiner required them to do so. See the Opening Brief of Defendants-Appellees, pp. 24 – 25, annexed to the contemporaneously filed Declaration of Daniel E. Bruso (the "Bruso Decl.") as "Exhibit A." The instant Opposition, which directly contradicts the position Defendants took before the Federal Circuit, is the first time that Defendants have stated that Claim 16 is anything other than a means-plus-function claim.

i.  **Claim 16 Is A Means-Plus-Function Claim Because The "End Wall" Does Not Convey The Entirety Of The Structure Needed To Perform The Claimed Function Of Preventing Spreading.**

Defendants' suggestion that Claim 16 is not in the means-plus-function format provided for by 35 U.S.C. § 112, ¶ 6 because the term "end wall" is a structural element, *see* Defendants' Opposition, pp. 17 – 19, fails because the term "end wall" does not convey the entirety of the structure needed to prevent spreading. *See Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1375 (Fed. Cir. 2003). In *Altiris*, the Federal Circuit held that, in order for a claim to fall outside the scope of 35 U.S.C. § 112, ¶ 6, the recited structure must be sufficient to perform entirely the claimed function. *Altiris*, 318 F.3d at 1376; *see also Sage Products, Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1427 – 28 (Fed. Cir. 1997). To determine whether the recited structure is sufficient to entirely perform the function, the specification must be consulted. *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 296 F.3d 1106, 1113 (Fed. Cir. 2002) (means-plus-function claims are construed by identifying the claimed function, then determining what structure, if any, in the specification performs the claimed function). "In order to qualify as corresponding, the structure must not only perform the claimed function, but the specification must clearly associate the structure with the performance of the function." *Id.*

In *Altiris,* the claim language provided for

> a means of booting said digital computer, said means of booting including a first set of commands, said first set of commands resident on said storage device of said digital computer for booting said digital computer, and a second set of commands resident on a storage device external to said digital computer for booting said digital computer.

*Id.* at 1375.

On appeal, the Federal Circuit recognized that the term "command," a term used in the asserted claim, constituted structure in the context of a software patent. *Id.* at 1376. However,

3    **ORAL ARGUMENT REQUESTED**

the structure was "not sufficient to perform the entirety of the function." *Id.* The Court contrasted the asserted claim, which did not further define the term "command", with cases in which the structure "the claim language specifies a specific physical structure that performs the function." *Id.* (*citing Envirco Corp. v. Clestra Cleanroom, Inc.*, 209 F.3d 1360, 1365, 54 USPQ2d 1449, 1452-53 (Fed.Cir.2000) (holding sufficient structure was recited where the limitation was "second baffle means" because it used the word "baffle" (a physical structure) and the claim "described the particular structure of this particular baffle"); *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1303-04, 50 USPQ2d 1429, 1435-36 (Fed.Cir.1999) (holding a claim recited sufficient structure where the limitation was "positioning means" and the claim "provid[ed] a list of the structure underlying the means"); *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 531-32, 41 USPQ2d 1001, 1006-07 (Fed.Cir.1996) (holding that the limitation "perforation means for tearing" was not a means-plus-function claim because the word "perforation" constituted sufficient structure)).

Nothing in the '151 Patent associates the end wall with the function of preventing spreading once the galleries are latched together.[3] Instead, once an end wall is cut away and the galleries are latched together using the ribs, the end wall provides support. '151 Patent, Col. 5, lines 60 – 65. There is no indication providing support is the same as preventing spreading.[4, 5]

---

[3]  As repeatedly noted by the Examiner throughout the prosecution of the '151 Patent, to the extent that this Court finds that the end wall prevents spreading by itself, the '151 Patent is invalid under 35 U.S.C. § 103 in view of Bailey and Gorman.

