```
1       UNITED STATES DISTRICT COURT FOR
        THE DISTRICT OF CONNECTICUT
2
             Civil Action No. 301CV2188AWT
3
   ----------------------------------)
4  INFILTRATOR SYSTEMS, INC. and     )
   STORMTECH, INCORPORATED           )
5           Plaintiffs               )
                                     )
6  v.                                )
                                     )
7  CULTEC, INC. and                  )
   ROBERT J. DITULLIO                )
8           Defendants               )
   ----------------------------------)
9                                    )
   CULTEC, INC. and                  )
10 ROBERT J. DITULLIO                )
        Counterclaimants and         )
11      Third Party Plaintiffs       )
                                     )
12 v.                                )
                                     )
13 INFILTRATOR SYSTEMS, INC.         )
   STORMTECH, INCORPORATED           )
14      Counterclaim Defendants      )
   and                               )
15 JAMES M. NICHOLS                  )
   FABRI-FORM CO., INC.              )
16      Third Party Defendants       )
   ----------------------------------)
17

18      DEPOSITION OF: Robert J. DiTullio, taken
   before Sharon R. Roy, Notary Public Stenographer,
19 pursuant to Rules 30, 26, and 30(b)(6) of the
   Federal Rules of Civil Procedure, at the law
20 offices of CANTOR COLBURN, LLP, 101 Merritt 7,
   Norwalk, Connecticut, on April 18, 2002.
21

22
             Sharon R. Roy
23      Certified Shorthand Reporter
        Registered Professional Reporter
```

**DiTullio, Robert - 4/18/02**                                    **Page 2**

2

1  APPEARANCES:

2

3  FOR THE PLAINTIFFS/DEFENDANTS IN
   COUNTERCLAIM/THIRD PARTY DEFENDANT:
4  STORMTECH INCORPORATED
   INFILTRATOR SYSTEMS, INC.
5  JAMES M. NICHOLS

6  CANTOR COLBURN, LLP
   101 Merritt 7
7  Norwalk, Connecticut 06856
   1-860-286-2929
8     BY:  MICHAEL J. RYE, ESQ.

9

10 FOR THE DEFENDANTS/PLAINTIFFS
   IN COUNTERCLAIM:
11 CULTEC, INC. and ROBERT J. DITULLIO

12 ST. ONGE, STEWARD, JOHNSTON & REENS, LLC
   986 Bedford Street
13 Stamford, CT 06905-5619
   203-324-6155
14    BY:  STEPHEN P. McNAMARA, ESQ.

15

16 FOR THE THIRD PARTY DEFENDANT
   IN COUNTERCLAIM:
17 FABRI-FORM CO., INC.

18 HALLORAN & SAGE, LLP
   One Goodwin Square
19 Hartford, CT 06103-4303
   1-860-522-6103
20    BY:  JOSEPH G. FORTNER, JR., ESQ.

21
   In Attendance:
22 Robert LeMire
   Chris DiTullio
23

3

1           I N D E X

2 ------------------------------------------------
    WITNESS        EXAMINATION        PAGE
3 ------------------------------------------------

4 Robert DiTullio   Direct by Mr. Rye .......... 4

5

6
  EXHIBITS:                        PAGE:
7
  Exhibit 1: Notice of Taking Deposition
8           of Robert DiTullio ................ 11

9 Exhibit 2: Notice of Taking Deposition of
           Cultec, Inc. Pursuant to Fed. R.
10          Civ. P. 30(b)(6) .................. 11

11 Exhibit 3: Diagram ........................... 54

12 Exhibit 4: Counterclaims and Third Party
           Complaint ......................... 100
13
   Exhibit 5: Letter dated November 16, 2001 to
14           Falite Bros. from Robert DiTullio. 138

15 Exhibit 6: '838 Patent ...................... 163

16 Exhibit 7: '482 Patent ...................... 167

17 Exhibit 8: '288 Patent ...................... 170

18 Exhibit 9: '756 Patent ...................... 172

19 Exhibit 10: '151 Patent ..................... 175

20 Exhibit 11: Pages from website .............. 222
   -----------
21 Confidential testimony:
   Starting pages:
22  74
    117
23  164
    199

66

1   Q. Okay. Were there end walls associated
2   with the Tripdrain product?
3   A. Yes.
4   Q. On each chamber?
5   A. Yes.
6   Q. So each chamber would have a single end
7   wall when they were all connected or two end
8   walls?
9   A. Well, we primarily made them in two
10  versions. The starter section would have two end
11  walls with openings to allow effluent to pass
12  through, and on one end that you indicated we
13  would have a small rib. The other version was a
14  wide open structure that had the large rib end,
15  and that was dropped over to make the connection.
16  Q. And then the other end of that chamber
17  would have an end wall?
18  A. That's correct.
19  Q. Just like the chambers that are made now?
20  A. That's correct.
21  Q. When they were manufactured, did they
22  have end walls on both ends so that you had the
23  contractor cut off an end wall?

67

1   A.  That was done in the manufacture. The

2   end walls were actually delivered to the

3   distributor for sale so that the contractor didn't

4   have to do that.

5   Q.  So there was only one end wall on each

6   chamber other than the first and last chamber?

7   A.  Correct.

8   Q.  Okay. Did the Tripdrain product utilize

9   any type of a lug for securing one chamber to the

10  adjoining chamber?

11  A.  Yes.

12  Q.  And how was that accomplished?

13  A.  Where the ribs came down to the base and

14  the large rib dropped over the smaller rib, there

15  was a return raised portion at the base of the

16  smaller rib structure that the larger rib dropped

17  behind, and that prevented spreading apart of the

18  ribs; it actually held the ribs inward.

19  Q.  It prevented the overlying chamber from

20  spreading on top of the underlying chamber?

21  A.  Correct.

22  Q.  Do your current products incorporate that

23  lug design?

91

1      MR. McNAMARA: I'll note for the
2  record this is a lawsuit you started.
3      MR. RYE: Certainly.
4  Q. (By Mr. Rye) Can you describe for me
5  under what circumstances you would expect an
6  installed chamber to suffer lateral spreading? I
7  should qualify and say a plastic chamber.
8  A. Yeah, I think it could occur if a load
9  was dumped on top of the arch, a heavy load was
10  dumped on top of the arch more on one chamber than
11  on the connection points of the chambers.
12  Q. And that would occur whether or not there
13  is an end wall in the area where the two chambers
14  are connected, correct?
15  A. Well, there's two parts, naturally, to
16  that answer; one would be that the chamber that
17  would have an end wall, if a load was dumped on
18  top of that chamber, the end wall would have a
19  tendency to hold that one chamber dimensionally
20  more in position. If it had no end wall, then it
21  would have a tendency to, in fact, deflect from
22  that original dimension.
23  Q. So, if you have a chamber that has

236

1      CERTIFICATE

2      I hereby certify that I am a Notary Public, in

3   and for the State of Connecticut, duly

4   commissioned and qualified to administer oaths.

5      I further certify that the deponent named in

6   the foregoing deposition was by me duly sworn, and

7   thereupon testified as appears in the foregoing

8   deposition; that said deposition was taken by me

9   stenographically in the presence of counsel and

10   reduced to typewritten form under my direction,

11   and the foregoing is a true and accurate

12   transcript of the testimony.

13      I further certify that I am neither of counsel

14   nor attorney to either of the parties to said

15   suit, nor am I an employee of either party to said

16   suit, nor of either counsel in said suit, nor am I

17   interested in the outcome of said cause.

18      Witness my hand and seal as Notary Public this

19   26th day of April, 2002.

20

21            _____
              Sharon R. Roy
              Notary Public
22

23