1

1    IN THE UNITED STATES DISTRICT COURT

2       FOR THE DISTRICT OF CONNECTICUT

3 ------------------------------x

4 INFILTRATOR SYSTEMS, INC.    :
  and
5 STORMTECH, INCORPORATED,     :
         Plaintiffs
6 vs.                          : CA 201CV2188AWT
  CULTEC, INC., and
7 ROBERT J. DITULLIO,          :
         Defendants
8 ------------------------------x
  CULTEC, INC. and
9 ROBERT J. DITULLIO,          :
      Counterclaimants and
10    Third Party Plaintiffs   :
  vs.
11 INFILTRATOR SYSTEMS, INC.   :
   STORMTECH, INCORPORATED
12     Counterclaim Defendants :
   and
13 JAMES M. NICHOLS            :
   FABRI-FORM CO., INC.,
14    Third Party Defendants   :
   ------------------------------x
15

16     Deposition of ROBERT H. WARE, ESQ., taken

17 pursuant to Notice, at the offices of Ware,

18 Fressola, Van Der Sluys & Adolphson, 755 Main

19 Street, Building 5, Monroe, Connecticut, before

20 Cathy J. Dabakis, LSR, a Notary Public in and for

21 the State of Connecticut, on September 12, 2002, at

22 12:32 p.m.

23

24    BRANDON SMITH REPORTING SERVICE
         (860) 549-1850
25       11-A Capitol Avenue

Ware, Robert - 9/12/02                              Page 1

1  A P P E A R A N C E S

2  ATTORNEYS FOR THE PLAINTIFFS/DEFENDANTS
   IN COUNTERCLAIM/THIRD PARTY DEFENDANT,
3  STORMTECH INCORPORATED, INFILTRATOR
   SYSTEMS, INC., AND JAMES M. NICHOLS:
4
      CANTOR COLBURN, LLP
5     55 Griffin Road South
      Bloomfield, Connecticut  06002
6
      BY:  DANIEL E. BRUSO, ESQ.
7

8
   ATTORNEYS FOR THE DEFENDANTS/
9  COUNTERCLAIMANTS AND THIRD PARTY
   PLAINTIFFS AND REPRESENTING THE WITNESS,
10 CULTEC, INC., ROBERT J. DITULLIO, AND
   ROBERT H. WARE, ESQ.:
11
      ST. ONGE, STEWARD, JOHNSTON & REENS, LLC
12    986 Bedford Street
      Stamford, Connecticut  06905-5619
13
      BY:  STEPHEN P. McNAMARA, ESQ.
14

15
   ATTORNEYS FOR THE THIRD PARTY DEFENDANT
16 FABRI-FORM, CO., INC.:

17    HALLORAN & SAGE, LLP
      One Goodwin Square
18    225 Asylum Street
      Hartford, Connecticut  06103
19
      BY:  CHRISTOPHER M. PARENT, ESQ.
20

21

22

23

24

25               **Ware, Robert - 9/12/02**                    **Page 2**

3

```
 1  STIPULATIONS
 2
 3      IT IS HEREBY STIPULATED AND AGREED
 4  by and between counsel for the respective parties
 5  hereto that all technicalities as to the proof of
 6  the official character of the authority before whom
 7  the deposition is to be taken are waived.
 8
 9      IT IS FURTHER STIPULATED AND AGREED
10  by and between counsel for the respective parties
11  hereto that the deposition will be read and signed
12  by the deponent before any notary.
13
14      IT IS FURTHER STIPULATED AND AGREED
15  by and between counsel for the respective parties
16  hereto that all objections, except as to form, are
17  reserved to the time of trial.
18
19
20          * * * * * *
21
22
23
24
25
```

4

1    INDEX OF EXAMINATIONS

2                                PAGE

3  Direct Examination by Mr. Bruso          5

4  Cross-Examination by Mr. McNamara      216

5

6

7    INDEX OF PLAINTIFFS' EXHIBITS

8  NO.     DESCRIPTION                   PAGE

9  Ware 1   Ware Subpoena, 6 pages         9

10 Ware 2   Re-Notice of Taking Deposition
           Duces Tecum, 3 pages           10
11
   Ware 3   WFVA Documents Produced and
12          Documents Withheld, 1 page    13

13 Ware 4   Patent 5,087,151, 13 pages    94

14 Ware 5   PTO file wrapper of 151 patent,
           287 pages                     99
15
   Ware 6   Gorman, Nichols, Rankin, and
16          Bailey patents, 22 pages total  142

17

18    (Note: Exhibits retained by the court

19  reporter to be sent directly to Mr. Bruso.)