[4]  According to DiTullio, the term spreading refers to the outward movement of the ribs of an overlying chamber relative to the ribs of an underlying chamber when the chambers are joined, thereby creating a gap, or "void", in the connection between the chambers. *See* the Transcript of the April 18, 2002, Deposition of Robert J. DiTullio (the "DiTullio Transcript), p. 67, line 8 – p. 68, line 15, annexed to the Bruso Decl. as "Exhibit B."

[5]  This Court may recall that, when Bryan Coppes, Stormtech's Vice President of Engineering, was asked whether there was anything "in an integral end wall that prevents an overlapping rib from spreading out above the underlying chamber without having any types of lugs or engagement system", he responded "No. There's nothing

Rather, the specification provides that "[t]he stepped support members 70 will be supported on the associated stepped vertical walls 20 on gallery 10A while the notches 72 in the base portions 26 interfit with the lugs 74A on the base portion 26A of gallery 10A thereby preventing the spread of the overlapping rib 18. The lugs 74A are identical to the lugs 74 on gallery 10 as shown in FIGS. 1 and 8." *Id.* at Col. 5, line 66 – Col. 6, line 4. Under *Cardiac Pacemaker*, the failure to clearly associate the end wall with the function of preventing spreading means that the claim cannot be construed as Defendants suggest.

Based on the foregoing, Defendant's suggestion that the term "end wall" conveys sufficient structure to avoid a "means-plus function" interpretation argument fails under *Altiris* and *Cardiac Pacemakers*. *See* Defendants' Opposition, pp. 17 – 19. The specification is clear that it is the lugs, notches, stepped support members and vertical support walls that perform the function of preventing spreading. Therefore, the end wall plainly does not perform "entirely" the recited function. *Altiris, Inc.* 318 F.3d at 1375 (Fed. Cir. 2003) (structure in claim must perform the entirety of the claimed function in order to avoid a means-plus-function interpretation). Under *Altiris*, Claim 16 remains a means-plus-function claim wherein the means is the structure described in the specification as performing the claimed function of preventing spreading.

DiTullio's own testimony supports the language of the specification. In particular, when DiTullio was asked if the ribs of a chamber without an end wall would spread when placed near the end of a chamber having an end wall, he testified that the overlying chamber would have a

---

that would prevent it." *See* the Transcript of the November 26, 2002, Hearing, p. 303, annexed to the Bruso Decl., as "Exhibit C".

tendency to spread "because the end wall on the first chamber wouldn't prevent the spreading of the second chamber." DiTullio Transcript, p. 92, lines 8 – 10. He further testified that the lug prevented spreading. DiTullio Transcript, p. 67, line 8 – p. 68, line 15.

Based on the foregoing, there is no basis for Defendants' suggestion that the "end wall" of the claim discloses sufficient structure to perform the entirety of the function of preventing spreading of adjoining galleries or, for that matter, that the end wall prevents "spreading" of adjoining galleries at all. Instead, the plain language of the specification leads to the conclusion that, under *Altiris*, Claim 16 is a mean-plus-function claim that requires the lugs, notches or apertures, vertical support walls and stepped support members. Since the accused devices lack these elements, they cannot infringe Claim 16. *See J&M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360, 1367 (Fed. Cir. 2001) (the scope of a means-plus-function claim is *sharply* limited to the structure disclosed in the specification and its equivalents, and must be interpreted in light of the disclosure of the invention in the specification, as a whole, as well as the prosecution history).

    ii.    **Defendants Are Estopped From Denying That Claim 16 Is A Means-Plus-Function Claim.**

Even if it were possible to construe Claim 16 as not requiring the lugs, notches or apertures, vertical support walls and stepped support members, and it is not, Defendants are estopped from arguing that Claim 16 does not require these limitations.