20

21

22

23

24

25                         **Ware, Robert - 9/12/02**                    **Page 4**

119

1      these other parts interfit.

2  BY MR. BRUSO:

3      Q   Would it be fair to say, then, that the

4  rib that is underneath, overlapping rib 18A --

5      A   Eighteen is the overlapping rib.

6      Q   Eighteen is the overlapping rib and, I

7  think, 18 prime?

8      A   Eighteen-A prime, no. Why would that be

9  in 18A prime?

10     Q   I believe that makes sense, sir, if we

11 look at page 265. I believe 18A prime is the rib

12 underneath. Is that your understanding as well?

13     A   That's what it says here in figure 13,

14 too, yes.

15     Q   I guess, sir, if I could ask you to

16 identify the elements disclosed in the

17 specification that prevent the spread of

18 overlapping rib 18?

19     A   Seems to me that the end wall is the

20 principal thing.

21     Q   Well, does it say that, sir?

22     A   End wall is numbered 30A in figure 13.

23     Q   Actually, I'm just looking at the

24 specification. Thank you. Does it say the end

25 wall is the principal thing?

129

1  understanding of the point of -- do you have an

2  understanding of the point of novelty in the claim

3  15?

4        MR. McNAMARA: Object to the form

5        unless you specify dependent of claim 15

6        or claim 2.

7  BY MR. BRUSO:

8    Q  Is claim 2 subsequently dependent on

9  claim 1?

10    A  I don't think so. It's a proper

11  definition. Except on claim 2 it seems unnecessary

12  to interpret it if it's been amended and adjusted

13  to what works and what is reasonable.

14    Q  Fair enough. Next, directing your

15  attention to claim 16; and if you could read that

16  to yourself and then out loud?

17    A  "The drain field gallery in accordance

18  with claim 15, wherein said latching system further

19  includes means to prevent spreading of adjoining

20  galleries once latched to one another."

21    Q  Okay. Now, Attorney Ware, do you

22  remember earlier today we discussed the means plus

23  function claim?

24    A  Yes.

25    Q  Do you recall that we -- you testified

130

1  that a means plus function claim was a claim

2  allowed under 35 U.S.C., section 112, paragraph 6?

3     A   Yes.

4     Q   Is claim 16, to your understanding, a

5  means plus function claim?

6     A   Appears to be one, yes.

7     Q   The reason for that is it uses the word

8  "means" to --

9     A   Prevent spreading.

10    Q   -- perform a particular function?

11    A   Yes.

12    Q   What is the particular function?

13    A   Prevent spreading.

14    Q   I believe you testified earlier that

15  the -- in order to figure out what a means plus

16  function claim discloses or teaches or claims, I

17  guess I should say what a means plus function claim

18  claims, you need to look to the specification; is

19  that correct?

20    A   I think it mentions equivalent features.

21    Q   Yes, sir. Yes, I believe that 112-6 says

22  the specification and refers to the specification

23  and its equivalents?

24    A   Yes.

25    Q   Okay. Could you look to the

202

1  page 236, if I could.

2   A   Okay. All right.

3   Q   Did you -- what did you ask the examiner

4  to do with original claim 16?

5   A   Rewrite as the following independent

6  claim 46.

7   Q   What was the basis for you rewriting

8  original claim 16 as independent claim -- actually,

9  strike that.

10      Was the basis for your request to rewrite

11 claim 16 as independent claim 46 the examiner's

12 statement that original claim 16 would be allowable

13 if rewritten in independent form incorporating all

14 the limitations of the base claim and all

15 intervening claims?

16  A   Can you tell me where he said that?

17  Q   Certainly.

18      MR. McNAMARA: Page 205.

19 BY MR. BRUSO:

20  Q   I believe that is the one. It appears in

21 several places, I believe.

22  A   It is on page 205.

23  Q   So is the basis for your request to

24 rewrite original claim 16 as independent claim 46

25 the examiner's statement on page 205?

203

1   A   Yes, I'm sure it was.

2   Q   Was it your intention when you asked the

3 examiner to rewrite original claim 16 as new claim

4 46 that you would be incorporating all the

5 limitations in claims 16, 15, 13, and 1?

6   A   I think we intended to.

7   Q   Okay. Just turning your attention to

8 page 238 --

9   A   Yes.

10   Q   -- do you see the second paragraph there,

11 sir?