This Court may recall that, as originally drafted, Claim 16 was a dependent mean-plus-function claim directed to a "means to prevent spreading of adjoining galleries once latched to one another", that Claim 16 was objected to as being dependent upon rejected base claims and that, after extensive attempts to avoid obviousness rejections based upon the end wall as the only means to prevent spreading, DiTullio rewrote Claim 16 in independent form incorporating all the

limitations of the base and intervening claims. *See* the Declaration of Stephen P. McNamara In Support of Defendants' Opposition to Motion for Summary Judgment (the "McNamara Decl."), Exhibit A10, p. A897 (representing to the Examiner that the claim that original Claim 16 was presented as independent Claim 46, which issued as Claim 16). Robert Ware, the patent attorney who prosecuted the '151 Patent, testified that the phrase "means to prevent spreading of adjoining galleries once latched to one another" of original Claim 16 was in means-plus-function format, that the means was the lugs, notches or apertures, vertical support walls and stepped support members described in the specification, and that it was intended that these limitations be incorporated into rewritten independent Claim 46, which issued as Claim 16. *See* the Transcript of the September 12, 2002, Deposition of Robert Ware[6] (the "Ware Transcript"), annexed to the Bruso Decl. as "Exhibit D", p. 129, line 14 – p. 130, line 13 (original Claim 16 was a means-plus-function claim directed to the function of preventing spreading); p. 119, line 15 – p. 122, line 2 (structure associated with original Claim 16 as preventing spreading is the lugs, stepped support members, vertical support walls, notches and end wall); p. 202, line 23 – p. 204, line 2 (DiTullio intended to incorporate the limitations of original means-plus-function Claim 16 when he represented to the Examiner that he was presenting new Claim 46, which issued as Claim 16).

In *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d. 1146, 1155 (Fed. Cir. 1997), the Federal Circuit "[p]rosecution history 'limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution." Moreover, the Court recognized that "through statements made during prosecution or reexamination an applicant for a patent or a

---

[6] Defendants characterize Attorney Ware as "a long-time and very experienced Connecticut patent attorney. Defendants' Opposition, p. 22. Infiltrator, Stormtech and Nichols agree that Attorney Ware is an extremely experienced practitioner who, as set forth above, agreed that DiTullio intended to incorporate the means-plus-function limitations of original Claim 16 into issued Claim 16.

7     **ORAL ARGUMENT REQUESTED**

patent owner, as the case may be, may commit to a particular meaning for a patent term, which meaning is then binding in litigation." *Id.* at 1158.

That is precisely what happened here. DiTullio told the Examiner that he was presenting original means-plus-function Claim 16 in independent format in order to take advantage of the Examiner's statement that the claim would be allowable if it was rewritten in independent form. *See* the Ware Transcript, p. 202, line 23 – p. 204, line 2 (DiTullio intended to incorporate the limitations of original means-plus-function Claim 16 when he represented to the Examiner that he was presenting new Claim 46, which issued as Claim 16); p. 209, line 9 – p. 210, line 11, line 16 (Based upon DiTullio's representations regarding Claim 46, the Examiner should have understood that DiTullio was incorporating the means-plus-function limitations of original Claim 16 into the claim). In other words, DiTullio represented to the Examiner that he was rewriting a dependent claim that provided for nothing more than "a means to prevent spreading of adjoining galleries once latched to one another" as an independent claim.[7] Attorney Ware agreed that this was the case when he testified that the newly added claim was intended to incorporate the limitations of lugs, notches, stepped support members and vertical support walls. *Id.* Under *CVI/Beta Ventures, Inc.*, Attorney Ware's statements to the PTO are binding upon Defendants, and estop them from arguing from arguing that Claim 16 is anything other than a means-plus-function claim that requires lugs, notches, stepped support members and vertical support walls.