12   A   Yes.

13   Q   Okay. And could you just tell me, is

14 that where you represented to the examiner --

15 explained to the examiner why you were rewriting

16 what you were doing to original claim 16?

17   A   It appears to be, yes.

18   Q   Okay. Just to make sure I'm clear, you

19 were intending to incorporate all the limitations

20 of 15, 16, 13, and 1?

21   A   If that's what he suggested, I'm sure we

22 were intending to do that. I can't say that was

23 all we put in there, but we certainly included

24 those limitations.

25   Q   Okay. So long as I got my claim

1  dependency, correct?

2  A  Yes.

3  Q  Okay. And based on your representations

4  to the examiner in that final amendment done under

5  Rule 1.116, what did the examiner do?

6  A  Well, I hope he gave us what we were

7  looking for, a note of allowability. It includes

8  the claims listed there, including 41 through 46.

9  Q  Okay. I think we discussed earlier that

10  claim 41 is issued claim 11?

11  A  I believe it was.

12  Q  Does the office action -- not the office

13  action. Does the amendment under Rule 1.116 on

14  page 236, can you deduce from that what claim 46

15  issued as?

16  A  Claim 16.

17  Q  Okay. So in the final analysis, claim

18  41, claim 11, and claim 46 became claim 16?

19  A  I believe that's right.

20  Q  Okay. And just directing your attention

21  to page 243, can you just identify that document?

22  A  It's a summary record of the examiner's

23  interview with me. Appeared -- recites that the

24  claims were to be canceled because they have been

25  rewritten in independent form. And no additional

209

1     MR. McNAMARA: We'll do this when
2   we're -- do you have any more questions?
3     MR. BRUSO: Let me have -- I want to
4   take a couple minutes and see if I have
5   any more questions.
6     (Off the record at 5:56 p.m.)
7     (On the record at 5:58 p.m.)
8  BY MR. BRUSO:
9   Q   Back on the record, I just want to make
10  sure that I understand here. Issued claim 16, I
11  believe we said, came from claim 46 in the
12  application?
13  A   I believe so, yes.
14  Q   And issued claim -- application claim 46
15  was the independent form of claims 16, 15, 13, and
16  1; is that your understanding?
17  A   I think so.
18  Q   And it was your intention in writing
19  claim 46 to incorporate all the limitations of
20  claims 16, 15, 13, and 1; is that correct?
21  A   I believe it is.
22  Q   We discussed that claim 16 as originally
23  drafted was a means plus function claim; is that
24  correct?
25  A   I think so.

210

1  Q  Was it your intention to incorporate
2  those means into application claim 46?
3  A  Those means?
4  Q  Yes, sir.
5  A  As described in the spec?
6  Q  Yes, sir, and their equivalents?
7  A  Yes, I think it was. Has to be.
8  Q  Why does it have to be?
9  A  Assuming there was still means plus
10 function in the claim, that's where you look for
11 the interpretation.
12 Q  When you say still in the claim, in the
13 issued claim?
14 A  I've forgotten whether it was still
15 there.
16 Q  Why wouldn't it be there, sir?
17        MR. McNAMARA: Why don't you perhaps
18     grab claim 16 and look at that.
19 BY MR. BRUSO:
20 Q  Before we do that, though, I would like
21 to explore that a little bit. Just going back to
22 the office action in which you told the examiner to
23 rewrite original claim 16 in independent form, do
24 you recall that?
25 A  Yes.

Ware, Robert - 9/12/02                    Page 210

1  C E R T I F I C A T E

2       I, Cathy J. Dabakis, hereby certify that

3  I am a Notary Public, in and for the State of

4  Connecticut, duly commissioned and qualified to

5  administer oaths.

6       I further certify that the deponent named

7  in the foregoing deposition was by me duly sworn

8  and thereupon testified as appears in the foregoing

9  deposition; that said deposition was taken by me

10  stenographically in the presence of counsel and

11  reduced to print under my direction; and that the

12  foregoing is a true and accurate transcript of the

13  testimony.

14       I further certify that I am neither of

15  counsel nor related to either of the parties to

16  said suit, nor am I interested in the outcome of

17  said cause.

18       Witness my hand and seal as Notary Public

19  this 15th day of September, 2002.

20

21

22       _____
           Cathy J. Dabakis, LSR
23            Court Reporter
           CT License #SHR.356
24
   My commission expires December 31, 2002
25