Defendants' suggestion that DiTullio's statements in the July 1, 1991, Amendment Under Rule 1.116 somehow contained an explicit statement that eliminates the need for the lugs, notches, stepped support members and vertical support walls falls flat. DiTullio's comment that

---

[7] To the extent that this Court accepts Defendants' suggestion that DiTullio departed from his stated intention of rewriting original Claim 16 in independent form, Infiltrator, Stormtech and Nichols reserve their right to amend their answer to assert that the '151 Patent is invalid due to DiTullio's inequitable conduct before the PTO.

original Claim 16 defines the "overlapping latched corrugated ribs shown in FIGURES 12 and 13 cooperating with the single end wall to stabilize the latched galleries and inhibit lateral spreading…" in no way disclaims the lugs, notches, stepped support members and vertical support walls of the means-plus-function claim that DiTullio claimed to be rewriting in independent form. Moreover, Attorney Ware testified that it was not his intention to do so. *Id.* Finally, the Examiner continued to reject claims directed to the end wall as the only means to prevent spreading until DiTullio cancelled these claims. McNamara Decl., Exhibit A10, p. A877 – 78 (rejecting claims, including claim 38, directed to the end wall as inhibiting spreading because "Bailey and Gorman would inherently perform this function"). Accordingly, this Court should reject Defendants' flawed construction when it allows the pending Motion for Summary Judgment.

### iii. Defendants' Proposed Construction Improperly Renders Portions Of Claim 16 Superfluous.

If Defendants' claim construction is to be believed, then the entire portion of the claim that was added by the Amendment Under Rule 1.116, McNamara Decl., Exhibit A10, pp. A884 – A898, is rendered meaningless and superfluous. Adopting such a claim construction would violate the long established rule that "a claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so." *Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) (*citing Electa Instrument S.A., O.U.R. Sci. Int'l, Inc.*, 214 F.3d 1302, 1307 (Fed. Cir. 2000); *Gen. Am. Transp. Corp. v. Cryo-Trans, Inc.*, 93 F.3d 766, 770 (Fed. Cir. 1996). In *Merck*, the Federal Circuit rejected a claim construction that would have rendered the term "about," in the phrases "about 70 mg" and "about 35 mg," superfluous by requiring exactly 70mg or 35mg of a pharmaceutical compound. *Id.* at 1372. The court noted

that its construction was preferable because it did not render other terms in the claim superfluous. *Id.*

Claim 16 contains two references the "end wall." The first reference occurs in paragraph C of the claim and states **"said at least one end wall inhibiting lateral spreading of said gallery and of said adjoining gallery and restraining said arch-shaped configuration against deformation."** (the "First Reference") McNamara Decl., Exhibit A1, Col. 12, lines 13 – 43. The second reference is the means-plus-function reference in the last clause, which provides that "said latching system includes said one **end wall as** means to prevent spreading of adjoining galleries once latched to one another." (the "Second Reference"). *Id.*

If, as Defendants suggest, the Second Reference requires nothing more than the end wall in order to prevent spreading of adjoining galleries, then the First Reference, which explicitly states that the end wall inhibits lateral spreading of adjoining galleries, is superfluous.[8] Infiltrator's, Stormtech's and Nichols' claim construction, on the other hand, gives meaning to every word in the claim by interpreting it in the same manner that DiTullio used to get the claim allowed, as a means-plus-function claim requiring lugs, notches, stepped support members and vertical support walls. This Court should do the same.

**B.    CLAIM 11**

    **i.    The Lugs, Notches, Stepped Support Members And Vertical Support Walls Are Not "Optional" Limitations Of Claim 11.**

Defendants' suggestion that the lugs, notches, stepped support members and vertical support walls are somehow completely ignores the fundamental tenets of claim construction. By definition, a means-plus-function claim is construed by examining the specification to identify

---

[8]    Of course, this Court should also note that the Examiner rejected the language of the First Reference several times because the end wall resulting from the combination of Bailey and Gorman would inherently perform the function of preventing spreading.

the structure associated with the claimed function. *Epcon Gas Systems, Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1032(Fed. Cir. 2002) ("Construction of a means plus function limitation requires identification of the function recited in the claim and a determination of what structures have been disclosed in the specification that correspond to the means for performing that function.") "Structure disclosed in the specification is 'corresponding structures' only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Id.* (*quoting B. Braun Medical, Inc. v. Abbott Laboratories*, 124 F.2d 1419, 1424 (Fed. Cir. 1997)).

Defendants admit that Claim 11 is a means-plus-function claim, thereby admitting that Claim 11 does not claim sufficient structure to perform the entirety of the claimed function "prevent[ing] lateral spreading of said first terminal gallery and said second adjoining gallery once said galleries are latched to one another." *See Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1375 (Fed. Cir. 2003). Yet, in the same section where they admit that Claim 11 is a means-plus-function claim, they advance the creative, but unsupportable, proposition that it is not necessary to look to the specification to find the associated structures. Defendants' Opposition, p. 23. In addition, while Defendants set forth the method of construing means-plus-function claims, including the requirement that the specification must be examined in order to identify the structure associated with the claimed function, they fail to follow the law and examine the specification for the associated structure. Under *Epcon Gas Systems, Inc.*, this is simply wrong.

As discussed in Section I(A), (i) *supra*, nothing in the '151 Patent's specification provides that the end wall is the structure that prevents spreading once the galleries are latched

**ORAL ARGUMENT REQUESTED**

together.[9] Instead, the specification provides that the end wall provides support to the two galleries, while the lugs, notches, stepped support members and vertical support walls prevent lateral spreading. *Id.* Consequently, the scope of means-plus-function Claim 11 must be construed to include each of the recited elements. *See J&M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360, 1367 (Fed. Cir. 2001) (the scope of a means-plus-function claim is *sharply* limited to the structure disclosed in the specification and its equivalents, and must be interpreted in light of the disclosure of the invention in the specification, as a whole, as well as the prosecution history). Since the accused devices do not include lugs, notches, stepped support members and vertical support walls, there can be no infringement.

## II. CONCLUSION

Defendants' Opposition ignores the rules of claim construction, the plain language of the '151 Patent, its prosecution history and the testimony of the attorney who prosecuted the patent. This Court should not. Instead, this Court should find that no genuine issue of material fact exists with respect to the issues presented in Infiltrator's, Stormtech's and Nichols' Motion for Summary Judgment and that they are entitled to judgment as a matter of law by allowing the instant Motion.

---

[9] As repeatedly noted by the Examiner throughout the prosecution of the '151 Patent, to the extent that this Court finds that the end wall prevents spreading by itself, the '151 Patent is invalid under 35 U.S.C. § 103 in view of Bailey and Gorman.

|  |  |
|---|---|
|  | RESPECTFULLY SUBMITTED, STORMTECH INCORPORATED, INFILTRATOR SYSTEMS, INC. and JAMES M. NICHOLS |
| Dated: 6/1, 2006 | By: /s/ Daniel E. Bruso, Esq. (ct18666) Michael A. Cantor, Esq. (ct05524) Michael J. Rye, Esq. (ct18354) CANTOR COLBURN, LLP 55 Griffin Road South Bloomfield, CT 06002 (860) 286-2929 (Telephone) (860) 286-0115 (Telecopier) |

## CERTIFICATE OF SERVICE

     I, Daniel E. Bruso, Esquire, attorney for Plaintiffs/Counterclaim Defendants in the above-captioned matter, hereby certify that, on the 1st day of June 2006, I served a true and accurate copy of PLAINTIFFS AND COUNTERCLAIM DEFENDANTS INFILTRATOR SYSTEMS, INC. AND STORMTECH INCORPORATED'S AND THIRD PARTY DEFENDANT JAMES M. NICHOLS' REPLY IN SUPPORT OF SUMMARY JUDGMENT OF NON-INFRINGEMENT, via first class mail, postage prepaid, upon:

Stephen P. Mcnamara, Esq.
Steven B. Simonis, Esq.
James P. Jeffry, Esq.
St. Onge, Steward, Johnston & Reens LLC
986 Bedford Street
Stamford, Connecticut 06905-5619

_____
Daniel E. Bruso